IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2026 APR 21 P 4: 23

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:20cr139-ECM-KFP |
| | ) | [18 U.S.C. § 1343; |
| SOUTHERN POVERTY LAW CENTER, INC. | ) | 18 U.S.C. § 1014; |
| | ) | 18 U.S.C. § 1956(h)] |
| | ) | |
| | ) | INDICTMENT |

The Grand Jury charges:

## INTRODUCTION

The Southern Poverty Law Center's ("SPLC") stated mission included the dismantling of white supremacy and confronting hate across the country. However, unbeknownst to donors, some of their donated money was being used to fund the leaders and organizers of racist groups, including the Ku Klux Klan, the Aryan Nation, and the National Alliance. The SPLC's paid informants ("field sources") engaged in the active promotion of racist groups at the same time that the SPLC was denouncing the same groups on its website. The SPLC also had a field source who was a member of the online leadership chat group that planned the 2017 "Unite the Right" event in Charlottesville, Virginia. That field source made racist postings under the supervision of the SPLC and helped coordinate transportation to the event for several attendees. In order to covertly pay its field sources, the SPLC opened bank accounts connected to a series of fictitious entities. The covert nature of the accounts allowed the SPLC to disguise the true nature, source, ownership, and control of the fraudulently obtained donated money the SPLC paid the field sources. In order to keep the scheme going, the SPLC made a series of false statements related to the operation of the accounts.

## THE ORGANIZATION

At all times relevant to this Indictment, the SOUTHERN POVERTY LAW CENTER, INC.

1

("SPLC") was a non-profit, tax-exempt 501(c)(3) organization headquartered in Montgomery, Alabama, which is located within the Middle District of Alabama.

1. According to its website, *"The SPLC is a catalyst for racial justice in the South and beyond, working in partnership with communities to dismantle white supremacy, strengthen intersectional movements, and advance the human rights of all people."*

2. To carry out this mission, the SPLC relied in part on public and corporate donations. As the SPLC explained on its website:

> *With your help, we're standing up for the most vulnerable people in society — those who have no other champion. We're exposing hate and injustice, fighting discrimination, and providing award-winning anti-bias material — free of charge — to schools across America.*
>
> *We never take legal fees from our clients, and we accept no government funding. Rather, we rely on the compassion and generosity of people like you.*

3. The SPLC website also explained to potential donors that, *"Your support powers our work to confront hate, stand up to injustice, and defend our civil and human rights. From the courtroom to the classroom to communities across the country, you can help create a more just and inclusive future for all."* These donations were used, in part, to fund various publications such as the "Intelligence Report," "Hatewatch," and the "Intelligence Project Dispatch."

4. The "Intelligence Report" was a magazine-like periodical *"published . . . by the staff of the Southern Poverty Law Center's Intelligence Project and provided free of charge to law enforcement officials, journalists, scholars, and others."*

5. "Hatewatch" was a blog operated by the SPLC that *"monitors and exposes activities of the hard right in the United States."* Blog topics included reporting on hate crimes and events, hate groups and individuals, and lawsuits related to these topics. By providing SPLC with an email address, a person could receive *"the latest updates from Hatewatch."*

6. The "Intelligence Project Dispatch" was a monthly online publication issued by the Hatewatch Staff that *"monitors and exposes white supremacy and its impact on communities."*

The header at the top of the publication further explains to readers that, "*The Southern Poverty Law Center works to dismantle white supremacy in public forums and online, exposes hate and anti-democracy extremism, and counters disinformation and conspiracy theories with research and community resources.*"

7. The top banner of the SPLC website had a link for public donations. By clicking the "Donate" button, potential donors were brought to a webpage that explained how to donate money to the SPLC. This page also informed donors that, "*With your support, the SPLC Action Fund will pursue a bold action agenda to confront our country's most urgent challenges. Together, we'll uplift progressive candidates who uphold inclusive democratic values while investigating and exposing candidates using hate and extremism to gain power.*"

### THE SPLC'S PAID INFORMANTS NETWORK — THE "FS"

8. Starting in the 1980s, the SPLC began operating a covert network of informants who were either associated with violent extremist groups, such as the Ku Klux Klan, or who had infiltrated violent extremist groups at the SPLC's direction. These informants were referred to by some individuals within the SPLC as the "field sources" or the "Fs."

