# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 2:26-cr-0139-ECM-KFP-1** |
| **SOUTHERN POVERTY LAW** | ) |
| **CENTER, INC.** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## THE SOUTHERN POVERTY LAW CENTER'S
## MOTION TO DISCLOSE TRANSCRIPT OF
## GRAND JURY PROCEEDINGS

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND .............................................................................2

ARGUMENT ....................................................................................................5

I. THE SUBSTANTIAL LIKELIHOOD THAT THE GOVERNMENT CARRIED GROSS MISREPRESENTATIONS OF MATERIAL ISSUES INTO THE GRAND JURY PROCEEDING WARRANTS DISCLOSURE OF GRAND JURY MATERIALS ........................................7

    A. Disclosure Is Necessary to Avoid Injustice ...........................................7

    B. The Need for Disclosure Outweighs the Interest in Grand Jury Secrecy ...................................................................................................12

    C. The Request Covers Only Material Directly Pertinent to the Need for Disclosure .......................................................................................13

II. THE GOVERNMENT IS NOT ENTITLED TO THE PRESUMPTION OF REGULARITY ..............................................................................................14

III. AT A MINIMUM, THIS COURT SHOULD ORDER DISCLOSURE OF THE PROSECUTOR'S INTRODUCTORY REMARKS AND LEGAL INSTRUCTIONS TO THE GRAND JURY ...............................17

CONCLUSION .................................................................................................18

i

**TABLE OF AUTHORITIES**

## Cases

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988)..............................................................................................7

*Branzburg v. Hayes*,
408 U.S. 665 (1972)..............................................................................................5

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
441 U.S. 211 (1979)...........................................................................................7, 13

*Fed. Educ. Ass'n v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025) .....................................................................16

*Hamling v. United States*,
418 U.S. 87 (1974)...............................................................................................14

*In re Cudahy*,
294 F.3d 947 (7th Cir. 2002) ..............................................................................18

*United States v. Aisenberg*,
358 F.3d 1327 (11th Cir. 2004) ...................................................................... 12, 13

*United States v. Alter*,
482 F.2d 1016 (9th Cir. 1973) .............................................................................17

*United States v. Belton*,
2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) .....................................................18

*United States v. Calandra*,
414 U.S. 338 (1974).............................................................................................6

*United States v. Comey*,
809 F. Supp. 3d 396 (E.D. Va. 2025) ............................................................. 12, 16

*United States v. Cooper*,
680 F. App'x 844 (11th Cir. 2017).......................................................................14

*United States v. Elliott*,
849 F.2d 554 (11th Cir. 1988).............................................................................6, 7

*United States v. Garcia*,
311 F. App'x 314 (11th Cir. 2009) .......................................................................7

*United States v. Gayle*,
967 F.2d 483 (11th Cir. 1992)..............................................................................11

*United States v. Kaley*,
 677 F.3d 1316 (11th Cir. 2012) ...................................................................5

*United States v. Mechanik,*
 475 U.S. 66 (1986) .......................................................................................7

*United States v. Oregon*,
 2026 WL 318402 (D. Or. Feb. 5, 2026) .....................................................16

*United States v. Pabian*,
 704 F.2d 1533 (11th Cir. 1983) ...................................................................8

*United States v. Proctor & Gamble Co.*,
 356 U.S. 677 (1958) .....................................................................................6

*United States v. Rosen*,
 471 F. Supp. 2d 651 (E.D. Va. 2007) ........................................................18

*United States v. Scrushy*,
 2006 WL 780905 (M.D. Ala. Mar. 27, 2006) ..............................................8

*United States v. Stewart*,
 2025 WL 2754480 (D.D.C. Sept. 29, 2025) ...............................................17

*United States v. Vallejo*,
 297 F.3d 1154 (11th Cir. 2002) .................................................................10

*United States v. White*,
 2006 WL 752929 (M.D. Ala. Mar. 22, 2006) ............................................10

*United States v. Williams*,
 504 U.S. 36 (1992) .......................................................................................6

