# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>) | Case No. 2:26-cr-0139-ECM-KFP-1 |
| SOUTHERN POVERTY LAW )<br>CENTER, INC. )<br>)<br>)<br>  Defendant. ) | |

## THE SOUTHERN POVERTY LAW CENTER'S MOTION
## TO ADDRESS THE GOVERNMENT'S MATERIALLY FALSE
## STATEMENTS AND TO ENFORCE RULES PROHIBITING FURTHER
## PREJUDICIAL EXTRAJUDICIAL STATEMENTS

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................3

      A.    The defense provided information to the U.S. Attorney's Office shortly before the indictment establishing that the SPLC had shared information from informants with law enforcement............................3

      B.    DOJ indicted the SPLC and immediately made press statements. .......6

      C.    The defense promptly notified the prosecution that Acting Attorney General Blanche had made a false statement and explained why the statement was false................................................................................9

      D.    Prior to filing this motion, the defense asked the government to correct its false statement to avoid the need for court intervention. ...............11

III.  ARGUMENT................................................................................................12

      A.    Prosecutors have an obligation to ensure that they do not make false statements, and to correct false or misleading statements. .................12

      B.    Prosecutors are prohibited from making extrajudicial statements that can jeopardize a defendant's right to a fair trial..................................14

      C.    The prejudice from the government's false statement at issue is not limited to that statement considering the government's media blitz in the days since the indictment was returned........................................15

      D.    The Court has authority to address this violation. .............................18

IV.   CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Gentile v. State Bar of Nevada*,
501 U.S. 1030 (1991)................................................................................14

*United States v. [Individual B]*,
No. 2:19-mj-00593-NJK, (D. Nev. 2019) ....................................................10, 11

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) ...............................................................19

*United States v. DiBernardo*,
775 F.2d 1470 (11th Cir. 1985) ..............................................................18

*United States v. Hasting*,
461 U.S. 499 (1983)...............................................................................18

*United States v. Wilson*,
149 F.3d 1298 (11th Cir. 1998) ..............................................................19

**Other Authorities**

28 C.F.R. § 50.2(b)(2)...............................................................................15

28 C.F.R. § 50.2(b)(3)...............................................................................15

@thejusticedept, INSTAGRAM (Apr. 21, 2026),
<https://www.instagram.com/reel/DXadjTAD
HuP/?igsh=Mjlud3hiYTMyZHNx>; The United States Department
of Justice, Facebook (Apr. 21, 2026),
https://www.facebook.com/reel/9195791775639................................................8

@TheJusticeDept, X (Apr. 21, 2026 at 8:10 pm),
https://x.com/TheJusticeDept/status/2046743411403681994?s=2 .....................8

Acting Attorney General Blanche Interview on NewsNation with
Katie Pavlich, NewsNation,
https://www.newsnationnow.com/video/ag-todd-blanche-talks-
southern-poverty-law-center-indictment-katie-pavlich-
tonight/1173010 .............................................................................17

Ala. R. Prof. Conduct (Preamble) ..................................................................13

Ala. R. Prof. Conduct 3.6 ............................................................................13

Ala. R. Prof. Conduct 3.8 ............................................................................13

Ala. R. Prof. Conduct 4.1 .......................................................................13, 14

Ala. R. Prof. Conduct 8.4 .......................................................................13, 14

Deputy Associate Attorney General Akaash Singh Interview on This
    Week on Capitol Hill (Apr. 24, 2026):
    https://thisweekoncapitolhill.com ....................................................18, 19

FBI Director Patel Interview on Sean Hannity (Apr. 22, 2026):
    https://www.foxnews.com/video/6393681040112 .................................18

Fox News, *Acting AG Todd Blanche says SPLC fraud indictment is
    not politically motivated, calls conduct 'egregious'* (Apr. 21, 2026),
    https://www.foxnews.com/media/acting-ag-todd-blanche-says-
    splc-fraud-indictment-not-politically-motivated-calls-conduct-
    egregious. .........................................................................................7

Justice Department, *Press Conference*, YouTube (Apr. 21, 2026),
    https://www.youtube.com/watch?v=acDBWnnLJH0 ............................7

Justice Manual § 1-7.600 ............................................................................15

Justice Manual § 9-11.233 ............................................................................5

