

April 17, 2026

**VIA EMAIL**
Kevin P. Davidson
Acting United States Attorney
United States Attorney's for the Middle District of Alabama
131 Clayton Street
Montgomery, Alabama 36104

Dear Mr. Davidson:

As you know, with Bill Athanas and Bradley Arant Boult Cummings LLP, we represent the Southern Poverty Law Center ("SPLC"). We write to follow up on our meetings with you in your office on February 25 and April 6, 2026. Based on those discussions, we understand that an indictment of our client may be presented to the grand jury during the week of April 20.

This letter seeks confirmation that in the event an indictment of the SPLC is presented to the grand jury, you intend to meet your obligations as a federal prosecutor as set out in the Justice Manual in two important manners: (1) you will inform the grand jury of information that negates evidence of wrongdoing by SPLC; and (2) you will conduct an analysis of the relevant considerations before you charge a corporate entity such as the SPLC.

I.      Obligation to Provide the Grand Jury with Information Negating Guilt

First, we ask that the government confirm that it has or will provide the grand jury with all substantial evidence that directly negates the guilt of our client (and any other subjects or targets of the investigation), consistent with your obligations under Justice Manual 9-11.233.[1] As that provision states:

> In *United States v. Williams*, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the

---

[1] Of course, the legal and ethical obligations federal prosecutors face go far beyond those delineated in the Justice Manual. *See*, *e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.") and ABA Model Rule of Professional Conduct 3.8, Special Responsibilities of a Prosecutor. Moreover, even under the Justice Manual, a prosecutor should not seek an indictment on any charge for which sufficient evidence is lacking to obtain and sustain a conviction. *See* Justice Manual 9-27.220 Comment ("JM 9-27.220 sets forth the longstanding threshold requirement from the *Principles of Federal Prosecution* that a prosecutor may commence or recommend federal prosecution only if he/she believes that the person will more likely than not be found guilty beyond a reasonable doubt by an unbiased trier of fact and that the conviction will be upheld on appeal").



power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

At a minimum, we believe that compliance with this provision necessitates that the following information be provided to the grand jury prior to any presentment of an indictment of the SPLC:

➢ The government received false information from a source it is relying on in relation to this investigation. In our meeting on February 26, the government advised that it had received information that all the "F files," *i.e.*, the SPLC's files related to this program, had been destroyed, and that based on that information, the government did not contact the SPLC or issue a subpoena. In other words, the government not only received the information that the F files had been destroyed but also believed and relied on that claim. The government now knows that that information is demonstrably false. Under the circumstances, compliance with Justice Manual 9-11.233 requires that the government identify that source of information for the grand jurors and inform the grand jury that you received and relied on information from that source that turned out to be false, so that the grand jurors can properly determine what, if any, credibility to give any other information provided by that source.

➢ ████████████, known as "F-9," a source of evidence offered against the SPLC, is intensely biased against the SPLC because █████████████████████████ ████████████████████████████████████████████ Of course, the government would also be obligated to inform the grand jury if any other witnesses whom it is relying on harbor similar biases and/or that there are other compelling reasons to question the veracity of the information they have provided.

➢ With respect to allegations regarding certain bank accounts opened to pay the confidential informants, the government must also inform the grand jury that the SPLC disclosed to the banks that it was the owner-in-interest on those accounts. As the government acknowledged during our February 26 meeting, the local bank representatives—at least—were aware that the SPLC was the owner of those accounts. Because this transparency effectively negates any allegation that the SPLC committed any fraud on those banks, Justice Manual 9-11.233 dictates that this disclosure be made to the grand jury prior to presenting any indictment.

➢ The government should also ensure compliance with Justice Manual 9-11.233 by informing the grand jury that there is an exception in the tax laws that provides that nonprofit organizations, such as the SPLC, do not need to issue Form 1099s for payments to



informants. *See* Treas. Reg. § 1.6041-3(I) (providing an exception for "a payment to an informer . . . by an organization that is described in section 501(c)(3) and that makes such payments in furtherance of a charitable purpose to lessen the burdens of government"). Moreover, the grand jurors should be advised that even if this exception is deemed not to apply, evidence that the SPLC and related individuals believed in good faith that it was applicable would undermine an allegation of fraudulent intent.

➢ To the extent the government presents an indictment premised to any degree on the assertion that the SPLC was involved in "bolstering" or "propping up" white supremacist organizations beginning in 2014 (or at any point), compliance with Justice Manual 9-11.233 mandates that the grand jury be informed of the countless examples of the SPLC in fact working to dismantle white supremacist organizations—through work both related and unrelated to the work of the confidential informants. This disclosure should include, but not necessarily be limited to, the details we provided to you at our meeting on April 6, 2026, relating to ████████, an avowed white supremacist and member of the extremist group Vanguard America. As you will recall from that meeting, documents establish the SPLC's involvement in alerting law enforcement to ██████'s criminal activity in connection with his efforts to obtain a national security clearance (for which he was charged, convicted and jailed), and also demonstrate the substantial risk of harm he presents to the public (based on which he was ordered detained).

➢ Moreover, Justice Manual 9-11.233 dictates that the government inform the grand jury of the extensive coordination that the SPLC maintained with federal and state law enforcement over the years, including but not limited to details regarding criminal activity detected, prevented and prosecuted.

II.     Obligation to Consider the Principles of Prosecuting a Business Organization.

Second, please confirm that the government has conducted a "thoughtful analysis of all facts and circumstances presented in [this] case[,]" as required by Justice Manual 9-28.100. If, as was suggested during our meetings, the government plans to move forward with an indictment of the SPLC, we urge you to carefully reflect on the policy considerations articulated in the Justice Manual, including the collateral consequences of charging an organization that employs approximately 350 individuals, and the factors identified in JM 9-28.300. As you likely know, the F Program ended some time ago, and only a small number of individuals were involved in the program at any time.

***

There can be no question of the SPLC's significant contributions to civil society over the course of its 55-year history. We expect that the career prosecutors involved in this matter will act in accordance with the "fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion[.]" *Young v. United States ex*



*rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987). Accordingly, we ask that you carefully consider all of the relevant factors before moving forward with an indictment.

Please confirm by April 20, 2026, that you have or will inform the grand jury of this and any other information that negates your theories of criminal conduct as it relates to the SPLC and that you have conducted the relevant analysis under JM 9-28.000 et seq. We look forward to hearing from you.

Sincerely,

Addy R. Schmitt

cc:    William C. Athanas
        Andrea Moseley
        Sara Kropf
        ███████████ Special Agent, FBI
        John Geer, Assistant U.S. Attorney