IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | |
| v. | Case No. 2:26-cr-0139-ECM-KFP-1 |
| SOUTHERN POVERTY LAW CENTER, INC. Defendant. | |

**THE SOUTHERN POVERTY LAW CENTER'S REPLY IN SUPPORT OF ITS MOTION TO DISCLOSE TRANSCRIPTS OF GRAND JURY PROCEEDINGS**

# ARGUMENT

## I. THE SPLC HAS DEMONSTRATED THAT ITS REQUEST IS BOTH COMPELLING AND PARTICULARIZED IN LIGHT OF THE STATEMENTS MADE BY GOVERNMENT OFFICIALS CONCERNING THIS PROSECUTION.

The government rests its response on the premise that the SPLC is merely speculating that the grand jury may have been misinformed, and because it cannot offer direct evidence of misinstruction, disclosure is not warranted and its request must be denied. Opp. at 1, 4–5. But that assertion overlooks the statements made by Justice Department officials about the SPLC and these charges (Mot. at 3–5) and fails to address the deficiencies that exist on the face of the indictment. Previous public comments by Administration officials and certain flaws in the charging elements themselves suggest the case *did result* from misleading both the public and the grand jury that voted on the charges. Deficiencies include, for example, the omission of essential elements of intent in charging four counts of false statements to a federally insured bank, as well as a failure to reconcile the charges with recent Supreme Court precedent. Mot. at 10; *see Thompson v. United States*, 604 U.S. 408, 417 (2025). That is *not* speculation.

In an effort to refute the compelling need articulated by the SPLC, the government relies heavily on Rule 6(e)'s secrecy foundation, noting that grand jury secrecy is at its "highest" because the investigation into the SPLC is "ongoing" and involves "the potential use of cooperating witnesses" and "the possibility of

superseding charges." Opp. at 6. But even if that "potential" and "possibility" existed to some degree, that would not be enough to withhold disclosure in this case. First, government investigations are often "ongoing" in the literal sense of the word, and second, "the possibility of" bringing superseding charges exists in nearly every case as well. General notions of grand jury secrecy and the invocation of a hypothetical superseding indictment or cooperating witnesses are insufficient grounds to bar disclosure—particularly in the face of well-grounded concerns about how the grand jury was instructed here.[1] Additionally, the SPLC has already been indicted on 11 counts. The primary reasons for maintaining grand jury secrecy—preventing the escape of the accused, ensuring the utmost freedom to grand jury deliberations, contacting or tampering with witnesses or evidence, and protecting the subject of a possible indictment—are significantly diminished once a defendant has been charged. *Pitch v. United States*, 953 F.3d 1226, 1232 (11th Cir. 2020) (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.10 (1979)).

The government's reliance on *United States v. Phillips*, 843 F.2d 438 (11th Cir. 1988), in support of preserving grand jury secrecy here is also misplaced. Opp.

[1] While it may be accurate that, as a general matter, the need for continued grand jury secrecy is at its zenith while an investigation is ongoing, *see In re Grand Jury Proc. in Matter of Freeman*, 708 F.2d 1571, 1576 (11th Cir. 1983), after an indictment is charged, nothing explicitly precludes a trial court from releasing grand jury transcripts only *to defense counsel* where the limited disclosure and subsequent review of such files would materially aid in the Court or defense counsel's analysis of whether material misstatements or misinstructions were made to, or in the presence of, grand jurors.

at 1–2. *Phillips* concerned a dispute in which a defendant's financial records were obtained (from a cooperating witness) pursuant to a grand jury subpoena and were shared with investigators not authorized to receive them. However, those records "were never presented to a grand jury" and were not subject to the secrecy provisions of Rule 6(e). 843 F.2d at 440. In rejecting the defendant's motion to suppress those records, the court found that the documents in question were *not* "matters occurring before a grand jury" because they were never seen by nor presented to the grand jury and thus could not be subject to Rule 6(e)'s restrictions. *Id.* at 441. The government's reliance on *Phillips* to emphasize the "sacrosanct" nature of grand jury secrecy in *this case* is thus entirely misguided.

Notwithstanding the government's claims, if the Court has any lingering concerns about ongoing investigative details being prematurely revealed by disclosing the material to defense counsel or because "'the grand jury's role'" is perhaps not yet over, Opp. at 5 (quoting *United States v. Comey*, 809 F. Supp. 3d 396, 413 (E.D. Va. 2025)), the SPLC would respectfully urge the Court, as a preliminary step, to conduct an *in camera* review of the grand jury transcripts, along with any audio recording(s) of the government's grand jury presentation. This would allow the Court to scrutinize any possible incorrect legal instruction to grand jurors or misapplication of the law, without the "kind of 'fishing expedition'" the government is worried about. Opp. at 3. In addition, various provisions of the

existing protective order (*e.g.*, limiting review to attorneys only) would also address that concern, as well as prevent defense counsel and/or the SPLC from publicly disclosing confidential information that it may learn from the transcripts concerning any hypothetical "ongoing investigation" (Opp. at 6–7) which the government repeatedly references—without any specifics—as boilerplate justification for keeping the proceedings a secret from defense counsel.

