**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.<br><br>Defendant. | Case No. 2:26-cr-0139-ECM-KFP-1<br><br>**ORAL ARGUMENT REQUESTED** |

**THE SOUTHERN POVERTY LAW CENTER'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
THE INDICTMENT FOR VINDICTIVE PROSECUTION**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND ....................................................................5

ARGUMENT .........................................................................................21

    I.      The Government Has Vindictively Prosecuted the SPLC..................21

    II.     The Court Should Dismiss the Indictment With Prejudice Or, in the Alternative, Order Further Discovery and a Hearing On These Issues. ...................................................................................33

CONCLUSION.......................................................................................39

i

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Thomas*,
2008 WL 2225753 (M.D. Ala. May 27, 2008) ....................................................24

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ..............................................................................................23

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) .............................................................................................21

*Bragan v. Poindexter*,
249 F.3d 476 (6th Cir. 2001) ...............................................................................26

*Dixon v. Dist. of Columbia*,
394 F.2d 966 (D.C. Cir. 1968) .............................................................................26

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) .............................................................................................23

*Hartman v. Moore*,
547 U.S. 250 (2006) .............................................................................................23

*Maddox v. Elzie*,
238 F.3d 437 (D.C. Cir. 2001) .............................................................................22

*NAACP v. Button*,
371 U.S. 415 (1963) .............................................................................................23

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) .............................................................................................23

*Snyder v. Phelps*,
562 U.S. 443 (2011) .............................................................................................26

*United States v. Abrego Garcia*,
802 F. Supp. 3d 1055 (M.D. Tenn. 2025) .............................. 26, 31, 34, 35, 36, 39

*United States v. Abrego Garcia*,
  No. 3:25-cr-115, 2026 WL 1454303 (M.D. Tenn. May 22, 2026).... 25, 30, 33, 36

*United States v. Adams*,
  870 F.2d 1140 (6th Cir. 1989)...................................................................... 34, 35

*United States v. Armstrong*,
  517 U.S. 456 (1996) .............................................................................................34

*United States v. Barner*,
  441 F.3d 1310 (11th Cir. 2006)............................................................... 21, 22, 29

*United States v. Brown*,
  862 F. Supp. 2d 1276 (N.D. Ala. 2012)................................................................24

*United States v. Bucci*,
  582 F.3d 108 (1st Cir. 2009) ................................................................................23

*United States v. Carey*,
  816 F. Supp. 3d 129 (D.D.C. 2026)......................................................... 23, 30, 39

*United States v. Coleman*,
  382 F.Supp.3d 1260 (M.D. Ala. 2019) .................................................................29

*United States v. Gallegos-Curiel*,
  681 F.2d 1164 (9th Cir. 1982)..............................................................................26

*United States v. Goodwin*,
  457 U.S. 368 (1982) ....................................................................... 21, 22, 23, 24

*United States v. Hare*,
  820 F.3d 93 (4th Cir. 2016)..................................................................................38

*United States v. Johnson*,
  221 F.3d 83 (2d Cir. 2000)...................................................................................26

*United States v. Jones*,
  601 F.3d 1247 (11th Cir. 2010).............................................................................29

*United States v. Jordan*,
  635 F.3d 1181 (11th Cir. 2011).............................................................................34

*United States v. Koh*,
  199 F.3d 632 (2d Cir. 1999)......................................................................................24

*United States v. Kopp*,
  2022 WL 4483722 (M.D. Fla. Sept. 27, 2022).......................................................34

*United States v. Krezdorn*,
  718 F.2d. 1360 (5th Cir. 1983)................................................................................22

*United States v. Lee*,
  2024 WL 4210779 (11th Cir. Sept. 17, 2024) ........................................................25

*United States v. Olvis*,
  97 F.3d 739 (4th Cir. 1996).....................................................................................38

*United States v. P.H.E., Inc.*,
  965 F.2d 848 (10th Cir. 1992).......................................................................... 31, 32

*United States v. Petrova*,
  2026 WL 892470 (D. Mass. Apr. 1, 2026) .............................................. 36, 37, 38

*United States v. Rasco*,
  2010 WL 2160836 (S.D. Ga. May 27, 2010) .........................................................34

*United States v. Sanders*,
  211 F.3d 711 (2d Cir. 2000).....................................................................................23

*United States v. Silien*,
  823 F.2d 320 (11th Cir. 1987)..................................................................................34

*United States v. Slatten*,
  865 F.3d 767 (D.C. Cir. 2017) .................................................................................30

*United States v. Spence*,
  719 F.2d 358 (11th Cir. 1983)..................................................................................21

*United States v. Taylor*,
  749 F.2d 1511 (11th Cir. 1985)................................................................................21

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006)..................................................................................23

iv

**INTRODUCTION**

"The Southern Poverty Law Center, one of the greatest political scams in American History, has been charged with FRAUD."[1]

President Trump's triumphant statement on April 24, 2026, three days after an indictment was unsealed against the Southern Poverty Law Center ("the SPLC"), was the latest manifestation of a top-down, retributive campaign in which he directed his Justice Department to go after those individuals and groups he deemed his political enemies, including the SPLC.

To carry out the President's directive, others in the Administration targeted the SPLC, which now faces criminal charges for exercising its First Amendment right to identify, report on, and criticize extremist hate groups. The Administration has falsely accused the SPLC of being "anti-Christian," of aiding the Biden Administration's "weaponization" of the Department of Justice, of participating in political violence, and, most recently, of helping to "rig" the 2020 election against President Donald Trump. These examples of this Administration's animus over the past year culminated in the criminal charges against the SPLC—an indictment premised on conclusory accusations but devoid of provable facts or a proper statement of the law.

---

[1] Donald J. Trump (@realDonalTrump), Truth Social (Apr. 24, 2026), https://truthsocial.com/@realDonaldTrump/posts/11645797245781406.

Then, after praising the indictment his Justice Department handed him, President Trump went further. He publicly proclaimed the improper political motive behind the case, branding the SPLC a "Democrat Hoax, along with Act Blue and many others" and claimed that when the allegations are proven "the 2020 Presidential Election should be permanently wiped from the books and be of no further force or effect!"[2] President Trump doubled down on these farcical claims on a nationally televised *60 Minutes* interview a few days later. He falsely proclaimed that the 2017 "Unite the Right" rally in Charlottesville, Virginia "was all funded by the Southern [Poverty] Law [Center]."[3] President Trump asserted that the SPLC had funded this "total fake" event "to make me look bad."[4] The SPLC's efforts, according to the President, were "a part of the rigging of the [2020] election."[5]

The President's laid-bare admissions of the true purpose of the charges against the SPLC are not the only evidence of his improper use of criminal charges against one of his perceived adversaries. The manner in which prosecutors in this District pursued this indictment is anything but routine. The allegations in the indictment span *four* decades—implicating financial records, fundraising materials, personnel

---

[2] *Id.*

[3] *Extended Interview: President Trump on White House Correspondents' Dinner*, CBS News 60 Minutes (Apr. 26, 2026), available at https://www.youtube.com/watch?v=zj6Hwb3XrWc (23:50).