9. Between at least 2014 and 2023, the SPLC paid their Fs in a clandestine manner. Doing so hid the fact that while the SPLC received donation money under the auspices that the funds would be used to "*dismantle*" violent extremist groups, this donation money was, instead, being used, in part, by the SPLC to pay leaders and others within these same violent extremist groups. That money was then used for the benefit of the individuals as well as the violent extremist groups.

10. Between 2014 and 2023, the SPLC secretly funneled more than $3 million in SPLC funds to Fs who were associated with various violent extremist groups.

11. Examples of Fs who were secretly paid by the SPLC include, but are not limited to the following:

3

a. F-37 was a member of the online leadership chat group that planned the 2017 "Unite the Right" event in Charlottesville, Virginia and attended the event at the direction of the SPLC. F-37 made racist postings under the supervision of the SPLC and helped coordinate transportation to the event for several attendees. Between 2015 and 2023, the SPLC secretly paid F-37 more than $270,000.00.

b. F-9 was affiliated with the neo-Nazi organization, the National Alliance and served as an F for the SPLC for more than 20 years. F-9's activities included fundraising for the National Alliance. Between 2014 and 2023, the SPLC secretly paid F-9 more than $1,000,000.00. In 2014, F-9 entered the headquarters of a violent extremist group and stole 25 boxes of their documents. F-9 coordinated payment for the copying of the materials with a high-level SPLC employee who had knowledge the documents had been stolen. The original stolen materials were returned to the violent extremist group in a second illegal entry by F-9. Thereafter, the high-level SPLC employee utilized the documents, in part, as the basis for a story published on the SPLC's Hatewatch website and authored by the employee. Another F, F-39, was blamed for the theft and was paid approximately $6,000.00 by the SPLC to falsely take responsibility for the theft.

c. F-unknown was the Imperial Wizard of the United Klans of America. In an article published on November 22, 2013, the SPLC described the group as a "millennial reboot of what was once a serious domestic threat. In its prime, the United Klans of America was responsible for, among other things, the 16th Street Baptist Church bombing in Birmingham, Ala., which resulted in the deaths of four little girls in 1963."

d. F-27 was reported as an officer in the National Socialist Movement and the Aryan Nations affiliated Sadistic Souls Motorcycle Club. Between 2014 and 2020, the SPLC secretly paid F-27 more than $300,000.00.

e. F-42 was the former chairman of the National Alliance. The SPLC website contained an "Extremist File" webpage about F-42 from which the SPLC solicited donations. Between 2016 and 2023, the SPLC secretly paid F-42 more than $140,000.00. This overlapped the time period in which F-42 was featured on the SPLC's "Extremist File" webpage.

f. F-30 led the National Socialist Party of America, was the former director of a faction of the Aryan Nations, and a former member of the Ku Klux Klan. The SPLC website contained an "Extremist File" webpage for F-30 from which the SPLC solicited donations. Between 2014 and 2016, the SPLC secretly paid F-30 more than $70,000.00. This overlapped the time period in which F-30 was featured on the SPLC's "Extremist File" webpage.

g. F-43 was the reported National President of American Front and a convicted federal felon for his participation in a cross burning. Between 2016 and 2019, the SPLC secretly paid F-43 more than $19,000.00.

h. F-unknown was a member of the Ku Klux Klan and married to an Exalted Cyclops of the Ku Klux Klan. F-unknown and their spouse were involved in litigation whereby the Ku Klux Klan applied to take part in the Adopt-a-Highway program. During the course of the litigation, known payments were traced from the SPLC to F-unknown which exceeded $3,500.00.

12. In addition to directly paying leaders and others associated with the same violent extremist groups that the SPLC sought donations ostensibly to "*dismantle*," the SPLC also used Fs to indirectly funnel money to other violent extremist group leaders. This included the SPLC

funneling more than $160,000.00 from a fictitious entity to F-11 who then sent funds to various violent extremist group leaders including the former Grand Wizard of the Knights of the Ku Klux Klan.