*United States v. Woody's Trucking, LLC*,
 2018 WL 457781 (D. Mont. Jan 17, 2018) ................................................17

*United States v. York*,
 428 F.3d 1325 (11th Cir. 2005) ...................................................................6

*Wood v. Georgia*,
 370 U.S. 375 (1962) .....................................................................................6

**Statutes**

18 U.S.C. § 1014 ...............................................................................................10

18 U.S.C. § 1343 ...............................................................................................11

**Other Authorities**

Eleventh Circuit Pattern Jury Instructions, Criminal Cases, O39 ...........................10

Federal Rule of Criminal Procedure 6(e)............................................... 2, 6, 7, 17, 18

Sara Beale et al., *Grand Jury Law and Practice* (2d ed. 2001)...............................18

Susan Brenner & Lori Shaw, *Federal Grand Jury: A Guide to Law and Practice* (2d ed. updated through Sept. 2025)....................................................................18

**INTRODUCTION**

For over half a century, the Southern Poverty Law Center (SPLC) has served as a cornerstone of American civil rights litigation. This indictment represents a stunning and unremitting departure from Justice Department policy and established law. It seeks to criminalize some of the very investigative tools and programs that the SPLC has used for decades to infiltrate and dismantle violent extremist organizations like the Ku Klux Klan and the Aryan Nations—tradecraft that has produced vital intelligence that has been shared with law enforcement, including the Federal Bureau of Investigation.

This prosecution is as unprecedented as it is irregular. Comments made by Administration officials and flaws in the indictment itself suggest the case results from misleading both the public and the grand jury that voted on the charges. Moreover, on its face, the indictment suffers from obvious legal infirmities— including the omission of essential elements of intent and a failure to reconcile the charges with recent Supreme Court precedent.[1] These particularized irregularities suggest that the grand jury was not merely misled by the government's presentation of the law, but likely that it was actively weaponized to facilitate such charges.

---

[1] These and other deficiencies in the 11-count indictment will be the subject of forthcoming motion(s) to dismiss the charges against SPLC at the appropriate time in this case.

In light of these irregularities already uncovered and the manifest risk of prosecutorial misconduct,[2] the SPLC moves this Court under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) for an Order compelling the disclosure to the defense of the full transcript of the grand jury proceedings in this case.[3] The veil of secrecy that usually shrouds grand jury proceedings, and the presumption of regularity historically afforded to such vital proceedings, cannot be used as a shield for a prosecution that is so clearly untethered from the facts, the law, and the historic relationship between this organization and the very law enforcement agencies now seeking its destruction.

## FACTUAL BACKGROUND

On April 21, 2026, a grand jury returned an indictment charging the SPLC with wire fraud, making false statements to a federally insured banking institution, and conspiracy to commit money laundering. Since that moment, statements of officials at the highest level of the Administration have called into question the information given to the grand jury, and in turn, the indictment itself.

The indictment repeatedly alleges the SPLC sought to promote the Unite the Right rally in Charlottesville, Virginia in August 2017. *See* Indictment at

---

[2] Along with this Motion, the SPLC is concurrently filing a Motion to Address the Government's Materially False Statements and to Enforce Rules Prohibiting Further Prejudicial Extrajudicial Statements.

[3] As addressed *infra* at 17, grand jury instructions are not among the materials covered by Federal Rule of Criminal Procedure 6(e).

Introduction ("The SPLC also had a field source who was a member of the online leadership chat group that planned the 2017 'Unite the Right' event in Charlottesville, Virginia"); *id.* ¶ 11(a) ("F-37 was a member of the online leadership chat group that planned the 2017 'Unite the Right' event in Charlottesville, Virginia and attended the event at the direction of the SPLC. F-37 made racist postings under the supervision of the SPLC and helped coordinate transportation to the event for several attendees"). Additionally, Acting Attorney General Blanche said publicly that the government had "no information" that "suggests that" the SPLC "then turned around and shared what they learned with law enforcement" from the informant program.[4] Neither the allegation in the indictment nor Blanche's statement is true, and the government knows or should have known that.