Press Release, Department of Justice, United States Attorney's Office,
    District of Nevada, Las Vegas Man Pleads Guilty To Possession
    Of Bomb-Making Components (Feb. 10, 2020),
    https://www.justice.gov/usao-nv/pr/las-vegas-man-pleads-guilty-
    possession-bomb-making-components ...............................................10

Press Release, Fox News Media, Fox News Channel Topples CBS in
    Viewers and Dominates All of Cable for 20th Consecutive Quarter
    (Apr. 1, 2026), https://press.foxnews.com/2026/04/fox-news-
    channel-topples-cbs-in-viewers-and-dominates-all-of-cable-for-
    20th-consecutive-quarter. .................................................................7

Press Secretary Leavitt Interview on Fox News, Daily Kos (Apr. 24, 2026),
   https://www.dailykos.com/stories/2026/4/24/800027364/videos/kar
   oline-leavitt-southern-poverty-law-center-charlottesville-li ..............................18

The Southern Poverty Law Center (SPLC) respectfully seeks an order directing the government to (1) retract the false and unfairly prejudicial statement that Acting Attorney General Todd Blanche made on Fox News regarding the allegations against the SPLC; and (2) refrain from making any further false or otherwise prejudicial statements that compromise the SPLC's fair trial rights.

## I.    INTRODUCTION

On Tuesday, April 21, 2026, the U.S. Attorney's Office for the Middle District of Alabama obtained an indictment from the grand jury alleging that the SPLC unlawfully used donor money to fund "racist groups[]" by paying informants who were "leaders and organizers" of those groups. Indictment at 1, *United States v. Southern Poverty Law Center, Inc.*, No. 2:26-cr-00139, ECF 1 (M.D. Ala. Apr. 21, 2026). A few hours later—before the defense had even seen the indictment—Acting Attorney General Todd Blanche and FBI Director Kash Patel held a press conference in Washington, D.C. to announce and describe the charges.

That same evening, Acting Attorney General Blanche appeared as a guest on the widely viewed Fox News program *The Ingraham Angle*. During the program, Acting Attorney General Blanche claimed—falsely—that the government did not have information to suggest that the SPLC had shared information it learned from the informants with law enforcement. Specifically, he stated:

1

> [A]nd more importantly, there's no allegation or information in the indictment that suggests [the SPLC] shared [the information from the informants] with law enforcement.
>
> …
>
> There's no information that we have that suggests that the money they were paying to these informants and these members of these organizations, they then turned around and shared what they learned with law enforcement. To the contrary, or else we would have known, from their own words, that they had given this money to these guys. And we didn't know.

Those statements are false. Weeks before the indictment, undersigned counsel provided information to the government demonstrating unequivocally that the SPLC had shared information from its informants with law enforcement.

The government's false statement is highly material to the charges. The indictment alleges that the SPLC was paying informants not to dismantle "racist groups" but instead paid informants who were "engaged in the active promotion of racist groups." Indictment at 1. In fact, the prosecutors in this case knew of specific instances when the SPLC provided information to law enforcement to thwart, stop, or otherwise help dismantle the activities of those racist groups.

The defense promptly contacted the Acting U.S. Attorney who brought the case to confirm that Acting Attorney General Blanche would publicly retract the statement. *See* Exhibit 1.[1] The government refused to provide that confirmation or take action to correct it. The government's false statement must be corrected

---

[1] A portion of this letter identifies an individual by name. That portion has been redacted from the copy attached to this filing but will be provided to the court *in camera* in unredacted form.

publicly. In addition, Acting Attorney General Blanche's false statement gives rise to the concern that the grand jury heard evidence which incorrectly represented that the SPLC never shared information received from informants with the government, as well as arguments premised on that erroneous assertion.[2]

## II.    BACKGROUND

### A. The defense provided information to the U.S. Attorney's Office shortly before the indictment establishing that the SPLC had shared information from informants with law enforcement.

Earlier this year, undersigned counsel were advised by federal prosecutors in the U.S. Attorney's Office for the Middle District of Alabama (MDAL USAO) of an investigation of their client, the SPLC. In a meeting held February 25, 2026, at the MDAL USAO, government officials, including Acting U.S. Attorney Kevin Davidson, Assistant U.S. Attorney John Geer, and Assistant U.S. Attorney Brett Talley, provided certain information about the ongoing investigation. At that time, counsel were advised that the investigation covered a range of issues that stemmed from a common root: the SPLC's utilization of a program to pay individuals to infiltrate certain violent hate and extremist groups ("the informant program").