Relatedly, as it concerns *in camera* review of any material, the government asserts that this case and *Comey*—in which the district court judge ordered the *in camera* review of grand jury transcripts (and audio) before disclosing those materials to the defense—"are hardly comparable." Opp. at 4–5. Not so. In pretrial motions to dismiss that indictment, defense counsel for Mr. Comey raised that certain aspects of the grand jury process—there, the identity of the lone prosecutor who presented the case to the grand jury and signed the indictment—likely "tainted the structural integrity of the grand jury process" and created "a presumption that Mr. Comey was prejudiced." *United States v. Comey*, No. 1:25-cr-00272-MSN-WEF, Def.'s Mot. and Memo. In Support of Mot. to Dismiss Indictment (ECF 60) at 21 (E.D. Va. Oct. 20, 2025). Here, the government relies on *Comey* to support its view that the "speculative assertions of the defense" should not be given credence, Opp. at 4, when in fact, relying on the assertions by Mr. Comey's defense counsel in pretrial motions is *precisely* what prompted the court to order the *in camera* review of grand jury

material in that case. Additionally, *in camera* review of the grand jury proceedings in *Comey* led, in part, to the court's conclusion that the prosecutor made "fundamental and highly prejudicial misstatement of the law" to the grand jurors, thereby supporting disclosure of the transcripts to defense counsel for further scrutiny. *Comey*, 809 F. Supp. 3d at 409. Accordingly, the government's arguments about *Comey* carry little, if any, weight at all.

Finally, the government's assertion that speculation about misstatements to the grand jury made in this case would necessarily "warrant disclosure in every case" is equally unpersuasive. Opp. at 5. This case is extraordinary and stands alone in history. This is particularly true considering that just a few hours after this indictment, the Acting Attorney General appeared on a public news program and (admittedly) made false statements about the SPLC. The federal charges leveled against the SPLC are one of the boldest and most unprecedented set of charges brought against a civil rights group in the history of the United States justice system. The charges seek to criminalize some of the very investigative tools and programs that the SPLC has used for decades to infiltrate and dismantle violent extremist organizations—information that has provided vital intelligence to U.S. law enforcement and has saved lives. Moreover, should the grand jury have been misled in the first instance, that is more reason for the Court to intervene to prevent any

further possible misinstruction, particularly given the real possibility that this matter could *again* be presented to the grand jury for superseding charges. *See* Opp. at 6.

## II. THE GOVERNMENT IS NOT ENTITLED TO THE PRESUMPTION OF REGULARITY IN THIS CASE.

The government posits that the SPLC's burden to obtain the disclosure of grand jury material exists regardless of whether the "presumption of regularity" applies. Opp. at 6, n.1. While that burden may fall on the SPLC, the *weight* of that burden is affected by the context of the unparalleled charges (and timing) in this case. The government does not meaningfully address the "unusual series of events . . . [that] calls into question the presumption of regularity" in this case, *see Comey*, 809 F. Supp. 3d at 410, or the documented political statements and pressure from the highest levels of the Administration. *See* Mot. at 2–5 (describing and listing statements made about the SPLC by President Trump, Acting Attorney General Blanche, FBI Director Patel).

For example, in the days immediately following the announcement of charges, whistleblower reports emerged (through disclosures to House lawmakers) accusing top Justice Department officials of pressuring prosecutors to rush to indict the SPLC, despite concerns about the merits and strength of the evidence and the case.[2]

---

[2] *Lawmakers accuse Justice Department of rushing SPLC indictment, citing whistleblower reports*, CNN (May 1, 2026), https://www.cnn.com/2026/05/01/politics/splc-indictment-rushed-whistleblower-reports; *see also* Letter from Reps. Jamie Raskin & Mary Gay Scanlon to Kevin P. Davidson, Acting U.S. Attorney for the Middle Dist. of Ala. (Apr. 30, 2026), https://democrats-

Additionally, the government sought—and a grand jury returned—this indictment just *two* business days after the U.S. Attorney's Office received 15,000 pages of subpoenaed records from the SPLC. Mot. at 15. The material the SPLC produced included substantial information gathered by and related to its now-closed informant or "F" program—details about which the indictment (and DOJ's press release announcing the charges) makes no reference. This rushed timeline, combined with the amount of material produced to the government by the SPLC, makes it highly improbable that the grand jury was presented with a complete view of the evidence in the government's possession. So, while the SPLC may have the burden here, as the government claims, when taking into account the broader context of these charges, minimal, if any, doubt remains that the SPLC has satisfied its burden to obtain grand jury transcripts.[3]

---

judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2026-04-30-raskin-scanlon-to-davidson-mdal-re-splc-and-first-amendment.pdf.