[4] *Id.*

[5] *Id.*

records, and other internal communications and records. It has been reported that an

earlier investigation by the Justice Department was closed without charges[6]; but this

Administration, as part of its attack on civil rights groups in general, and the SPLC

specifically, insisted on charges. And yet, in doing so, prosecutors did not even

request or seek through legal process *any* documents from the SPLC until *after*

advising defense counsel that the SPLC would be indicted within weeks. Before the

grand jury returned the indictment, the prosecutors did not interview *any* current

employees of the organization nor make any request of the SPLC's counsel for *any*

voluntary interviews of employees. They had already determined to seek an

indictment without ever reaching out to counsel for the SPLC. When counsel for the

---

[6] During the press conference to announce this indictment, there was a back and forth between Acting Attorney General Blanche and a reporter:

> Blanche: [The investigation has] been going on for a long time. There was a time that it was shut down for a while during the last administration. I don't know why. And it was started again over the past year or so, and that brings us to today.

> Reporter: I'm sorry, you mean the investigation began before this administration and then was shut down during the Biden investigation?

> Blanche: That's my understanding.

*DOJ Announces SPLC Indictment*, Rev (Apr. 22, 2026), ://www.rev.com/transcripts/doj-announces-splc-indictment.

Then, during Blanche's interview on *The Ingraham Angle* that same day, he said, "We know that this investigation was opened during the Biden administration and then mysteriously closed . . . I really don't have any information about why it was closed, and then we started again last year." *Acting AG Todd Blanche says SPLC fraud indictment is not politically motivated, calls 'egregious'*, Fox News (Apr. 21, 2026), https://www.foxnews.com/media/acting-ag-todd-blanche-says-splc-fraud-indictment-not-politically-motivated-calls-conduct-egregious.

SPLC affirmatively reached out to the prosecutors to schedule a meeting, in that meeting, they were informed that the decision to seek an indictment had already been made. These procedural irregularities show that the charges against the SPLC were a foregone conclusion based on prosecutorial vindictiveness—driven by the White House and FBI leadership's retribution campaign—rather than the result of a good faith examination of the evidence. In fact, in the days immediately following the announcement of charges, whistleblower reports filed with congressional lawmakers accused top Justice Department officials of pressuring prosecutors to rush an indictment of the SPLC, despite significant concerns about the merits of the case.[7]

After the indictment, the Administration's assault on the SPLC's free speech rights continued. President Trump, Acting Attorney General Todd Blanche, Deputy Associate Attorney General Aakash Singh, and FBI Director Kash Patel spoke at press conferences and televised interviews.[8] This post-indictment media blitz

---

[7] Tierney Sneed, *Lawmakers accuse Justice Department of rushing SPLC indictment, citing whistleblower reports*, CNN (May 1, 2026), https://www.cnn.com/2026/05/01/politics/splc-indictment-rushed-whistleblower-reports; Letter from Representatives Jamie Raskin & Mary Gay Scanlon to Kevin P. Davidson, Acting U.S. Attorney for the Middle Dist. of Alabama (Apr. 30, 2026), available at https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2026-04-30-raskin-scanlon-to-davidson-mdal-re-splc-and-first-amendment.pdf.

[8] Similarly, and part of this Administration's playbook, on the same day as the indictment, other government officials echoed the President's confirmation. The Treasury Department quickly posted: "As DOJ's allegations against the Southern Poverty Law Center demonstrates, this Administration will not look the other way as nonprofits exploit tax-exempt status to commit fraud." Treasury Department (@USTreasury), X (May 11, 2026), https://x.com/USTreasury/status/2053869820039352745.

culminated in President Trump's admission that the indictment is part and parcel of his years-long failed effort to overturn the 2020 election results.[9]

This is the very definition of a vindictive prosecution. The Court should dismiss the indictment as a violation of due process. In the alternative, the SPLC requests that the Court order the government to provide discovery on these issues to develop a complete factual record of the government's motivations and schedule an evidentiary hearing.

## FACTUAL BACKGROUND

### *The History of The Southern Poverty Law Center*

Founded in 1971 by two civil rights lawyers, the SPLC is a nonprofit organization that has worked for 55 years to ensure that the promise of the civil rights movement becomes a reality for all.[10] Over the years, the SPLC has won landmark legal victories against some of the nation's most violent white supremacist groups.[11] It seeks to educate the public about justice, inclusion, and the prevention of violence and extremism. It advocates to protect the rights of Black and Brown people, children, persons with disabilities, immigrants and migrant workers, the LGBTQ community, individuals who are incarcerated, and other groups disfavored by the

---

[9] *See* President Trump 60 Minutes Interview, *supra* note 3.

[10] The Southern Poverty Law Center, *Our History*, https://www.splcenter.org/about/our-history/ (last accessed May 25, 2026).

[11] *Id*.

5

current Administration.[12] And it seeks to strengthen our democracy by protecting voting rights, dismantling white supremacy, and eliminating economic inequality.[13]

While the SPLC's direct legal work and public advocacy on these issues comprise the organization's main body of work, the "Intelligence Project" has drawn the most public attention and criticism. The Intelligence Project tracks and exposes the existence and activities of hate groups and other domestic extremists. Each year, the SPLC publishes the *Year in Hate and Extremism* that informs the often cited "Hate Map."[14] In 2024, for example, the SPLC documented 1,371 hate and antigovernment extremist groups across the United States.[15] These are not—contrary to the SPLC's critics' claims—mainstream groups or those espousing traditional conservative political views. Rather, as defined in the *Year in Hate* report, these are groups that, through their rhetoric and activities, traffic in extreme and sometimes violent ideologies that seek to attack groups of people, typically for their immutable characteristics. Ex. 1 (2024 Year in Hate Report) at 46–47 (definitions).

Also relevant here, the SPLC's website publicizes what it calls "Extremist Files" about individuals and groups who have extremist ideologies, such as

---

[12] *Id.*

[13] The Southern Poverty Law Center, *Racial Justice Issues*, https://www.splcenter.org/racial justice-issues/ (last accessed May 25, 2026).

[14] The Southern Poverty Law Center, *The Year in Hate and Extremism 2024* (May 22, 2025), https://www.splcenter.org/resources/reports/year-hate-extremism-2024/.

[15] *Id.*

"sovereign citizen movement," "alt-right," "racist skinhead," "Holocaust denial," "white nationalist," "neo-Nazi," "anti-immigrant," and "anti-Muslim."[16] The list of the SPLC-identified individuals espousing extremist views includes an influential member of the Trump Administration (Stephen Miller[17]); a member of the first Trump Administration (Michael Flynn[18]); and known allies of President Trump (Alex Jones,[19] Nick Fuentes[20]).

### The Informant Program

Following threats and attacks on the SPLC itself, including a 1983 bombing of its offices in Montgomery, the SPLC started to find ways to protect itself and other potential targets of hate groups.[21] In the manner employed by law enforcement agencies for decades, the SPLC used paid consultants to infiltrate and inform on various white supremacist and other extremist groups. ECF 1 (Indictment) ¶ 8. When these confidential informants learned information about violence or other criminal

---

[16] The Southern Poverty Law Center, *Extremists, Groups, & Ideologies*, https://www.splcenter.org/resources/extremist-files/?meta_extremist_type=ideology (last accessed May 25, 2026).

[17] The Southern Poverty Law Center, *Extremist Files: Stephen Miller*, https://www.splcenter.org/resources/extremist-files/stephen-miller/ (last accessed May 25, 2026).

[18] The Southern Poverty Law Center, *Extremist Files: Michael Flynn*, https://www.splcenter.org/resources/extremist-files/michael-flynn/ (last accessed May 25, 2026).

[19] The Southern Poverty Law Center, *Extremist Files: Alex Jones*, https://www.splcenter.org/resources/extremist-files/alex-jones/ (last accessed May 25, 2026).