<b>THE SPLC'S FICTITIOUS ENTITIES</b>

13.     To secretly funnel donated money to the Fs, individuals at the SPLC, including a person who would become the Chief Financial Officer ("Employee-1") and a person who would become the Director of the Intelligence Project ("Employee-2"), among others, opened a series of bank accounts at Bank-1 and Bank-2 in the name of various fictitious entities, including, but not limited to, the following:

      a.  Center Investigative Agency ("CIA"),

      b.  Fox Photography,

      c.  North West Technologies ("North West Tech"),

      d.  Tech Writers Group ("Tech Writers"), and

      e.  Rare Books Warehouse ("Rare Books").

14.     These fictitious entities were never incorporated, had no *bona fide* employees, and conducted no actual business.

15.     At all times relevant to this Indictment, Bank-1 and Bank-2 were insured by the Federal Deposit Insurance Corporation ("FDIC").

<b><u>COUNTS ONE THROUGH SIX</u></b><br><b>(Wire Fraud)</b>

16.     The facts set out in paragraphs 1 through 16 are fully incorporated in these Counts.

17.     Beginning in or about 2014, and continuing through at least August 2023, in the Middle District of Alabama, the defendant,

SOUTHERN POVERTY LAW CENTER, INC.,

devised and intended to devise a scheme and artifice to defraud donors, and attempted to do so,

6

and to obtain money and property belonging to donors by materially false and fraudulent pretenses, representations, promises, and omissions.

## PURPOSE OF THE SCHEME AND ARTIFICE

18. The objective of the scheme and artifice was to obtain money via donations through materially false representations and omissions about what the donated funds would be used for.

19. To carry out this scheme and artifice, the SPLC explicitly sought donations under the auspices that donor money would be used to help "*dismantle*" violent extremist groups. In the SPLC's solicitations for donations as outlined herein, donors were not told that some of the donated funds were to be used by the SPLC to pay high-level leaders of violent extremist groups and others, nor were donors ever told that some of the donated funds were used for the benefit of the violent extremist groups or that some of the donated funds would be used in the commission of state and federal crimes.

## WIRE COMMUNICATIONS

20. On or about April 25, 2023, in the Middle District of Alabama, and elsewhere, the defendant,

SOUTHERN POVERTY LAW CENTER, INC.,

for purposes of executing and attempting to execute the scheme and artifice set out in these Counts, did cause to be transmitted in interstate commerce, by means of wire communications, certain signs and signals.

21. Specifically, the SPLC caused interstate wire communications between Alabama and other states through the use of the Automated Clearinghouse system ("ACH") which was utilized to transmit an ACH batch transfer from Bank-1 to various bank accounts utilized by the Fs. Specifically, $13,905.00 was caused to be transmitted by means of wire communications in interstate commerce the writings, signs, and signals, described below for each count, each transmission constituting a separate count:

7

| COUNT | DATE (On or About) | DESCRIPTION |
|---|---|---|
| 1 | 4/25/2023 | A wire transaction in the amount of approximately $4,750.00 from the SPLC Operating Account at Bank-1 to a First Citizens Bank account controlled by F-9. |
| 2 | 4/25/2023 | A wire transaction in the amount of approximately $1,000.00 from the SPLC Operating Account at Bank-1 to a Bank of America account controlled by F-11. |
| 3 | 4/25/2023 | A wire transaction in the amount of approximately $1,200.00 from the SPLC Operating Account at Bank-1 to a Capital One Bank, N.A. account controlled by F-35. |
| 4 | 4/25/2023 | A wire transaction in the amount of approximately $3,090.00 from the SPLC Operating Account at Bank-1 to a TD Bank, N.A. account controlled by F-37. |
| 5 | 4/25/2023 | A wire transaction in the amount of approximately $2,865.00 from the SPLC Operating Account at Bank-1 to a Woodforest Bank account controlled by F-40. |
| 6 | 4/25/2023 | A wire transaction in the amount of approximately $1,000.00 from the SPLC Operating Account at Bank-1 to a US Bank, N.A. account controlled by F-42. |

22. All in violation of Title 18, United States Code, Section 1343.

## COUNTS SEVEN THROUGH TEN
### (False Statements to a Federally Insured Bank)

23. The facts set out in paragraphs 1 through 16 are fully incorporated in this Count.

24. On or about the dates listed in the chart below, in the Middle District of Alabama, the defendant,

SOUTHERN POVERTY LAW CENTER, INC.,

did knowingly make false statements on applications to a federally insured bank, in violation of Title 18, United States Code, Section 1014.