The SPLC used the informant program to gather voluminous and detailed information about the risk of violence at Charlottesville. That information was memorialized and provided to law enforcement, including to the FBI's Mobile, Alabama office—the very office leading the investigation of this case—in advance of the rally in the form of a 45-page "Event Alert."[5] That document warned the FBI of the specific individuals likely to attend the rally and foment violence, providing

---

[4] *Acting AG Todd Blanche says SPLC fraud indictment is not politically motivated, calls conduct 'egregious*, Fox News (Apr. 21, 2026), 03:47 – 04:03, https://www.foxnews.com/media/acting-ag-todd-blanche-says-splc-fraud-indictment-not-politically-motivated-calls-conduct-egregious.'

[5] A copy of the above-referenced Event Alert has been provided to the government. If requested, defense counsel can furnish a copy to the Court through a supplementary under-seal filing.

not only names and pictures, but specific details about associates, backgrounds, and criminal histories. For some of the individuals identified in this Event Alert, the SPLC even provided details about those individuals' weapons of choice based on intelligence gathered through the informant program.

In addition to the false claims about Charlottesville, Administration officials have made repeated false and highly prejudicial statements about the SPLC and its activities, including the fanciful and baseless claim that the SPLC is "giving money to the KKK"—an allegation not even supported by or contained in the indictment itself. In announcing the charges, Acting Attorney General Blanche asserted that the SPLC "pa[id] sources to stoke racial hatred" and "manufactur[ed] racism to justify its existence."[6] During an appearance on *Fox News* following the charges, Director Patel escalated the rhetoric, claiming that the SPLC "turned around and paid the leaders of these very extremist groups" and used donor funds "to sow discord and hate."[7] And in a naked display of politicization and partisanship, President Trump posted, "[S]outhern law, whatever it is, has given money to KKK, they're supposed to protect people and they're paying all these people, crooked as can be millions of

---

[6] *Full Todd Blanche, Kash Patel press conference reveals Southern Poverty Law Center indictment* (Apr. 22, 2026), 00:50 – 01:03, available at https://www.youtube.com/watch?v=KS0TNiaqU4o (last accessed Apr. 26, 2026).

[7] DC Larson, *SPLC walls tumbling down*, The Times-Republican (Apr. 25, 2026), https://www.timesrepublican.com/opinion/columnists/2026/04/splc-walls-tumbling-down.

dollars, millions of dollars going all, to all these people that they're supposed to be protecting from[.]"[8] The President reiterated in another post, "The Southern Poverty Law Center, one of the greatest political scams in American History, has been charged with FRAUD,"[9] and calling the SPLC a "Democrat Hoax" and attempting to link the fraud charges to his broader debunked claim of election interference. These repeated, false, and prejudicial remarks by the Administration's most senior officials not only violate Justice Department norms and long-held principles of federal prosecution, but they illustrate, among other things, the stunning and blatant irregularity, politicization, and manifest risk of prosecutorial misconduct in this case.

## ARGUMENT

"[T]he grand jury 'serves the invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.'" *United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012) (citing *Branzburg v. Haye*s, 408 U.S. 665, 687 n.23 (1972)). Rooted in a desire to "protect[] citizens against arbitrary and oppressive governmental action . . . the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth

---

[8] *JUST IN: President Trump BLASTS disgraced SPLC: 'Crooked as can be'*, The Post Millennial (Apr. 23, 2026), https://thepostmillennial.com/just-in-president-trump-blasts-disgraced-splc-crooked-as-can-be.

[9] Donald J. Trump (@realDonalTrump), Truth Social (Apr. 24, 2026), https://truthsocial.com/@realDonaldTrump/posts/116457972455781406.

Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.'" *United States v. Calandra*, 414 U.S. 338, 343 (1974). To that end, defendants have a constitutional right to "an independent and informed grand jury," *United States v. Williams*, 504 U.S. 36, 51 (1992) (quoting *Wood v. Georgia*, 370 U.S. 375, 390 (1962)), whose function is not only to determine whether probable cause exists to charge an offense, but also "for the protection of citizens against unfounded criminal prosecutions." *United States v. York*, 428 F.3d 1325, 1332 (11th Cir. 2005) (internal citations and quotations omitted).