In a second meeting held at the MDAL USAO on April 6, 2026, and attended by Acting U.S. Attorney Davidson and Assistant U.S. Attorney Geer, defense

---

[2] This and other errors made by the government will be included in SPLC's also-filed Motion for the Disclosure of Grand Jury Materials.

counsel shared information about certain aspects of the informant program in the context of the defense's request for a protective order. This presentation centered on a review of documents relating to the informant program, including specific information gathered from informants and provided to law enforcement to prevent and assist in the investigation and prosecution of criminal activity. That meeting was intended, in part, to respond to the prosecutors' request for details about the defense's concern that widescale dissemination and disclosure of information about the informant program might put numerous individuals—including informants, current and former SPLC employees, and members of law enforcement—in danger from the violent groups they surveilled and others. The parties sought to reach agreement on the production and use of documents relating to the informant program so that the government could conduct its investigation without creating an undue risk of harm to individuals.

During the April 6 meeting, defense counsel presented documents and information relating to Individual A, a member of Vanguard America (a well-known extremist group) who sought a national security clearance as part of Individual A's work at the Philadelphia Navy Yard in 2018. The specific documents counsel provided to the prosecutors showed how and when the informant program gathered and passed information about Individual A to law enforcement. In addition, counsel provided copies of federal court pleadings in the Eastern District of Pennsylvania

4

relating to Individual A's criminal prosecution based on the conduct the SPLC reported. Those pleadings revealed that after Individual A was indicted based on the information the SPLC provided, the government repeatedly requested that Individual A be detained because of the serious risk of violence he presented.[3] The discussion at the MDAL USAO on April 6 left no uncertainty: the information developed through the informant program resulted in the detection of Individual A's criminal conduct, the SPLC passed information about this to law enforcement, the government investigated and indicted Individual A, and Individual A was detained and received a prison sentence.

Following that April 6, 2026, meeting, given the message from the MDAL USAO that it intended to indict the SPLC, defense counsel sent a letter ("the April 17 letter") to Acting U.S. Attorney Davidson, with a copy to Assistant U.S. Attorney Geer. Ex 2.[4] The April 17 letter sought to confirm that prosecutors presenting any indictment to the grand jury would comply with Justice Manual § 9-11.233, the Department of Justice's internal policy manual. That section provides:

> In *United States v. Williams*, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce

---

[3] Should the Court wish to review these documents, the SPLC is prepared to file them under seal. The government has been provided copies under separate cover.

[4] A portion of this letter identifies an individual by name. That portion has been redacted from the copy attached to this filing but can be provided to the Court *in camera* in unredacted form if the Court so desires.

substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

*Id.*

The April 17 letter detailed six categories of "substantial evidence that directly negate[]the guilt of a subject of the investigation," including "that the grand jury be informed of the countless examples of the SPLC in fact working to dismantle white supremacist organizations," and specifically highlighting "SPLC's involvement in alerting law enforcement to [Individual A's] criminal activity in connection with [Individual A's] efforts to obtain a national security clearance." Ex. 2 at 2–3. The letter requested that Acting U.S. Attorney Davidson "confirm by April 20, 2026, that you have or will inform the grand jury of this and any other information that negates your theories of criminal conduct as it relates to the SPLC." *Id.* at 4. Acting U.S. Attorney Davidson did not respond to the April 17 letter.

**B. DOJ indicted the SPLC and immediately made press statements.**

On April 21, 2026, the MDAL USAO presented an indictment of the SPLC to a grand jury. While the indictment included numerous allegations about the

6

informant program, it did not contain any reference to information gathered by the SPLC through the program and provided to law enforcement.

At 5:30 PM ET on April 21, 2026, the Department of Justice held a press conference to announce the SPLC indictment. Acting Attorney General Blanche and FBI Director Patel each offered prepared remarks and answered media inquiries regarding the indictment and responded to media inquiries on certain other topics.[5]

Shortly after the press conference on the evening of April 21, 2026, Acting Attorney General Blanche appeared on *The Ingraham Angle*, a highly rated and widely viewed program on Fox News.[6] During his interview, Acting Attorney General Blanche made a number of statements about the indictment of the Southern Poverty Law Center.[7] The following exchange occurred during his interview with Laura Ingraham, the program host:

> Ms. Ingraham:     Now, they [SPLC] say they're no longer using these informants in this way, and that it was necessary because they had all sorts of threats against the

---

[5] Despite professing to understand the need to keep their remarks "inside the indictment," both AG Blanche and Director Patel repeatedly strayed outside its boundaries in offering commentary. *See* The Justice Department, *Press Conference*, at 41:10 (YouTube, Apr. 21, 2026), https://www.youtube.com/watch?v=acDBWnnLJH0. The SPLC reserves the right to seek additional relief from the Court based on these statements.