[3] As noted in the SPLC's opening brief (Mot. at 16–17), district courts across the country have increasingly signaled that the government, under the direction of this Justice Department and Administration, is no longer operating in a manner entitled to any presumption of regularity, particularly in the context of controversial charges. *See, e.g.*, *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *10 (4th Cir. May 19, 2025) (Gregory, J., concurring) ("As is becoming far too common, we are confronted again with the efforts of the Executive Branch to set aside the rule of law in pursuit of its goals. It is the duty of courts to stand as a bulwark against the political tides that seek to override constitutional protections and fundamental principles of law, even in the name of noble ends like public safety."); *President & Fellows of Harvard Coll. v. U.S. Dep't of Homeland Sec.*, 788 F. Supp. 3d 182, 205 (D. Mass. 2025) ("[T]he Court will not apply any presumption of regularity to conduct that is so unusual and therefore irregular on its face."), *appeal docketed*, No. 25-1627 (1st Cir. July 1, 2025); *Minn. Bureau of Crim. Apprehension v. Noem et al.*, 2026 WL 266463, at *7 (D. Minn. Feb. 2, 2026) (concluding that "[p]laintiffs rebutted the 'presumption of regularity' that ordinarily attends public officials' actions" in a case against federal agencies possessing evidence collected from the scene of Alex Pretti's death); *In re Search of One Device*

## III. A PROSECUTOR'S INTRODUCTORY REMARKS AND LEGAL INSTRUCTIONS TO THE GRAND JURY ARE NOT PRESUMPTIVELY COVERED BY RULE 6(e)'s SECRECY REQUIREMENT.

The prosecutor's charge and legal instructions do not go to the substance of the grand jury's deliberative process that Rule 6(e) sought to protect. While the Eleventh Circuit has not expressly held that Rule 6(e) does not cover the prosecutor's charge to the grand jury, several other courts have, finding that the prosecutor's charge is not the type of material subject to the ordinary rule of grand jury secrecy. *See*, *e.g.*, *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) ("The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect."); *United States v. Booth*, 2012 WL 2782598, at *5 (D. Nev. July 9, 2012) (ordering the disclosure of grand jury instructions to the defendant and explaining that "[t]he Ninth Circuit has suggested in dicta that a defendant is entitled to see the instructions to the grand jury"); *United States v. Fuentes*, 2008 WL 255794, at *4 (E.D. Cal. June 24, 2008) (finding that "defendants are entitled to the transcript

---

*and Two Individuals under Rule 41*, 784 F. Supp. 3d 234, 244 n.10 (D.D.C. 2025) ("Blind deference to the government? That is no longer a thing. Trust that had been earned over generations has been lost in weeks. Numerous career prosecutors have had to resign instead of taking actions that they believe violated their oath of office, or worse, were fired for upholding that oath.").

of the instructions and charges to the grand jury" without finding that defendants had shown particularized need).

Even if the instructions given to the grand jury are not wholly outside the bounds of Rule 6(e), the SPLC has more than met its burden of showing a particularized need tailored to this very narrow request. Historically, grand jury secrecy laws have served specific identified interests. *See Henry v. Att'y Gen., Alabama*, 45 F.4th 1272, 1284 (11th Cir. 2022). The legal instructions given to the grand jury reveal nothing about witness testimony, investigative direction, or grand jury deliberations—the heart of the material Rule 6(e) is designed to protect. The particularized need showing to warrant disclosure of instructions, if any, should be far lower than that of true 6(e) material.

The government also argues that if the indictment is "flawed on its face," as the SPLC alleged (Mot. at 9-10), then there is "no need to probe" the grand jury materials. Opp. at 4. Yet, the government's omission of essential elements in various of the counts, combined with the fact that the government alleges, incorrectly, that the SPLC defrauded donors by funding "racist groups" instead of "dismantling" them when the government knew, at the time of indictment, that the SPLC had actually provided information to law enforcement, creates a strong inference that the government likely misinstructed the grand jury on the law, which is a "matter that

occurred before the grand jury" under Rule 6(e)(3)(E)(ii). Accordingly, this request is narrowly tailored to the SPLC's showing of particularized need.

## CONCLUSION

For the foregoing reasons and as explained in its opening Motion, the SPLC respectfully requests that the Court order disclosure to the defense of transcripts of all grand jury proceedings in this case, pursuant to Federal Rule of Criminal Procedure 6(e).

DATED this 12th day of May, 2026

Respectfully Submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Addy R. Schmitt*
Kropf Moseley Schmitt PLLC