[20] The Southern Poverty Law Center, *Extremist Files: Nick Fuentes*, https://www.splcenter.org/resources/extremist-files/nick-fuentes/ (last accessed May 25, 2026).

[21] *See* Our History, *supra* note 10 (describing 1983 firebombing of the SPLC office by three members of the Ku Klux Klan).

7

activity and shared that information with it, the SPLC shared that information with law enforcement. ECF 22 at 2–5. Because of the SPLC's extensive knowledge about the white supremacist movement, it had developed and maintained ongoing relationships with members of law enforcement at the local, state, and federal levels, including with the FBI.

### Earlier Investigation of the SPLC

As reflected in discovery materials recently provided by the government, sometime in 2019 or 2020, investigative activity by the FBI, IRS, or other agencies included the SPLC. Federal agents interviewed at least two former confidential informants, at least one former SPLC employee, and subpoenaed documents from the SPLC's banks. During that investigation, prosecutors and the FBI looked into the same allegations at issue here. Whatever its genesis or focus, the earlier inquiry resulted in no charges being brought. But from the start of the second Trump Administration, targeting groups like the SPLC became a priority.

### The Accusation that the SPLC Is "Anti-Christian" and Part of the Biden Administration's "Weaponization" of the DOJ and FBI

On February 8, 2023, a former FBI Special Agent leaked an internal memorandum out of the Richmond, Virginia field office. Ex. 2 (K. Seraphin 2/8/23 post). The "Richmond Memo" reported that racially or ethnically motivated violent extremists were showing an increasing interest in what the FBI termed "radical-traditionalist Catholic" ideology and concluded that this pattern created

8

opportunities for new investigative sources and threat mitigation. Ex. 3 (Richmond Memo), at 1. The memo made clear that only a "small minority overall" of Catholics adhere to radical-traditionalist Catholic ideology and was careful to contrast it to mainstream Catholicism. *Id*. at Note (a). This small minority, according to the FBI, believes in "the rejection of the Second Vatican Council (Vatican II) as a valid church council; disdain for most of the popes elected since Vatican II, particularly Pope Francis and Pope John Paul II; and frequent adherence to anti-Semitic, anti-immigrant, anti-LGBTQ, and white supremacist ideology." *Id*. To support its assessment, the Richmond Memo cited the SPLC's website, which identified nine radical-traditionalist Catholic groups in the United States. *Id*. at 3–4.

Adopting then-presidential candidate Trump's "weaponization" mantra, Republican congressional leaders, including Senator Charles Grassley and House Judiciary Committee Chairman Jim Jordan began to pressure the FBI to target the SPLC. As one example, Senator Grassley and Senator James Lankford wrote the FBI that they were "deep[ly] concern[ed] that the FBI continues to use the Southern Poverty Law Center (SPLC) as a source for investigative reports and activities, despite its clear bias." Ex. 4 (10/11/23 Grassley Ltr.) at 1. These attacks were placeholders should President Trump again take office.

***The Current Administration Orders DOJ to Investigate "Weaponization" of the DOJ and FBI***

When President Trump did take office on January 20, 2025, official rhetoric about "weaponization" intensified. This was not just talk. In his inaugural address, President Trump declared that "the vicious, violent, and unfair weaponization of the Justice Department and our government will end." Ex. 5 (1/20/25 Inaugural Address Tr.) at 1. He then signed an Executive Order titled "Ending the Weaponization of the Federal Government," which stated it was now the "policy of the United States to identify and take appropriate action to correct past misconduct by the Federal Government related to the weaponization of law enforcement" and directed the Attorney General "to review the activities of . . . the Department of Justice. . . over the last 4 years and identify any instances where a department's or agency's conduct appears to have been contrary to the purposes and policies of this order." Ex. 6 (Weaponization Executive Order ("EO")) §§ 2–3. Then-Attorney General Bondi carried out that directive by issuing a DOJ memorandum titled, "Restoring the Integrity and Credibility of the Department of Justice." Ex. 7 (2/5/25 Bondi Memo). The memorandum established the Orwellian-named DOJ "Weaponization Working Group" tasked with reviewing, among other topics, the January 23, 2023 Richmond Memo, which, according to the Attorney General, "suggested that certain Catholic religious practices were affiliated with violent extremism and criminal activity." *Id*.

10

at 2. This directive by the Attorney General placed the SPLC squarely in the Administration's crosshairs.

The next day, President Trump established yet another task force, the DOJ "Task Force to Eradicate Anti-Christian Bias." On April 30, 2026, this Task Force published a 565-page report "detailing how the Biden Administration's prosecutions, policies, and practices demonstrated anti-Christian bias throughout the federal government,"[22] which heavily criticized the SPLC and the Richmond memo.

***The SPLC Continues to Exercise Its Protected First Amendment Rights***

The attempts by President Trump to muzzle and intimidate the SPLC did not deter it from carrying out its mission. The SPLC continued to publicly criticize and challenge many of the Administration's policies. For example:

- January 13, 2025, expressing concern about AG Bondi's record on civil rights (Ex. 8);
- January 21, 2025, condemning President Trump's pardon of the January 6th participants (Ex. 14);
- February 25, 2025, expressing concern over Harmeet Dhillon's nomination for the Civil Rights Division (Ex. 9);
- March 6, 2025, publishing an article that many of President Trump's advisors had "bigoted beliefs" and "racist ties" (Ex. 10);
- April 11, 2025, condemning the passage of the SAVE Act in the House (Ex. 11);
- June 11, 2025, condemning President Trump's move to rename military bases for Confederate leaders (Ex. 12);

---

[22] *See* Eradicating Anti-Christian Bias within the Federal Government, 2026 Report by the Task Force to Eradicate Anti-Christian Bias (Apr. 30, 2026), https://www.justice.gov/opa/media/1438506/dl?inline.

11

- November 20, 2025, denouncing Trump's deployment of ICE to New Orleans (Ex. 13);

- January 9, 2026, condemning DHS Secretary Kristi Noem labeling protesters as terrorists (Ex. 15);

- January 29, 2026, expressing concern after the FBI raided a Georgia election facility for 2020 files (Ex. 16);

- February 3, 2026, urging Congress to demand meaningful limits and accountability measures on DHS and ICE (Ex. 17); and

- April 1, 2026, criticizing unconstitutional executive order targeting voting rights (Ex. 18).

### *Blaming the SPLC's Annual Publications for the Murder of Charlie Kirk*

In May 2025, the SPLC released its 2024 Year in Hate and Extremism report, which included a profile of Turning Point USA ("TPUSA"). Ex. 1 (2024 Year in Hate Report). The report expressed the SPLC's view that TPUSA's "primary strategy is sowing and exploiting fear that white Christian supremacy is under attack by nefarious actors, including immigrants, the LGBTQ+ community and civil rights activists." *Id*. at 38.

When Mr. Kirk was killed on September 10, 2025, the SPLC condemned the act of violence that same day, saying "Violence only fuels division—justice requires peace."[23] At that tinderbox moment, President Trump blamed "Radical Left Terrorists."[24] Similarly, in a familiar page in the Trump Administration's playbook

---

[23] The Southern Poverty Law Center (@splcenter), Instagram (Sept. 10, 2025), https://www.instagram.com/p/DObxkrkjexj/.