### OVERVIEW

25. As described in paragraphs 14 and 15, individuals at the SPLC opened bank accounts for CIA, Fox Photography, North West Tech, and Tech Writers at Bank–1. Similarly,

individuals at the SPLC opened a bank account for Rare Books at Bank–2.

26. The purpose of opening these bank accounts for the fictitious entities was to be able to conduct financial transactions that made it appear as if the Fs were receiving money from the fictitious entities rather than receiving donated funds from the SPLC.

27. After the accounts were opened, the SPLC, through Employee-1, among others, executed Sole Proprietorship Resolution of Authority documents with Bank–1. These documents contained false and misleading information regarding the ownership and control of the fictitious entities for which the bank accounts were opened. Employee-1, and others, signed these documents containing false and misleading statements for the benefit of the SPLC.

28. On or about the dates listed below, the following false or misleading statements were made to an FDIC insured financial institution:

| Count | Date | False Statement | Document Type | Financial Institution |
|---|---|---|---|---|
| 7 | Dec. 20, 2016 | *I, "Employee-1", certify that I am the sole owner of the above named proprietorship, Federal Tax I.D. number . . . 9788, engaged in business under the trade name of Center Investigative Agency.* | Sole Proprietorship Resolution of Authority | Bank–1 |
| 8 | Dec. 20, 2016 | *I, "Employee-1", certify that I am the sole owner of the above named proprietorship, Federal Tax I.D. number . . . 9788, engaged in business under the trade name of Fox Photography.* | Sole Proprietorship Resolution of Authority | Bank–1 |
| 9 | Dec. 20, 2016 | *I, "Employee-1", certify that I am the sole owner of the above named proprietorship, Federal Tax I.D. number . . . 9788, engaged in business* | Sole Proprietorship Resolution of Authority | Bank–1 |

| | | | | |
|---|---|---|---|---|
| | | *under the trade name of North West Technologies.* | | |
| 10 | Dec. 20, 2016 | *I, "Employee-1", certify that I am the sole owner of the above named proprietorship, Federal Tax I.D. number . . . 9788, engaged in business under the trade name of Tech Writers Group.* | Sole Proprietorship Resolution of Authority | Bank–1 |

29.     In 2020, Bank–1 conducted an internal investigation into these accounts. Thereafter, an SPLC employee requested that Bank–1 close the accounts associated with the CIA, Fox Photography, North West Tech, and Tech Writers and transfer the remaining balances in these accounts to a Bank–1 account ending in 6050 held in the name of the SPLC.

30.     In response to Bank-1's internal investigation, on or about September 9, 2021, the President and Chief Executive Officer of the SPLC, as well as the Board Chair of the SPLC admitted the following in writing to Bank–1:

*Pursuant to the discussion we had earlier this week, please let this correspondence serve as confirmation that the accounts listed below were opened for the benefit of Southern Poverty Law Center operations and operated under the Center's authority. The following accounts are listed below:*

- *. . . 6700 Center Investigative Agency — opened 1/31/2008 — closed 8/5/2020*

- *. . . 9674 Fox Photography — opened 1/31/2008 — closed 8/5/2020*

- *. . . 6743 North West Technologies — opened 1/31/2008 — closed 8/5/2020*

- *. . . 6751 Tech Writers Group — opened 1/31/2008 — closed 8/5/2020*

- *. . . 6719 Imagery Ink — opened 1/31/2008 — closed 3/15/2013*

- *. . . 6727 J&J Electronics — opened 1/31/2008 — closed 3/15/2013*

- *. . . 6735 Kelly's Marine — opened 1/31/2008 — closed 3/15/2013*

- *. . . 6600 Turner Personnel — opened 4/25/2008 — closed 11/8/2011*

*Additionally, this will confirm that the entity "Rare Books Warehouses" operates under Center authority as well.*

31.     All in violation of Title 18, United States Code, Section 1014.

## COUNT ELEVEN
### (Conspiracy to Commit Concealment Money Laundering)

32.     The facts set out in paragraphs 1 through 16 as well as paragraphs 26 through 28 and 30 through 31, are fully incorporated in this Count.