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a court may order the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). While there is a "long-established policy that maintains the secrecy of the grand jury proceedings," *United States v. Proctor & Gamble Co*., 356 U.S. 677, 681 (1958), courts may order disclosure of grand jury transcripts under Rule 6(e)(3)(E)(ii) when defendants establish a "particularized need" that outweighs the interest in maintaining grand jury secrecy. *United States v. Elliott*, 849 F.2d 554, 557 (11th Cir. 1988) (citing *Procter & Gamble*, 356 U.S. at 683).

The "particularized need" standard is met upon a showing that (1) the material sought "is needed to avoid a possible injustice in another judicial proceeding," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed." *Elliott*, 849 F.2d at 557 (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). The SPLC has overcome that threshold here, as discussed below.

I. **THE SUBSTANTIAL LIKELIHOOD THAT THE GOVERNMENT CARRIED GROSS MISREPRESENTATIONS OF MATERIAL ISSUES INTO THE GRAND JURY PROCEEDING WARRANTS DISCLOSURE OF GRAND JURY MATERIALS**

**A. Disclosure Is Necessary to Avoid Injustice.**

Rule 6(e) permits disclosure when "needed to avoid a possible injustice in another judicial proceeding." *Douglas Oil*, 441 U.S. at 222. The SPLC seeks disclosure of the grand jury transcripts to determine if the grand jury's probable cause determination was based on the same inaccurate or misleading representations that the government has rendered publicly, which would cast "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik,* 475 U.S. 66, 78 (1986)).

The request is not a "fishing expedition." *United States v. Garcia*, 311 F. App'x 314, 317 (11th Cir. 2009) (internal citation omitted). The risk that inaccurate and/or misleading information was presented to the grand jury is substantiated by

7

the repeated public remarks made by officials at the highest level of the Administration (including the President himself) containing demonstrably false statements of material fact about the SPLC, its conduct, and its relationship to law enforcement. The risk that these falsities made their way into the grand jury room rises beyond the level of speculation.

The grand jury's historic role has been to serve as a "protective bulwark standing solidly between the ordinary citizen and the overzealous prosecutor." *United States v. Pabian*, 704 F.2d 1533, 1535 (11th Cir. 1983) (citations omitted). Although prosecutors are not required to present exculpatory evidence to the grand jury, "[t]he government has a duty to insure that testimony presented to the grand jury is not false." *United States v. Scrushy*, 2006 WL 780905, at *12 (M.D. Ala. Mar. 27, 2006). Consistent with that obligation, and to ensure that the indictment did not result from "the government's knowing use of false testimony [which] would violate the defendant's constitutional rights," (*id*.) disclosure of the grand jury transcripts is necessary. Acting Attorney General Blanche's public statements claiming the SPLC failed to inform law enforcement of information gathered via the informant program, particularly in the face of evidence demonstrably proving otherwise, is especially concerning given the specific allegations surrounding the Unite the Right rally in the indictment. *See* Indict. ¶ 11.a. This further underscores the concerns that this indictment is a direct result of the same types of misleading and/or inaccurate

statements to the grand jury that Administration officials have made in the media. *Cf. United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985) ("A prosecutor is . . . forbidden to make improper suggestions, insinuations and assertions calculated to mislead the jury[.]") (internal quotation omitted); *see also* Justice Manual § 9-11.233 (policy that prosecutors are obligated to present or disclose to grand jury evidence that directly negates negating guilt of subject of the investigation before seeking an indictment).[10]

On its face, the indictment has fundamental flaws that raise concerns about the prosecutors' instructions to the grand jury on the legal basis needed to return an indictment. The prosecutor has dueling roles before the grand jury: the role of pressing for an indictment and of being the grand jury adviser. *See United States v. Remington*, 208 F.2d 567, 573–74 (2d Cir. 1953) (L. Hand, J., dissenting); *see also* Justice Manual § 9-11.010 ("the prosecutor's responsibility is to advise the grand jury on the law and to present evidence for its consideration."). Improper instruction as to the legal elements of each count that led the grand jury to return an indictment that is based on conduct that is not criminal *as a matter of law*, would cause "grave doubt that the decision to indict was free from such substantial influence of such violations," warranting dismissal. *United States v. White*, 2006 WL 752929, at *2

---

[10] While the Justice Manual does not confer any rights upon a defendant, it does set out proper procedures for prosecutors and, when improper procedures exist, can inform motions based on the law of prosecutorial misconduct.