[6] "The Ingraham Angle" averaged 2.9 million viewers in Q1 of 2026. *See* Press Release, Fox News Media, Fox News Channel Topples CBS in Viewers and Dominates All of Cable for 20th Consecutive Quarter (Apr. 1, 2026), https://press.foxnews.com/2026/04/fox-news-channel-topples-cbs-in-viewers-and-dominates-all-of-cable-for-20th-consecutive-quarter.

[7] *See* Fox News, *Acting AG Todd Blanche says SPLC fraud indictment is not politically motivated, calls conduct 'egregious'*, at 3:06 (Embedded Video, Apr. 21, 2026), https://www.foxnews.com/media/acting-ag-todd-blanche-says-splc-fraud-indictment-not-politically-motivated-calls-conduct-egregious.

|  |  |
|---|---|
|  | organization; firebombing threats and other acts of purported violence, and that's why they had to use these informants. And to that you say? |
| Mr. Blanche: | Well to that I say, for one, the indictment charges all the way through 2023, so I'm not- I'm here to speak about what they're doing right now, but that indictment charges a long period of time through 2023. And second, and more importantly, there's no allegation or information in the indictment that suggests they shared that information with law enforcement. They have communicated – |
| Ms. Ingraham: | They said they did – |
| Mr. Blanche: | Well, they communicated when they so chose, with law enforcement over the years. ***There's no information that we have that suggests that the money they were paying to these informants and these members of these organizations, they then turned around and shared what they learned with law enforcement***. To the contrary, or else we would have known, from their own words, that they had given this money to these guys. And we didn't know. |

A clip of this interview continues to circulate on various social media platforms, including the Department of Justice's Instagram, Facebook, and X pages, spreading its reach even farther than Ingraham's audience.[8]

---

[8] *See* @thejusticedept, INSTAGRAM (Apr. 21, 2026), https://www.instagram.com/reel/DXadjTAD HuP/?igsh=Mjlud3hiYTMyZHNx; The United States Department of Justice, Facebook (Apr. 21, 2026), https://www.facebook.com/reel/919579177563978; @TheJusticeDept, X (Apr. 21, 2026 at 8:10 pm), https://x.com/TheJusticeDept/status/2046743411403681994?s=20.

Information counsel provided to the MDAL USAO on April 6—a mere two weeks *before* the indictment—demonstrated that Acting Attorney General Blanche's bolded statement above was false. The prosecution in fact had information that established that the informant program produced information shared by the SPLC with law enforcement which led to the arrest, conviction, and imprisonment of Individual A—a person who the Department of Justice repeatedly alleged was dangerous in its successful attempts to convince the court to detain him.

**C. The defense promptly notified the prosecution that Acting Attorney General Blanche had made a false statement and explained why the statement was false.**

By letter to Acting U.S. Attorney Davidson dated April 22, 2026, defense counsel detailed exactly how Acting Attorney General Blanche's statement was false. *See* Ex. 1. As detailed above, the government was aware that on numerous occasions the SPLC received information from individual program informants and "shared what they learned with law enforcement." In addition to the information and documents counsel presented to the MDAL USAO detailing the informant program's efforts to assist in the prosecution of Individual A.[9]

---

[9] The information regarding Individual A is not the only information the government knew that made Acting Attorney General Blanche's statement false. An additional circumstance regarding Individual B is detailed in this motion, and a third circumstance will be detailed in the defense's Motion for the Disclosure of Grand Jury Materials filed this same day.