[24] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 24, 2025), https://truthsocial.com/@realDonaldTrump/posts/115261106680507707.

of going after those he declared his opponents, his go-to congressional Republicans joined his chorus to baselessly connect the SPLC with political violence, including Mr. Kirk's killing. Republican Representative Chip Roy wrote to House leadership requesting that a select committee be formed to investigate what he called "the money, influence, and power behind the radical left's assault on America." Ex. 19 (9/11/25 Roy Ltr.). He connected the SPLC to violence, proclaiming that "[w]e have seen targets placed on the Family Research Council and Charlie Kirk by the Southern Poverty Law Center (SPLC) only to witness shootings toward each, including the tragic assassination of Charlie just this week, after being placed on the SPLC's notorious 'Hate Map' three months ago." *Id*.

At Mr. Kirk's memorial service a few days later, President Trump told the assembled crowd and streaming audience that "the Department of Justice is also investigating networks of radical left maniacs who fund, organize, fuel and perpetrate political violence."[25]

That same week, on September 22, 2025, President Trump issued an Executive Order titled "Designating Antifa as a Domestic Terrorist Organization." Ex. 20 (Antifa EO). One express directive was to "investigate" Antifa, "including necessary investigatory and prosecutorial actions against those who fund such

---

[25] President Trump Remarks at Charlie Kirk Memorial Service, Rev (Sept. 24, 2025), https://www.rev.com/transcripts/trump-speaks-at-kirk-memorial.

operations." *Id*. § 2. Then, in his National Security Presidential Memorandum 7, titled "Countering Domestic Terrorism and Organized Political Violence." Ex. 21 (9/25/26 NSPM-7), President Trump described Mr. Kirk's killing as part of "a culmination of sophisticated, organized campaigns of targeted intimidation, radicalization, threats, and violence designed to silence opposing speech, limit political activity, change or direct policy outcomes, and prevent the functioning of a democratic society." *Id*. NSPM-7 directed law enforcement to investigate not only direct perpetrators of violence but also "institutional and individual funders, and officers and employees of organizations, that are responsible for, sponsor, or otherwise aid and abet" criminal conduct, and designated such conduct as a domestic terrorism priority for the Department of Justice. *Id.* This directive was plainly focused on attacking civil rights organizations who engaged in political speech with which President Trump disagrees.

At an October 2025 roundtable at the White House, President Trump—with Attorney General Bondi at his side—threatened progressive organizations with criminal charges. He said that "you should see what we have on these people. These are bad people. These are people that want to destroy our country. We're not going to let it happen. . . . But we're going to be very threatening to them. Far more threatening to them than they ever were with us. And that includes the people that fund them. . . But if they do, they're in deep trouble. So we're going to be looking

14

very strongly at the people that are funding these operations." Ex. 22 (10/8/25 Roundtable Tr.) at 2.

The SPLC, along with other nonprofits, refused to back down. The SPLC joined a coalition of over 300 nonprofit organizations in an open letter responding to the Administration's pattern of executive action against the President's disfavored organizations. The letter unequivocally "reject[ed] political violence." Ex. 23 (10/1/25 letter from nonprofits). It stated: "No president—Democrat or Republican—should have the power to punish nonprofit organizations simply because he disagrees with them." *Id*. It characterized the Administration's actions as "reprehensible and dangerous" efforts to "defund, discredit, and dismantle nonprofit groups" in violation of the First Amendment. *Id*.

### *FBI Director Kash Announces that the SPLC Has "Inspired Violence"*

Two days after the SPLC signed this open letter, FBI Director Patel, who by his actions and statements has made clear he sees his job as one to carry out President Trump's retribution campaign,[26] announced the formal termination of any FBI

---

[26] *See*, *e.g.*, Ryan Reilly et al., *Kash Patel fires at least six FBI agents tied to 2022 Mar-a-Lago search*, NBC (Feb. 25, 2026), https://www.nbcnews.com/politics/justice-department/kash-patel-fires-fbi-agents-tied-mar-lago-search-trump-documents-rcna260743; Evan Perez et al., *FBI Director Kash Patel ousts personnel tied to Trump classified documents probe*, CNN (Feb. 26, 2026), https://www.cnn.com/2026/02/25/politics/fbi-agents-fired-classified-documents-kash-patel-toll-records; Brooke Singman, *FBI launches criminal investigations of John Brennan, James Comey: DOJ sources*, Fox (July 8, 2025), https://www.foxnews.com/politics/john-brennan-james-comey-under-criminal-investigation-doj-sources.

collaboration with the SPLC, attacking the Hate Map in particular.[27] He falsely—

and without citing any evidence—stated that the SPLC had "inspired violence."[28]



[27] It is worth noting that this post, which makes clear that the FBI did receive information from SPLC over the years, stands in sharp contrast to Acting Attorney General Blanche's statements on *Fox News* on the day of the indictment that "**[t]here's no information that we have that suggests that the money [SPLC was] paying to these informants and these members of these organizations, they then turned around and shared what they learned with law enforcement**." ECF 23 at 8 (emphasis in original).

[28] Kash Patel (@FBIDirectorKash), X (Oct. 3, 2025), https://x.com/FBIDirectorKash/status/197411441671123293.

### *The Indictment of the SPLC and the DOJ Press Conference*

As if written from the false allegations made by President Trump, members of his Administration, and his allies in Congress, on April 21, 2026, prosecutors in the Middle District of Alabama sought and obtained an indictment of the SPLC. ECF 1. It accuses the SPLC of having funded "the leaders and organizers of racist groups, including the Ku Klux Klan, the Aryan Nation, and the National Alliance." *Id.*, Introduction. It alleged that these payments were not used to "dismantle" these groups, as SPLC said, but to support the groups. *Id.* ¶ 19. Many of the allegations in the indictment are demonstrably false, but that fight is for another day.[29]

Following the indictment, Acting Attorney Todd Blanche and Director Patel held a televised press conference. During the press conference, Acting Attorney General Blanche asserted that the SPLC "pa[id] sources to stoke racial hatred" and "manufactur[ed] the extremism it purports to oppose."[30]

---

[29] Pending before the Court is the SPLC's Motion to Disclose the Transcript of Grand Jury Proceedings (ECF 22), which demonstrates that there are grounds to disclose to the defense (or the Court) how DOJ was able to bring charges which misapply the law and misstate the facts. Since filing the grand jury motion, based on indications of irregularities, a federal court ordered the disclosure of the grand jury proceedings, reviewed it initially in camera, and then described them publicly. Those indications proved true (and then some). *See* Ex. 27 (transcript of 5/21/26 hearing in *United States v. Rabbitt*, Case No. 25-CR-00693 (N.D. Ill.)). The record in this case—false public statements of fact by Justice Department officials and facial flaws in the charges—would support the Court here doing the same review.

[30] *Todd Blanche, Kash Patel press conference reveals Southern Poverty Law Center indictment* (Apr. 22, 2026), 00:50 – 01:03, available at https://www.youtube.com/watch?v=KS0TNiaqU4o.

***Acting Attorney General Todd Blanche Makes False Statements***

Not only did Acting Attorney General Blanche escalate the rhetoric at the press conference, but he then appeared as a guest on the *Fox News* show *The Ingraham Angle*. As explained in more detail in the SPLC's Motion to Address the Government's Materially False Statements and to Enforce Rules Prohibiting Further Prejudicial Extrajudicial Statements (ECF 23), Acting Attorney General Blanche falsely claimed that the DOJ did not have information to suggest that the SPLC had shared information it learned from the informants with law enforcement. Specifically, he stated:

> [A]nd more importantly, there's no allegation or information in the indictment that suggests [the SPLC] shared [the information from the informants] with law enforcement.
>
> …
>
> There's no information that we have that suggests that the money they were paying to these informants and these members of these organizations, they then turned around and shared what they learned with law enforcement. To the contrary, or else we would have known, from their own words, that they had given this money to these guys. And we didn't know.[31]

As the SPLC's motion explained, this statement was affirmatively false and DOJ knew it. ECF 23 at 2, 9. Counsel for the SPLC had met with then-Acting U.S. Attorney Kevin Davidson and detailed documents which evidenced the SPLC

---

[31] *Acting AG Todd Blanche says SPLC fraud indictment is not politically motivated, calls 'egregious'*, *supra* note 6.