33.     Beginning in or about 2014 and continuing through at least August 2023, in the Middle District of Alabama and elsewhere, the defendant,

SOUTHERN POVERTY LAW CENTER, INC.,

did knowingly combine, conspire, confederate, and agree with persons known and unknown to the grand jury to commit concealment money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### OBJECTIVE OF THE CONSPIRACY

34.     It was the objective of this conspiracy to conduct financial transactions designed to conceal the true nature, source, ownership, and control of fraudulently obtained donated money the SPLC paid to Fs.

### MANNER AND MEANS OF THE CONSPIRACY

35.     After receiving donated funds obtained via the wire fraud scheme alleged in Counts 1-6, individuals at the SPLC transferred proceeds of the wire fraud scheme from the SPLC's operating account at Bank-1 to another account at Bank–1 in the name of the CIA.

36.     Thereafter, the funds in the CIA account at Bank-1 were transferred to accounts at Bank-1 in the following names: Fox Photography, North West Tech, and Tech Writers. These funds were then transferred from the Fox Photography, North West Tech, and Tech Writers'

11

accounts to the various Fs. These financial transactions were designed to conceal the true nature, source, ownership, and control of the donated funds the SPLC was paying to the Fs.

37.     In addition, a portion of the proceeds that had been deposited into the CIA account at Bank-1 was deposited into the Rare Books account at Bank–2. The financial transactions from the CIA account to the Rare Books account were designed to further conceal the true nature, source, ownership, and control of the donated funds the SPLC was paying to the Fs.

38.     The funds deposited in the Rare Books account at Bank-2 were then loaded onto pay cards issued to the Fs who were supposedly employees of the fictitious entity, Rare Books. The financial transactions moving funds from the Rare Books account to the Fs' pay cards were designed to still further conceal the true nature, source, ownership, and control of the donated funds the SPLC was paying to the Fs.

39.     After the closure of the fictitious entities' accounts following Bank–1's internal investigation, the SPLC altered their method of conducting financial transactions designed to conceal the true nature, source, ownership, and control of the donated funds that the SPLC was paying to the Fs.

40.     Specifically, from in or about August 2020 and continuing through in or about August 2023, the SPLC utilized the ACH system to pay Fs with donated funds. These ACH payments were masked with monikers such as "Rarebooks050" and "IPResearchCON050." These masked ACH transactions were designed to conceal the true nature, source, ownership, and control of the donated funds the SPLC was paying to the Fs.

All in violation of Title 18, United States Code, Section 1956(h).

**<u>FORFEITURE ALLEGATION-1</u>**

A.     The allegations contained in Counts 1-6 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

B. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts 1-6 of this indictment, the defendant,

SOUTHERN POVERTY LAW CENTER, INC.,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from the offenses in violation of Title 18, United States Code, Section 1343.

C. If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third party;

    (3) has been placed beyond the jurisdiction of the court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## FORFEITURE ALLEGATION-2

A. The allegations contained in Count 11 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

B. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h), set forth in Count 11 of this Indictment, the defendant,

13

SOUTHERN POVERTY LAW CENTER, INC.,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in such offense, or any property traceable to such property.

     C.     If any of the property described in this forfeiture allegation, as a result of any act

or omission of the defendant:

     (1)     cannot be located upon the exercise of due diligence;

     (2)     has been transferred or sold to, or deposited with, a third party;

     (3)     has been placed beyond the jurisdiction of the court;

     (4)     has been substantially diminished in value; or

     (5)     has been commingled with other property which cannot be divided
without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United

States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

     All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

FOREPERSON

KEVIN P. DAVIDSON
ACTING UNITED STATES ATTORNEY

Russell T. Duraski
Assistant United States Attorney