9

(M.D. Ala. Mar. 22, 2006) (citing *United States v. Vallejo*, 297 F.3d 1154, 1165 (11th Cir. 2002)).

For example, the indictment charges 18 U.S.C. § 1014, false statements to a federally insured bank, in Counts Seven through Ten. To adequately plead a violation of Section 1014, the indictment must allege that the false statement[11] was made "for the purpose of influencing in any way the action of" a federally insured financial institution. 18 U.S.C. § 1014. Yet the indictment is devoid of any allegation that the SPLC made the statements charged in Counts Seven through Ten with the intent to influence the banks' actions. And as the Eleventh Circuit's pattern jury instructions explain, "[t]he heart of the crime is the attempt to influence the action of the institution by [knowingly] [willfully] making a false statement or report." Eleventh Circuit Pattern Jury Instructions, Criminal Cases, O39 (18 U.S.C. § 1014). The essentiality of the intent requirement under Section 1014 combined with the complete absence of any such allegation in the indictment further suggests that the grand jury was not properly instructed on the law. "A grand jury indictment must set forth each essential element of an offense in order for a resulting conviction to stand[,]" *United States v. Poirier*, 321 F.3d 1024, 1028 (11th Cir. 2003)' (internal

---

[11] The indictment repeatedly characterizes the statements that form the basis of Counts Seven through Ten as "false and misleading." However, Section 1014 only criminalizes *false* statements. As the Supreme Court affirmed just one year ago, misleading statements that are not false are insufficient to establish guilt under 18 U.S.C. § 1014. *See Thompson v. United States*, 604 U.S. 408, 417 (2025).

citation omitted), a requirement that "fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime." *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992).

Similarly, Counts One through Four charge wire fraud in violation of 18 U.S.C. § 1343. While the indictment quotes various portions of the SPLC website in purporting to describe "the Organization," absent from the indictment is any reference to the SPLC statement(s) to donors that are allegedly fraudulent. And even if the government's theory is premised on some omission made by the SPLC, the government must still show that such omission was made intentionally to lead donors to believe that their donation would only be used for certain purposes and not others (including the payment of informants), and that the SPLC nonetheless used the donations for those impermissible purposes.

These concerns about misstatements to the grand jury are not abstract or speculative. Indeed, they are consistent with a small but growing body of caselaw involving the precise situation we see here—the government engaging in highly unusual conduct simultaneous with political pressure to bring charges, and misstatements of law at the highest levels of government. In November 2025, a federal magistrate judge in the Eastern District of Virginia granted (after *in camera* review) former FBI Director James Comey the same relief the SPLC seeks here:

access to all grand jury materials, including the full transcript of grand jury proceedings, from the indictment that had been returned against him.[12] *See United States v. Comey*, 809 F. Supp. 3d 396, 413–14 (E.D. Va. 2025). The court's reasoning in *Comey* applies with equal force to the SPLC, including the court's concerns that "statements by the prosecutor to the grand jurors that on their face *appear to be fundamental misstatements of the law* that could compromise the integrity of the grand jury process." *Id.* at 409 (emphasis added). As that court concluded, when the government may have misstated the law to the grand jury and thereby allowed corruption of the probable cause assessment, the defense is entitled to examine what was said and how the law was presented. So too here. Disclosure of grand jury transcripts is necessary to avoid injustice and will inform the SPLC's forthcoming motions, including a potential motion to dismiss for vindictive prosecution.