In 2019, the SPLC gathered through the informant program and provided to law enforcement information which detailed the risk that Individual B, a member of white supremacist extremist group Atomwaffen Division, intended to engage in a major terrorist attack against Las Vegas citizens. The press release issued later by the Department of Justice detailed Individual B's planned violence:

> [Individual B] admitted that, during online conversations between May 2019 and July 15, 2019, he discussed setting fire to a Las Vegas synagogue, and making Molotov cocktails and improvised explosive devices. Individual B further admitted that he conducted surveillance on a bar that he believed catered to the LGBTQ community, located on Fremont Street in Downtown Las Vegas, in preparation for a potential attack.[10]

The complaint filed by the government against Individual B, signed under oath by an FBI Special Agent, detailed specifically just how close Individual B got to executing a mass terror attack:

> FBI Special Agent Bomb Technician (SABT) Anthony Telenko located a bottle of "Pot Perm Plus" Potassium Permanganate, which can be used as a strong oxidizing agent, on the top shelf of [Individual B's] bedroom closet. Also located on the closet shelf were separate jars of thermite, sulfuric Acid and lithium aluminum hydride, which can be used as fuels. SABT Telenko further observed a soldering iron, wires, circuit boards, and other electrical components in Individual B's bedroom that are consistent with items needed to construct an (Improvised Explosive Device) ("IED") circuit. A green colored notebook containing numerous hand drawn schematics of IED circuits was also located in Individual B's bedroom. SABT Telenko reviewed

---

[10] Press Release, Department of Justice, United States Attorney's Office, District of Nevada, Las Vegas Man Pleads Guilty To Possession Of Bomb-Making Components (Feb. 10, 2020), https://www.justice.gov/usao-nv/pr/las-vegas-man-pleads-guilty-possession-bomb-making-components.

the hand drawn schematics and determined they were consistent with the items and circuitry needed to function a timed explosive device.

Complaint at ¶ 19, *United States v. [Individual B]*, Case No. 2:19-mj-00593-NJK, ECF 1 (D. Nev. 2019). Individual B was charged, pled guilty, and was imprisoned based on this conduct.

### D. Prior to filing this motion, the defense asked the government to correct its false statement to avoid the need for court intervention.

Prior to filing this motion, defense counsel attempted to resolve this matter without the Court's intervention. In the April 22 letter, counsel requested that Acting U.S. Attorney Davidson commit to issuing a correction or a full and immediate retraction of Acting Attorney General Blanche's statement. *See* Ex. 2 at 3. In response, Acting U.S. Attorney Davidson did not address the assertion that the SPLC provided information obtained by its informants about Individual B to law enforcement, nor did he challenge that he was provided specific information about the Individual A investigation by defense counsel a few weeks earlier. Nevertheless, he declined to commit, as the April 22 letter requested, "to immediately correct[ing] AG Blanche's false statement" or issuing a "full and immediate public retraction of that statement." Defense counsel advised that in light of the serious and ongoing harm the SPLC is facing as a result of Acting Attorney General Blanche's false statement, Acting U.S. Attorney Davidson's failure to do so would necessitate the SPLC raising the issue with the Court.

## III.   ARGUMENT

Acting Attorney General Blanche said publicly that the government had "no information" that "suggests that" the SPLC "then turned around and shared what they learned with law enforcement" from the informant program. As shown above, that is not true. Defense counsel presented information on the Individual A example directly to the prosecutors. Law enforcement had also been provided with information about Individual B by the SPLC.[11]

### A. Prosecutors have an obligation to ensure that they do not make false statements, and to correct false or misleading statements.

The Department of Justice is well aware that the SPLC provided helpful information, through the use of its confidential informants, to law enforcement. The Department of Justice also knows that these confidential informants helped law enforcement put violent extremists in jail. Any Department of Justice statement, whether made to the grand jury, to this Court, or to the general public suggesting that the SPLC did not provide informant information to law enforcement is completely false and must be corrected and prevented.

There can be nothing more fundamental to our system of justice than the obligation of an officer of the court to tell the truth and to refrain from making false statements. The preamble of the Alabama Rules of Professional Conduct states that

---

[11] The defense is prepared to provide additional details about this information in a sealed filing.

"[…] a lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice."

> Many of a lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct, as well as substantive and procedural law. However, a lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession, and to exemplify the legal profession's ideals of public service.

Ala. R. Prof. Conduct (Preamble), para. 6.

Lawyers holding public office assume legal responsibilities going beyond those of other citizens. Ala. R. Prof. Conduct 8.4 (Maintaining the Integrity of the Profession), cmt. para. 3. Lawyers may not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, Ala. R. Prof. Conduct 8.4(c), or engage in conduct that is prejudicial to the administration of justice. Ala. R. Prof. Conduct 8.4(d).