18

reporting intelligence from an informant to DOJ which resulted in criminal charges. *Id*. at 3–5. But even that meeting and the information shared by the SPLC's counsel to try to avoid an indictment did not stop Acting Attorney General Blanche from appearing on a widely viewed show to say that the SPLC failed to share information with law enforcement. The government has since acknowledged that Acting Attorney General Blanche's statement was erroneous. *See* ECF 27 at 2.

### President Trump Declares the Motivation for the Indictment

A few days after the indictment, President Trump explained why the SPLC had been indicted. It had nothing to do with the SPLC breaking the law; it had everything to do with the SPLC's perceived political leaning. He posted on Truth Social:[32]



**Donald J. Trump** ✔ ▣
@realDonaldTrump

The Southern Poverty Law Center, one of the greatest political scams in American History, has been charged with FRAUD. This is another Democrat Hoax, along with Act Blue, and many others. If it is true, the 2020 Presidential Election should be permanently wiped from the books and be of no further force or effect! Thank you for your attention to this matter. President DJT

7.69k ReTruths   26.7k Likes                          Apr 24, 2026, 1:13 AM

---

[32] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 24, 2026), *supra* note 1.

19

Then President Trump appeared on CBS News' *60 Minutes* to offer a more detailed explanation for the indictment.[33] He described the SPLC as "a total scam run by the Democrats." More to the point, President Trump falsely stated that the SPLC had "funded" the Unite the Right rally "to make me look bad." According to the President, "[t]his was a part of the rigging of the [2020] election." One media outlet quoted President Trump as saying from the Oval Office that the SPLC was "actually supporting" hate groups "because they want to have companies that they can protect and because they want to rig elections."[34] Echoing President Trump, the White House spokesperson, Karoline Leavitt, falsely claimed that SPLC had funded the leaders of the "Charlottesville Hoax."[35]

The Assistant Attorney General for Civil Rights Harmeet Dhillon, reported to be seeking the position of Attorney General,[36] was interviewed on April 24, 2026, by Newsmax.[37] She explained that the indictment of the SPLC is "personal" to her because she has seen "a lot of journalist friends . . . and groups that I've represented who have been targeted by the Southern Poverty Law Center." Based on the SPLC's

---

[33] President Trump 60 Minutes Interview, *supra* note 3.

[34] The White House, *President Trump Delivers Remarks, Apr. 23, 2026*, YouTube (Apr. 23, 2026), https://www.youtube.com/watch?v=O332r5o8F98.

[35] Aaron Rupar (@atrupar.com), Bluesky (Apr. 24, 2026), https://bsky.app/profile/atrupar.com/post/3mkazy3lj622m.

[36] Dustin Gardiner, *The woman who thinks civil rights went too far*, Politico (Apr. 6, 2026), https://www.politico.com/news/2026/04/06/harmeet-dhillon-doj-ag-california-00855561.

[37] Newsmax, *SPLC indictment is 'earth shattering': Harmeet Dhillion*, YouTube (Apr. 24, 2026), https://www.youtube.com/watch?v=jGiYsEWOZxY.

"targeting," Dhillon said, "it's about time that we see some accountability" for the organization. *Id*. In other words, a high-ranking DOJ official said that if the SPLC criticized one of Dhillon's "friends," criminal charges were the appropriate response.

## ARGUMENT

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). Although a grand jury's finding of probable cause generally precludes courts from questioning the government's decision to prosecute, courts may analyze whether a prosecutor obtains charges out of a "desire to punish a person for exercising his [statutory or constitutional] rights." *United States v. Barner,* 441 F.3d 1310, 1315 (11th Cir. 2006); *see also Goodwin*, 457 U.S. at 372 ("while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

## I.    The Government Has Vindictively Prosecuted the SPLC.

If a prosecutor's charging decision "results from the defendant's exercise of a protected legal right, as opposed to the prosecutor's normal assessment of the social interests to be vindicated by the prosecution," then it is an "improper 'penalty'" on the defendant. *United States v. Taylor*, 749 F.2d 1511, 1514 (11th Cir. 1985) (per curiam) (citing *United States v. Spence*, 719 F.2d 358, 364 (11th Cir. 1983)). The

vindictive prosecution doctrine aims to prevent the government from using the threat of a criminal prosecution to deter the exercise of constitutional rights. *See Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001) ("the fear of prosecutorial vindictiveness may unconstitutionally deter a defendant's exercise of a constitutional or statutory right") (quotation marks and citations omitted) (citation modified).

Most cases address a claim of vindictive prosecution based on government conduct after a case has been charged "upping the ante" and to punish a defendant's assertion of a protected right. *See, e.g., Goodwin*, 457 U.S. at 376. But the Eleventh Circuit has stated that "nothing in the language or rationale of *Goodwin* rules out the possibility that a case could present *additional factors* that would make it appropriate to use the presumption of prosecutorial vindictiveness in a *pre-trial setting*." *Barner*, 441 F.3d at 1317 (emphases added). Noting that this Circuit "has neither adopted nor rejected a per se rule that the presumption of vindictiveness cannot apply in a pre-trial setting," Judge John R. Gibson pointed to other circuit courts which sought to evaluate the likelihood of a vindictive prosecution claim "in a particular factual situation," *id.*, and specifically noted the Fifth Circuit's "'totality of circumstances approach,' in which [a court] looks at all the facts of the case." *Id.* at 1318 (quoting *United States v. Krezdorn*, 718 F.2d. 1360, 1364–65 (5th Cir. 1983) (en banc)).

A recent district court decision also addressed a defendant's claim of vindictive prosecution for pre-prosecution speech and found that because defendant

22

had presented sufficient evidence that the government's justification to prosecute him was pretextual, he could seek discovery into the government's true motives for pursuing the case. *United States v. Carey*, 816 F. Supp. 3d 129, 140, 144 (D.D.C. 2026). *Carey* pointed to two other federal circuits considering the same type of claim: *United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000) and *United States v. Bucci*, 582 F.3d 108 (1st Cir. 2009). A court should consider a motion predicated on the government's attempt to "deter people from exercising their rights" because "the law is especially concerned with chilling effects when it comes to free speech." *Carey*, 816 F. Supp. 3d at 139 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486–87 (1965)); *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66 (1963); *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1220 (9th Cir. 2006); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) (the government cannot "convey a threat of adverse government action in order to punish or suppress . . . speech").

The same legal standards hold true in this case. The government may not prosecute the SPLC as a punishment for its protected speech; such an indictment violates both the First Amendment and the Due Process Clause. *Goodwin*, 457 U.S. at 372; *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.").