### B. The Need for Disclosure Outweighs the Interest in Grand Jury Secrecy.

The interest in the secrecy of grand jury proceedings is not absolute. *See United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004). The presumption of grand jury secrecy can be overcome in instances, such as the case here, where the

---

[12] In *Comey*, the grand jury materials were disclosed to the defense pursuant to the parties' agreed-to Protective Order and for the limited purpose of defending the criminal case. *See* 809 F. Supp. at 414.

need for disclosure is greater than the public interest in preserving grand jury secrecy. The SPLC's concerns about misstatements of law or fact, including when no witness was present, supported by specific evidence of prosecutorial overreach outside of the courtroom, could not be cured by cross-examination, *Brady/Giglio* protections, or discovery—weighs heavily in favor of disclosure. These "circumstances ha[ve] created certain difficulties peculiar to this case, which could be alleviated by access to specific grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process." *Id.* at 1348–39 (internal citation and quotation omitted).

### C. The Request Covers Only Material Directly Pertinent to the Need for Disclosure.

The nature of the SPLC's particularized need renders all grand jury transcripts "directly pertinent to the need for disclosure." *Douglas Oil*, 441 U.S. at 224. When the potential prosecutorial overreach involves statements to the grand jury, particularly those made in the absence of any witnesses, there is no meaningful way to further narrow the request without depriving the SPLC of the transcripts necessary to determine whether misleading or inaccurate statements of law and/or fact were made, and whether they undermined the grand jury's independence. The requirement that the request be tailored to only those materials needed is necessarily a fact-specific inquiry. *See*, *e.g.*, *Aisenberg*, 358 F.3d at 1349. Here, because any possible misconduct arises from potential statements by government counsel that could only

be revealed through the grand jury transcripts themselves, the request for all grand jury transcripts is the minimum necessary to identify and assess that alleged overreach and is well within the Court's discretion to grant. *See United States v. Cooper*, 680 F. App'x 844, 847 (11th Cir. 2017) ("the district court has substantial discretion in determining whether grand jury materials should be released") (internal citation and quotations omitted). Accordingly, the scope of the request is grounded in the particularized need articulated above.

## II. THE GOVERNMENT IS NOT ENTITLED TO THE PRESUMPTION OF REGULARITY

While grand jury proceedings have historically carried a "presumption of regularity," *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974), the government is not entitled to such a presumption in this case. To the contrary, the indictment itself and the statements made by government officials already paint a picture of stunning and particularized irregularity in this case. Nor should the Court ignore the broader political context in which this extraordinary prosecution was brought—public reporting has indicated that the investigation into SPLC was "'shut down' during the Biden administration" only to be "revived during President Donald Trump's second term."[13] And last year, Director Kash Patel criticized the organization as a "partisan

---

[13] Ryan J. Reilly et al., *Southern Poverty Law Center indicted on charges that it fraudulently paid informants in extremist groups*, NBC News (Apr. 21, 2026), https://www.nbcnews.com/politics/justice-department/southern-poverty-law-center-says-targeted-trump-administration-rcna341237.

smear machine" after Charlie Kirk's assassination.[14] As described above, the President, the Acting Attorney General, and the FBI Director engaging in blatant politicization and public shaming of the SPLC; the glaring flaws on the face of the 11-count indictment; and Director Patel's decision in October 2025 to sever information-sharing ties between the FBI and the SPLC, all paint a picture of striking irregularity here.

These irregularities include the Justice Department's failure to subpoena, or even contact the SPLC during the investigation. *See* Declaration of William C. Athanas (Athanas Decl.) ¶ 4. Instead, the SPLC contacted the U.S. Attorney's Office in an effort to understand the nature of the government's concerns and obtained a meeting on February 25, 2026. *Id.* ¶¶ 4–5. At that meeting, attended by Acting U.S. Attorney Kevin Davidson and two Assistant U.S. Attorneys, the prosecutors advised that they had been the advised the records of the informant program had been destroyed. *Id.* ¶ 6. The SPLC corrected this erroneous belief and agreed to accept service of a grand jury subpoena for records which included the information gathered through the informant program, some of which was provided to law enforcement. *Id.* ¶ 7. The SPLC produced approximately 15,000 pages of records in response to that subpoena on April 17, 2026. *Id.* ¶ 8. Two business days later, on April 21, 2026,

---

[14] Chandra Bozelko, *The SPLC Allegedly Mimics the Worst FBI Abuses*, Wall St. J. (Apr. 24, 2026), https://www.wsj.com/opinion/the-splc-allegedly-mimics-the-worst-fbi-abuses-792c2424.

the grand jury returned this indictment, which contains no reference to the information gathered by the informant program.