Under the Alabama Rules of Professional Conduct, prosecutors have special responsibilities above and beyond the responsibilities imposed on lawyers. Ala. R. Prof. Conduct 3.8 (Special Responsibilities of a Prosecutor). "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." Ala. R. Prof. Conduct 8.4, cmt. para. 1. The prohibition against conduct involving dishonesty is equally commanded whether a prosecutor is appearing on Fox News or standing at the podium in a court of law. *See, e.g.*, Ala. R. Prof. Conduct 3.6, 3.8, 4.1 and 8.4. The prosecutors here have specific obligations to see that the SPLC is accorded with procedural justice. Ala. R. Prof. Conduct 8.4, cmt. para. 1. The

government's conduct falls woefully short of these ethical obligations. Indeed, the prosecutor is prohibited by Rule 4.1(a) from making false statements and is prohibited by Rule 8.4(a) from knowingly assisting or inducing another to violate the Rules. Ala. R. Prof. Conduct 8.4, cmt. para. 4. Any lawyer representing the Department of Justice is required to ensure that their colleagues do not run afoul of the duty to tell the truth.

To rectify the false and unfairly prejudicial statement, counsel for the SPLC gave the government an opportunity to retract or correct the false statement. The government has chosen to do neither. As such, this Court should require the government to set the record straight.

### B. Prosecutors are prohibited from making extrajudicial statements that can jeopardize a defendant's right to a fair trial.

More fundamentally, "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991). For this very reason, numerous federal regulations and Justice Department policy prohibit extrajudicial statements that could prejudice a criminal defendant's right to a fair trial. This risk of jeopardizing a defendant's right to a fair trial could not be more salient than when the highest-ranking Justice Department official makes a demonstrably false statement about a criminal defendant's conduct.

14

The Code of Federal Regulations (CFR) contains clear rules governing statements made by Justice Department personnel aimed at protecting the rights of those accused of a crime while allowing statements that serve a legitimate law enforcement purpose. For example, Title 28, Section 50.2(b)(2) prohibits Justice Department personnel from "furnish[ing] any statement or information for the purpose of influencing the outcome of a defendant's trial[.]" Section 50.2(b)(3) dictates that "[d]isclosures should include only incontrovertible, factual matters[.]" Similarly, the Justice Manual directs that "DOJ personnel shall not make any statement or disclose any information that reasonably could have a substantial likelihood of materially prejudicing an adjudicative proceeding." Justice Manual § 1-7.600. False statements about a criminal defendant serve no legitimate law enforcement purpose and fundamentally jeopardize the defendant's right to a fair trial. And the fact that these statements were made on national television, viewed by millions, and amplified on social media by the Justice Department, is like screaming false and misleading information at the jury pool with a megaphone.

**C. The prejudice from the government's false statement at issue is not limited to that statement considering the government's media blitz in the days since the indictment was returned.**

The false and misleading statements at issue here are sufficiently egregious to merit Court intervention. The Rules of Professional Conduct are the minimum standards for a lawyer's conduct, and this Court should exercise its supervisory

15

powers to rectify the harm that the government has refused to self-correct. Within three hours of announcing the indictment of the SPLC, Acting Attorney General Blanche made a demonstrably false and misleading statement to an audience of millions about the SPLC's provision of information to law enforcement, prejudicing the SPLC.

But the prejudice from Acting Attorney General Blanche's false and misleading statement is not limited to that statement, because it did not occur in a vacuum. To the contrary, since the indictment was returned, officials at the very highest levels of the executive branch have made and maintained a barrage of media and other publicized statements not just describing the allegations but going far beyond the information contained in the indictment and exacerbating the prejudice to the SPLC.

Following on the initial press conference involving Acting Attorney General Todd Blanche and FBI Director Kash Patel, both Acting Attorney General Blanche and Director Patel have participated in interviews on conservative-leaning news outlets including Fox News and NewsNation. Those interviews have then been amplified by immediate publication and recirculation on social media platforms, including X and Truth Social. Both President Donald Trump and his spokesperson, Karoline Leavitt, have made statements about the indictment and the SPLC more broadly; President Trump has made his own statements and reposted news stories

on Truth Social and Ms. Levitt has commented during press availabilities and then sat for an interview on Fox News. Associate Deputy Attorney General Aakash Singh joined the chorus as well.