To establish a vindictive prosecution claim, a defendant must show that "'(1) the prosecutor acted with genuine animus toward the defendant, and (2) the defendant would not have been prosecuted but for that animus.'" *Baker v. Thomas*, 2008 WL 2225753, at *8 (M.D. Ala. May 27, 2008) (quoting *Goodwin*, 457 U.S. at 372). A defendant can make such a showing by either showing facts that give rise to a presumption of vindictiveness or by offering evidence of a prosecutor's actual vindictiveness. *See United States v. Brown*, 862 F. Supp. 2d 1276, 1289 (N.D. Ala. 2012), *aff'd*, 516 F. App'x 872 (11th Cir. 2013).

That the actual members of the prosecution team who brought these charges did not make their own public statements of animus is no bar to a vindictive prosecution motion. Prosecution is vindictive when a prosecutor acts on his own animus or "was prevailed upon to bring the charges by another with animus," *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (quotations and citations omitted), and thus the motive of the Administration as a whole, not just the two prosecutors who signed this indictment, informs the vindictiveness inquiry. Beyond the statements of Mr. Blanche, Mr. Patel, and Ms. Dhillon, federal whistleblower reports have accused top DOJ officials, including Associate Deputy Attorney General Aakash Singh, of having pressured prosecutors to rush to indict the SPLC, despite

24

concerns about the merits of the case.[38] Indeed, just last week, another federal court dismissed criminal charges in part because Mr. Blanche and Mr. Singh directed a vindictive prosecution, another shift towards the demise of any presumption of regularly for this Justice Department. *See United States v. Abrego Garcia*, No. 3:25-cr-115, 2026 WL 1454303, at *3 (M.D. Tenn. May 22, 2026) (finding unrebutted presumed vindictiveness and holding "[t]he reopening of the investigation, Blanche's unrebutted statements, and Singh's sustained oversight together support that inference. Blanche's statements tie Main Justice to the tainted investigation and confirm what motivated it.").

"[A] defendant may show actual vindictiveness . . . [by] prov[ing] through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights." *United States v. Lee*, 2024 WL 4210779, at *4 (11th Cir. Sept. 17, 2024) (alterations in original) (quotations and citations omitted). The record and timeline of what the SPLC has done and said carrying out its mission, combined with the President's criticisms that resulted in the indictment in this case, demonstrate that the SPLC is being punished for repeatedly speaking out against President Trump's policy choices and for having criticized his political goals and allies. This expressive conduct warrants the highest protection because "[s]peech on 'matters of public

---

[38] *See* Letter from Representatives Jamie Raskin & Mary Gay Scanlon to Kevin P. Davidson, Acting U.S. Attorney for the Middle Dist. of Alabama, *supra* note 7.

concern' . . . is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (citation omitted); *see also Bragan v. Poindexter*, 249 F.3d 476, 483–84 (6th Cir. 2001) (finding "reasonable likelihood of vindictiveness" where prosecutors had "some stake in deterring Petitioner's exercise of his First Amendment rights").

The quintessential forms of direct evidence of genuine animus are statements from prosecutors and Executive Branch officials expressing improper motivations for bringing charges. *See, e.g.*, *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982) ("an expressed hostility or threat to the defendant for having exercised a constitutional right" considered as part of evidence for actual vindictiveness); *United States v. Abrego Garcia*, 802 F. Supp. 3d 1055, 1060–61 (M.D. Tenn. 2025) (examining statements made by Executive Branch officials about defendant); *United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000) (noting "evidence of a statement by the prosecutor" among forms of direct evidence of actual vindictiveness). Where the government admits to bringing charges *because of* or in response to a defendant's past interactions with law enforcement, that may also constitute direct evidence of vindictiveness. *See Dixon v. Dist. of Columbia*, 394 F.2d 966, 968 (D.C. Cir. 1968) (direct evidence of vindictiveness where charges brought because defendant had made a formal complaint against police officers).

26

The Court need not look far to see the direct evidence of the government's vindictive motive to punish the SPLC for engaging in constitutionally protected speech, expression, and political activity.

- In October 2025, FBI Director Patel said that the SPLC was a "partisan smear machine" that had "inspired violence."[39]

- On April 21, 2026, Acting Attorney General Todd Blanche and FBI Director Kash Patel held a televised press conference where Acting Attorney General Blanche asserted that the SPLC "pa[id] sources to stoke racial hatred" and "manufactur[ed] the extremism it purports to oppose."[40]

- On April 21, 2026, Acting Attorney General Blanche falsely declared on *Fox News* that DOJ was not aware the SPLC had shared information it learned from informants as a way to undermine the SPLC.[41]

- On April 23, 2026, President Trump said—in a press conference in the Oval Office—that the SPLC was "actually supporting" hate groups "because they want to have companies that they can protect and because they want to rig elections" and that the SPLC is "crooked as can be."[42]

- On April 24, 2026, President Trump posted on Truth Social that the SPLC was "one of the greatest political scams in American History," that it is "another Democrat Hoax," and that if the allegations were true, then "the 2020 Presidential Election should be permanently wiped from the books and be of no further force or effect!"[43]

---

[39] Kash Patel (@FBIDirectorKash), X (Oct. 3, 2025), *supra* note 28.

[40] *Todd Blanche, Kash Patel press conference reveals Southern Poverty Law Center indictment* (Apr. 22, 2026), *supra* note 30.

[41] *Acting AG Todd Blanche says SPLC fraud indictment is not politically motivated, calls 'egregious'*, *supra* note 6.

[42] *President Trump Delivers Remarks, Apr. 23, 2026*, *supra* note 34.

[43] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 24, 2026), *supra* note 1.

- On April 24, 2026, Assistant Attorney General for Civil Rights Harmeet Dhillon said on *Newsmax* that the indictment of the SPLC is "personal" to her because she has seen "a lot of journalist friends . . . . and groups that I've represented who have been targeted by the Southern Poverty Law Center." She praised the indictment as imposing "some accountability" based on the SPLC's apparent criticism of her "friends" and former clients.[44]

- On April 26, 2026, President Trump appeared on *60 Minutes* to blast SPLC as "a total scam run by the Democrats," to state falsely that SPLC had "funded" the Unite the Right rally "to make me look bad," and to make clear that SPLC "was a part of the rigging of the [2020] election."[45]

Beyond these examples, President Trump and his Justice Department have long expressed their desire to investigate and charge the SPLC based on the SPLC's protected speech. For example, they directed DOJ and the FBI to investigate groups (of which the SPLC was one) that supposedly were part of the "weaponization" of those two agencies during President Biden's term in office. *See* Ex. 6 (Weaponization EO); Ex. 7 (Bondi 2/25/25 memo). The January 2025 Weaponization EO directed DOJ to "take appropriate action" against "the weaponization of law enforcement" and ordered a review of all activities for the past four years. Ex. 6, §§ 2–3. That directive encompassed the controversy over the Richmond Memo that congressional Republicans had fomented since February 2023. AG Bondi then directed DOJ's new "Weaponization Working Group" to review the Richmond Memo's conclusions,

---

[44] *SPLC indictment is 'earth shattering': Harmeet Dhillion*, *supra* note 37.

[45] President Trump 60 Minutes Interview, *supra* note 3.

28

more directly linking the prosecutorial efforts to the SPLC. Ex. 7. In addition, President Trump unquestionably disagreed with the SPLC's "partisan" views as a source for the FBI. *See supra* note 22 and Ex. 24 ("Eradicating Anti-Christian Bias Executive Order") (accusing Biden administration of "an egregious pattern of targeting peaceful Christians" and describing the Richmond Memorandum as having cited "propaganda from highly partisan sources"). Finally, the SPLC's criticism of Turning Point USA (Ex. 1), led by Mr. Kirk, fueled the Administration's directive to investigate the SPLC, given the September 2025 statements by President Trump (*supra* note 25), the related Antifa EO (Ex. 20), the Antifa Roundtable (Ex. 22) where President Trump directed DOJ to investigate "antifa" supporters and funders, and Director Patel's accusation that SPLC "inspired violence" (*supra* note 28). Taken individually, but especially together, the evidence of actual vindictiveness clearly establishes that "the government's justification" for the charges "is pretextual." *United States v. Jones*, 601 F.3d 1247, 1261 (11th Cir. 2010).