This case is not an outlier in that respect. Nationwide, district courts have increasingly found that this Administration has lost the presumption of regularity afforded in court proceedings. As one court recently described, while "[g]enerations of presidential administrations and public officials have validated this underlying premise of the presumption of regularity," "[i]n just six months, the President of the United States may have forfeited the right to such a presumption" entirely. *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025), *appeal docketed*, No. 25-5303 (D.C. Cir. Aug. 20, 2025); *see United States v. Oregon*, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) ("The presumption of regularity that has been previously extended to [the government] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds."). Other courts have also raised serious doubt as to whether this Administration may rely on any presumption of regularity in the context of grand jury proceedings. *See, e.g.*, *Comey*, 809 F. Supp. 3d at 410 ("[T]his unusual series of events, still not fully explained by the prosecutor's declaration, *calls into question the presumption of regularity generally associated with grand jury proceedings*, and provides another genuine issue the defense may raise to challenge the manner in which the government obtained the indictment.") (emphasis added); *United States v. Stewart*, 2025 WL

16

2754480, at *1 (D.D.C. Sept. 29, 2025) (describing federal prosecutors' conduct as "[a]t a minimum, . . . unseemly; more than likely it is unlawful. Not to mention, this only deepens the growing mistrust of the actions of prosecutors. That is a sentiment that was once unthinkable, *but the irregular is now the regular*.") (emphasis added).

In sum, federal district courts throughout the country have increasingly signaled that the government, under the direction of this Justice Department and Administration, is no longer operating in a manner entitled to any presumption of regularity. In light of the foregoing, the grand jury process in question here is not entitled to any presumption of regularity by the Court. Likewise, it should not be afforded the traditional secrecy that accompanies grand juries operating in the normal course.

### III. AT A MINIMUM, THIS COURT SHOULD ORDER DISCLOSURE OF THE PROSECUTOR'S INTRODUCTORY REMARKS AND LEGAL INSTRUCTIONS TO THE GRAND JURY

Unlike the substance of grand jury proceedings, a prosecutor's introductory remarks and legal instructions provided to the grand jury are not presumptively covered by Rule 6(e)'s secrecy requirement and "does not require a particularized need." *United States v. Woody's Trucking, LLC*, 2018 WL 457781, at *1 (D. Mont. Jan 17, 2018) (citing *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973)). Commentators have noted that grand jury secrecy "does not govern matters such as a court's charge to a grand jury." Susan Brenner & Lori Shaw, *Federal Grand*

17

*Jury: A Guide to Law and Practice* § 16:11 (2d ed. updated through Sept. 2025). "The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect." *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002) (Posner, J.) ("[M]inisterial grand jury records, such as records reflecting the empaneling and extension of the grand jury, are not within the reach of Rule 6(e) because they reveal nothing of substance about the grand jury's investigation.") (quoting 1 Sara Beale et al., *Grand Jury Law and Practice* § 5:6 (2d ed. 2001)). Rule 6(e) applies to the *substance* of jury deliberations, the identity of grand jurors or expected witnesses, or evidence that is actually presented to the jury—not the basic ground rules by which the grand jury conducts its proceedings. *See United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007). Accordingly, the Court should order their disclosure to Defendants in this case.

## CONCLUSION

For the foregoing reasons, the SPLC respectfully requests that the Court order disclosure to the defense of transcripts of all grand jury proceedings in this case, pursuant to Federal Rule of Criminal Procedure 6(e).

DATED this 28th day of April, 2026.          Respectfully Submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.
com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on April 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Addy R. Schmitt*
Kropf Moseley Schmitt PLLC