In each instance, the speaker has not confined their comments to the content of the indictment but has instead advanced talking points, such as accusing the SPLC of funding hate groups like the KKK, sowing division in the United States through support of such groups, and organizing the rally in Charlottesville that led to the death of Heather Heyer. Acting Attorney General Blanche has made false factual assertions to further the narratives. Ms. Leavitt claimed that the indictment shows that Charlottesville was a "hoax" perpetrated to discredit President Trump, Mr. Patel said that the SPLC engaged in "the ultimate hypocrisy" by funding hate groups they claimed to want to take out, and Mr. Singh claimed the SPLC was "deceiving the American people . . . all to promote fake racism." President Trump, during a *60 Minutes* interview, stated that "Charlottesville was all funded by the [SPLC]" as "part of the rigging of the election." President Trump further stated that the allegations in the indictment are "not just allegations…these are facts."

These and other examples are here:

- President Trump's interview on 60 Minutes:
  https://youtu.be/zj6Hwb3XrWc?si=cQDQ8GbHbdJJ-3NW

- President Trump's Truth Social posts:
  https://bsky.app/profile/pbump.com/post/3mkaedbeims22; https://truthsocial.com/@realDonaldTrump/posts/116459463235747487

- Acting Attorney General Blanche interview on NewsNation with Katie Pavlich: https://www.newsnationnow.com/video/ag-todd-blanche-talks-southern-poverty-law-center-indictment-katie-pavlich-tonight/11730108/

- FBI Director Patel interview on Sean Hannity: https://www.foxnews.com/video/6393681040112

- Press Secretary Leavitt interview on Fox News, embedded in this Daily Kos story: https://www.dailykos.com/stories/2026/4/24/800027364/videos/karoline-leavitt-southern-poverty-law-center-charlottesville-lie/

- Deputy Associate Attorney General Akaash Singh interview on This Week on Capitol Hill: https://thisweekoncapitolhill.com/

Whether by design or independently, these communications are being published and amplified on platforms that are widely consumed by the jury pool that will be called upon to adjudicate the actual allegations against the SPLC that are contained in the indictment. As a result, even before the first court appearance in this case, the SPLC finds itself the subject of relentless criticism and threats triggered by comments about the indictment, including many that are misleading or demonstrably false, coming from the highest levels of the executive branch.

**D. The Court has authority to address this violation.**

"Federal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." *United States v. DiBernardo*, 775 F.2d 1470, 1475-76 (11th Cir. 1985) (citing *United States v. Hasting*, 461 U.S. 499, 505 (1983)).

Courts use their supervisory powers to dismiss indictments with prejudice where "there is '(1) flagrant misbehavior and (2) substantial prejudice,'" and where there is "'no lesser remedial action' available." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). This kind of conduct has no place in the administration of justice and should not be permitted or rewarded with inaction. The defense respectfully requests that this Court take some form of remedial action to minimize external influence on potential jurors, to protect the SPLC's right to a fair trial, to deter further misconduct and to protect the integrity of the federal court.

In *United States v. Wilson*, the Eleventh Circuit found that a prosecutor's statements to a jury that defendant was a "major" drug dealer when he was charged with selling a half-ounce were "improper," but declined to reverse the conviction because the district court had made appropriate curative instructions to the jury. 149 F.3d 1298, 1300–01 (11th Cir. 1998). It noted that "[w]e thus find ourselves in a situation with which we are all too familiar: a prosecutor has engaged in misconduct at trial, but no reversible error has been shown." *Id*. at 1303. After describing the special obligations of a prosecutor, the Court of Appeals went on to caution that "we want to make clear that improper remarks and conduct in the future, especially if persistent, ought to result in direct sanctions against an offending prosecutor individually." *Id*. at 1304.

## IV. CONCLUSION

The Court should exercise its authority to provide the relief necessary to protect the integrity of this proceeding. The defense respectfully seeks an order directing the government to:

(1) retract the false and unfairly prejudicial statement that Acting Attorney General Todd Blanche made on Fox News regarding the allegations against the SPLC as a pretrial equivalent of a curative jury instruction; and

(2) refrain from making any further false or misleading statements about the allegations in the indictment and abide by the rules prohibiting extrajudicial statements that prejudice SPLC's right to a fair trial.

DATED this 28th day of April, 2026.        Respectfully Submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (D.C. Bar No. 481501)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (D.C. Bar No. 358651)
Isabella M. Oishi (D.C. Bar No. 90018056)
David A. Kolansky (NY Bar No. 5887765)
Lowell & Associates, PLLC

1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.
com
ioishi@lowellandassociates.com
dkolansky@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Addy R. Schmitt*
Kropf Moseley Schmitt PLLC