Even if there was no evidence of actual vindictiveness, a presumption of vindictiveness clearly rises from the unique circumstances of this case sufficient to shift the burden to the government. "In the pretrial context, a presumption of vindictiveness may arise if the facts of the case form a realistic likelihood of vindictiveness." *United States v. Coleman*, 382 F.Supp.3d 1260, 1265 (M.D. Ala. 2019) (citing *Barner*, 441 F.3d at 1318). A defendant "can point to circumstantial

29

evidence that suggests that the Government acted vindictively" by showing "that his case fits a general fact pattern in which there is a 'realistic likelihood' of vindictiveness." *Carey*, 816 F. Supp. 3d at 141 (quoting *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017)).

For example, in dismissing the indictment against Mr. Abrego Garcia, the district court there found that the government had not rebutted the presumption of vindictiveness. *Abrego Garcia*, 2026 WL 1454303, at *3. As evidence to support the presumption, the court relied on statements by Mr. Blanche that DOJ reopened its investigation *after* Mr. Abrego Garcia challenged his deportation, leading a Maryland federal judge to question the Executive Branch's deportation decision. *Id*. at *5 ("Blanche's words directly confirm that the Executive Branch reopened the criminal investigation because the Judicial Branch required the Executive Branch to facilitate Abrego's return from El Salvador."). Mr. Singh's direction of the Abrego Garcia indictment, according to the court, "ties the indictment to Blanche's vindictive motive." *Id*. The court found that "the credible objective evidence shows that, 'but for' Abrego [Garcia]'s successful lawsuit, the Government 'would not have' indicted Abrego [Garcia]." *Id*. at *7.

The record here, like in *Abrego Garcia*, reveals sufficient evidence of presumed vindictiveness to justify dismissal of the indictment or, at a minimum, as the court did in that case, to order discovery as discussed in more detail below. The

30

pattern of Executive Branch conduct reveals a "realistic likelihood" of vindictiveness. *Id.* One significant factor is where an investigation was opened, pursued, and then ended with no charges filed. *See Abrego Garcia*, 802 F. Supp. 3d at 1059–63 (reviewing the timing of an earlier investigation, a decision not to charge, and then a later decision to charge after defendant asserted a protected right). Here, after some investigative activity in 2019 or 2020, the Biden administration reviewed the activities of the SPLC's field program, and despite the acquisition of financial records, interviews of those involved, and even a review by DOJ and the IRS, no charges were brought. Then, as part of President Trump's specific targeting of civil rights groups and his and his officials' particular focus on the SPLC, a dormant or closed investigation was revived, and the charges in this case were filed. The indictment was brought after the clear instigation by President Trump's statements, his executive orders, and the actions to implement those statements and orders by then-Attorney General Bondi and Acting Attorney General Blanche, along with Director Patel.

*United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir. 1992), is also instructive here. In *P.H.E.*, letters exchanged between the U.S. Attorney for Utah and the Attorney General revealed a coordinated effort to conduct a multi-district investigation and prosecution of a company that distributed sexually explicit magazines and other material—protected speech that leadership did not like. *Id.* at

31

850. Attorney General Meese formed a special group of prosecutors, a "National Obscenity Enforcement Unit," to implement the directive to punish companies who distributed sexually explicit material. The Tenth Circuit found that defendants had satisfied "their burden of showing that the indictment is the tainted fruit of a prosecutorial attempt to curtail [their] future First Amendment protected speech," despite the involvement of a neutral prosecutor, and remanded for consideration of causation. *Id*. at 860–61.

Along the same lines as *P.H.E.*, President Trump directed then-AG Bondi through executive orders and his own posts to take action against anyone perceived to having contributed to "weaponization" of the FBI or DOJ during the Biden Administration. Last summer, he implored Bondi, in a message inadvertently posted on Truth Social, to take quicker action, saying that several of his political enemies were "guilty as hell but nothing is going to be done."[46] AG Bondi obediently created a working group, directing it to focus in part on the Richmond Memo. Ex. 25 (12/4/25 Bondi Memorandum). Given the public statements by President Trump at the "Antifa" roundtable (Ex. 22), there is at least a "realistic likelihood" that the indictment here is a result of this animus and results from a desire to attack SPLC

---

[46] Alan Feuer et al., *Trump Demands That Bondi Move 'Now' to Prosecute Foes*, N.Y. Times (Sept. 20, 2025), https://www.nytimes.com/2025/09/20/us/politics/trump-justice-department-us-attorneys.html.

for exercising its constitutional right to free speech to identify and criticize extremist groups and challenge the Trump Administration's policies.

Altogether, the statements by the President, his first Attorney General, the current Acting Attorney General, the Assistant Attorney General for Civil Rights, and the FBI Director point to actual vindictiveness. Those plus the revival of a moribund investigation only after the President made the SPLC part of his overall attack on civil rights organizations and the SPLC's vocal response support the presumption of vindictiveness here.

## II.    The Court Should Dismiss the Indictment With Prejudice Or, in the Alternative, Order Further Discovery and a Hearing On These Issues.

The record supports dismissal of this indictment. The Administration's sustained campaign against civil rights organizations generally and against the SPLC specifically, particularly when considered in combination with the irregularities of this prosecution, are sufficient to establish a violation of due process. However, should the Court conclude that the SPLC has not yet met its burden to prove either actual or presumptive vindictive prosecution, it has met the burden to require discovery, and the Court should order that and an evidentiary hearing into the government's motive and procedures in bringing this case. That was the process used by the court in the *Abrego Garcia* case. 2026 WL 1454303, at *1.

"While the Eleventh Circuit has not announced a standard for compelling discovery where a defendant accuses the government of prosecutorial

33

vindictiveness," *United States v. Kopp*, 2022 WL 4483722, at \*6 (M.D. Fla. Sept. 27, 2022), courts in this Circuit have applied the discovery standard for selective prosecution claims in the vindictive prosecution context. *See*, *e.g.*, *United States v. Rasco*, 2010 WL 2160836, at \*5 n.5 (S.D. Ga. May 27, 2010) (explaining that the *Armstrong* standard for compelling discovery, which "require[s] some evidence tending to show the existence of the essential elements of the defense. . . . applies with equal force in the vindictive prosecution context.") (citing *United States v. Armstrong*, 517 U.S. 456, 468 (1996) (internal quotation marks omitted)); *see also Abrego Garcia*, 802 F. Supp. 3d at 1058 (citing *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (defendant entitled to discovery and a hearing when there is some evidence of vindictiveness)).

"[T]o obtain an evidentiary hearing on a selective prosecution claim, 'the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution.'" *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (quoting *United States v. Silien*, 823 F.2d 320, 322 (11th Cir. 1987) (per curiam)). The SPLC meets this standard. In *United States v. Brown*, a case in the Northern District of Alabama, the district court ordered discovery on the defendant's selective prosecution claim. Ex. 26 (6/23/11 order in Case No. 10-cr-00360). Applying the *Jordan* standard, the district court found that the defendant had "presented evidence tending to show that he has been singled out for prosecution

while others similarly situated have not" and "some evidence of an invidious or bad faith basis for his prosecution," by asserting that the prosecution "is premised on retaliation for the exercise of his First Amendment right to free speech." *Id*. at 3–4; *see also Adams*, 870 F.2d at 1146 (defendant made a *prima facie* showing of "a realistic likelihood of vindictiveness" sufficient to order discovery when she was charged with tax violations after suing her agency-employer for discrimination).

Other district courts have applied a "some evidence of vindictiveness" standard to order the government to provide discovery (and an evidentiary hearing) on such claims. For example, in *United States v. Abrego Garcia*, the court found that Mr. Abrego Garcia had made the requisite showing that he had exercised his constitutional rights. 802 F. Supp. 3d at 1060 ("There is no dispute that [the Defendant] exercised his constitutional and statutory rights when he challenged the government's decision to remove him to El Salvador."). The court also found ample evidence of actual vindictiveness based on the statements by Deputy Attorney General Blanche describing the improper reason that the investigation had begun. *Id*. at 1061. The court cautioned that discovery was warranted and necessary to see if there was evidence "tying" Mr. Blanche's statements "to actual decisionmakers." *Id*. The district court also found that Mr. Abrego Garcia had made the requisite showing of presumed vindictiveness to obtain discovery because (a) the "Government had a significant stake in retaliating against Abrego [Garcia]'s success

35

in the Maryland lawsuit and deterring any future efforts in that lawsuit," and (b) the timing of the government's decision to reopen a closed investigation into Mr. Abrego Garcia from two years earlier and his lawsuit about his unlawful deportation demonstrated "potential unreasonableness of the prosecution." *Id*. at 1061–62. As explained above, the court ultimately dismissed the charges against Mr. Abrego Garcia after evaluating the evidence that the defense obtained only because the court ordered it. *Abrego Garcia*, 2026 WL 1454303, at *6.

A recent Massachusetts decision is also instructive. In *United States v. Petrova*, 2026 WL 892470, at *1 (D. Mass. Apr. 1, 2026), an international student and researcher at Harvard with a valid work visa was stopped at the airport while traveling back into the United States and detailed for not declaring supposed biological material ("inert formalin-fixed embryonic frog cells") in her checked luggage. *Id*. Ms. Petrova was taken into ICE custody, where a CPB officer unilaterally revoked her visa and placed her into deportation proceedings. *Id*. She later filed a habeas petition, challenging the CPB officer's authority to revoke her valid visa. *Id*. at *2.

After the habeas hearing was scheduled, however, Homeland Security Investigations "headquarters made a referral to HSI in Massachusetts to initiate a criminal investigation of Ms. Petrova." *Id*. The government filed a criminal complaint before the habeas hearing and argued that the habeas petition was thus

36

moot. Ms. Petrova published an op-ed in the *New York Times* about her situation, in part to draw media attention to her case. *Id.* Following the habeas hearing, the U.S. Attorney posted a video on X. The district court said that the post

> describe[es] Ms. Petrova's arrest as proof that '[t]he rule of law does not have a carveout for educated individuals with a pedigree' and approv[es] of the revocation of Ms. Petrova's visa by customs officials. In apparent recognition of Ms. Petrova's Op/Ed piece, the U.S. Attorney continued: 'It is unfortunate that the New York Times allowed her alleged lies to be perpetuated with Ms. Petrova's guest essay, another instance of the media not allowing the facts to get in the way of a good story.'

*Id.*

According to the court, "it appears clear that Ms. Petrova's status as a Harvard researcher played a significant part in the manner in which her case was handled, and that the government was cognizant of, and sensitive to, the publicity surrounding her detention." *Id.* at *2–3. After the habeas court ordered her release, the U.S. Marshals took her into custody on the criminal charges. *Id.* at *3.

The district court ordered discovery based on Ms. Petrova's vindictive prosecution claim. It found that she had produced "'some evidence' of both actual and presumptive vindictive prosecution" by showing (1) that government indicted her following her filing of a habeas petition challenging the cancelation of her visa and deportation; (2) because her supposed customs violation "would not normally have resulted in felony criminal charges"; (3) the U.S. Attorney's statements "indicated that Ms. Petrova's status as a Harvard researcher was a factor in the

37

decision to charge her with a felony" and "[t]he Administration's efforts to discourage foreign students from attending Harvard and other [institutions] was widely reported in the media" (4) the government had a "stake" in using the criminal proceedings to "avoid a resolution of the issues raised by Ms. Petrova's habeas petition" as to the CPB officer's voiding of her visa without authority. *Id.* at *4–5.

So too has the SPLC shown "some evidence" and offered a more-than-credible showing of vindictive prosecution to warrant further discovery into the government's motives here. *See United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) (quoting *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996)). The public pronouncements by President Trump, Director Patel, Acting AG Blanche, then-AG Bondi, and Assistant AG Dhillon show that the government harbors significant animus towards the SPLC—for its protected speech in producing the Hate Map, for reporting on extremist groups, for criticizing a key Trump Administration official (Stephen Miller), for its perceived role in supporting the "anti-Catholic" bias and supposed "weaponization" of the prior Administration's FBI, and for its speech critical of this Administration and President Trump's policies. The SPLC has also put forth evidence of the President and his subordinates' retaliatory conduct leading up to this prosecution, and DOJ norms and rules that certain officials are willing to break in order to shamelessly rush-to-charge one of the country's leading civil rights organizations.

38

If the Court does not dismiss the indictment, the SPLC (or the Court initially *in camera*) should at least be permitted to review any communications and/or memoranda that would indicate how this case "arrive[d] on [this prosecutor's] desk[,]" which is critical here because "[t]he motivations of the people who place the file on the prosecutor's desk are highly relevant when considering a motion to dismiss for vindictive prosecution." *Abrego Garcia*, 807 F. Supp. 3d at 830; *see also Carey*, 816 F. Supp. 3d at 142–43 (where executive order directed the prosecution of flag burning cases, the court questioned "whether prosecutors could make an independent judgment of the merits of charging" the offense).[47]

## CONCLUSION

In a now famous 1940 speech by Attorney General Robert Jackson to federal prosecutors, he cautioned that because a prosecutor "can choose his defendants, therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted."[48] That is exactly what happened here. The SPLC was picked out at President Trump's urging, rather than because the case "that need[s] to be prosecuted." But the law does not

---

[47] In *Carey*, the government dismissed the charges rather than produce the discovery ordered by the district court. Ryan Reilly et al., *DOJ drops case against veteran arrested after burning American flag near White House*, NBC News (Mar. 13, 2026), https://www.nbcnews.com/politics/justice-department/drops-case-veteran-carey-arrested-burning-american-flag-white-house-rcna263438.

[48] Attorney General Robert H. Jackson, *The Federal Prosecutor* (Apr. 1, 1940), https://www.justice.gov/sites/default/files/ag/legacy/2011/09/16/04-01-1940.pdf.

allow such targeting. At its heart, this indictment seeks to punish the SPLC for engaging in constitutionally protected speech with which the Administration disagrees.

The proper remedy here is dismissal of the indictment with prejudice. In the alternative, the SPLC requests that the Court order that the government produce discovery on these issues and schedule an evidentiary hearing regarding the same.

Dated: May 26, 2026                  Respectfully submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Janelle Geddes (TN Bar No. 035141)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com
janelle@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

40

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Abbe David Lowell*
Abbe David Lowell