# Exhibit 21

≡

THE WHITE HOUSE
WASHINGTON

🔍

NEWS    GALLERY    LIVESTREAM    INVESTMENTS    SAVE AMERICA    WH WIRE    CONTACT    NEWS    GALLERY    LIVESTREAM    CONTACT    INVESTMENTS    SAVE AMERICA    WH WIRE

PRESIDENTIAL ACTIONS

Countering Domestic Terrorism and Organized Political Violence

Presidential Memoranda

September 25, 2025

NATIONAL SECURITY PRESIDENTIAL MEMORANDUM/NSPM-7
MEMORANDUM FOR THE SECRETARY OF STATE
　　　　THE SECRETARY OF THE TREASURY
THE ATTORNEY GENERAL
THE SECRETARY OF HOMELAND SECURITY
SUBJECT:　　Countering Domestic Terrorism and Organized
　　　　Political Violence

By the authority vested in me as President by the Constitution and the laws of the United States of America, I hereby direct the following:

Section 1.  Domestic Terrorism and Organized Political Violence.  Heinous assassinations and other acts of political violence in the United States have dramatically increased in recent years.  Even in the aftermath of the horrifying assassination of Charlie Kirk, some individuals who adhered to the alleged shooter's ideology embraced and cheered this evil murder while actively encouraging more political violence.  This was preceded by the 2024 assassination of a senior healthcare executive and the 2022 assassination attempt against Supreme Court Justice Brett Kavanaugh.  Two separate assassination attempts against my own life in less than 3 months took place during the 2024 Presidential election cycle.  Riots in Los Angeles and Portland reflect a more than 1,000 percent increase in attacks on U.S. Immigration and Customs Enforcement (ICE) officers since January 21, 2025, compared to the same period last year.  Just yesterday, a shooting targeting an ICE facility in Dallas resulted in multiple casualties.  Separate anti-police and "criminal justice" riots have left many people dead and injured and inflicted over $2 billion in property damage nationwide.

This political violence is not a series of isolated incidents and does not emerge organically.  Instead, it is a culmination of sophisticated, organized campaigns of targeted intimidation, radicalization, threats, and violence designed to silence opposing speech, limit political activity, change or direct policy outcomes, and prevent the functioning of a democratic society.  A new law enforcement strategy that investigates all participants in these criminal and terroristic conspiracies — including the organized structures, networks, entities, organizations, funding sources, and predicate actions behind them — is required.

These campaigns often begin by isolating and dehumanizing specific targets to justify murder or other violent action against them.  They do so through a variety of fora, including anonymous chat forums, in-person meetings, social media, and even educational institutions.  These campaigns then escalate to organized doxing, where the private or identifying information of their targets (such as home addresses, phone numbers, or other personal information) is exposed to the public with the explicit intent of encouraging others to harass, intimidate, or violently assault them.  As in the case of several ICE agents in Los Angeles being doxed, the goal of these campaigns can be to obstruct the operations of the Federal Government as well as aid and abet criminal activity the Federal Government is lawfully pursuing.  These campaigns are coordinated and perpetrated by actors who have developed a comprehensive strategy to achieve specific policy goals through radicalization and violent intimidation.

There are common recurrent motivations and indicia uniting this pattern of violent and terroristic activities under the umbrella of self-described "anti-fascism."  These movements portray foundational American principles (e.g., support for law enforcement and border control) as "fascist" to justify and encourage acts of violent revolution.  This "anti-fascist" lie has become the organizing rallying cry used by domestic terrorists to wage a violent assault against democratic institutions, constitutional rights, and fundamental American liberties.  Common threads animating this violent conduct include anti-Americanism, anti-capitalism, and anti-Christianity; support for the overthrow of the United States Government; extremism on migration, race, and gender; and hostility towards those who hold traditional American views on family, religion, and morality.  As described in the Order of September 22, 2025 (Designating Antifa as a Domestic Terrorist Organization), the groups and entities that perpetuate this extremism have created a movement that embraces and elevates violence to achieve policy outcomes, including justifying additional assassinations.  For example, Charlie Kirk's alleged assassin engraved the bullets used in the murder with so-called "anti-fascist" rhetoric.

The United States requires a national strategy to investigate and disrupt networks, entities, and organizations that foment political violence so that law enforcement can intervene in criminal conspiracies before they result in violent political acts.  Through this comprehensive strategy, law enforcement will disband and uproot networks, entities, and organizations that promote organized violence, violent intimidation, conspiracies against rights, and other efforts to disrupt the functioning of a democratic society.

Sec. 2.  Investigating Domestic Terrorist Organizations.  (a)  The National Joint Terrorism Task Force and its local offices (collectively, "JTTFs") shall coordinate and supervise a comprehensive national strategy to investigate, prosecute, and disrupt entities and individuals engaged in acts of political violence and intimidation designed to suppress lawful political activity or obstruct the rule of law.  This strategy shall include the investigatory and prosecutorial measures set forth in this section.

(b)  The JTTFs shall investigate potential Federal crimes relating to acts of recruiting or radicalizing persons for the purpose of:

(i)  political violence, terrorism, or conspiracy against rights; or

(ii)  the violent deprivation of any citizen's rights.

(c)  The JTTFs shall also investigate:

(i)  institutional and individual funders, and officers and employees of organizations, that are responsible for, sponsor, or otherwise aid and abet the principal actors engaging in the criminal conduct described in subsections (a) and (b) of this section; and

(ii)  non-governmental organizations and American citizens residing abroad or with close ties to foreign governments, agents, citizens, foundations, or influence networks engaged in violations of the Foreign Agents Registration Act (22 U.S.C. 611 *et seq*.) or money laundering by funding, creating, or supporting entities that engage in activities that support or encourage domestic terrorism.

(d)  The JTTFs shall consult and coordinate with executive departments and agencies (agencies) as needed to determine whether such agencies can apply existing authorities or exercise their own authorities, as appropriate, to support the JTTFs' investigations and relevant prosecutions of political violence.

(e)  The JTTFs may, to the extent permitted by law, request operational assistance from and coordinate with law enforcement partners when investigating domestic terrorism.

(f)  The National Joint Terrorism Task Force shall provide regular progress updates to the President through the Assistant to the President and Homeland Security Advisor.

(g)  The Attorney General shall direct the Department of Justice to prosecute all Federal crimes, to the maximum extent permissible by law, related to the investigations described in subsections (a) through (c) of this section.

(h)  The Attorney General shall issue specific guidance that ensures domestic terrorism priorities include politically motivated terrorist acts such as organized doxing campaigns, swatting, rioting, looting, trespass, assault, destruction of property, threats of violence, and civil disorder.  This guidance shall also include an identification of any behaviors, fact patterns, recurrent motivations, or other indicia common to organizations and entities that coordinate these acts in order to direct efforts to identify and prevent potential violent activity.

(i)  The Secretary of the Treasury (Secretary), in coordination with the Attorney General, shall make available all resources, to the maximum extent permitted by law, to identify and disrupt financial networks that fund domestic terrorism and political violence.  The Secretary, acting through the Terrorism and Financial Intelligence Office of the Department of the Treasury, shall deploy investigative tools, examine financial flows, and coordinate with partner agencies to trace illicit funding streams.  The Secretary shall provide guidance for financial institutions to file Suspicious Activity Reports and investigate indicia of illicit funding streams to ensure such activity is rooted out at the source and referred for law enforcement action, as appropriate.

(j)  The Commissioner of the Internal Revenue Service (Commissioner) shall take action to ensure that no tax-exempt entities are directly or indirectly financing political violence or domestic terrorism.  In addition, where applicable, the Commissioner shall ensure that the Internal Revenue Service refers such organizations, and the employees and officers of such organizations, to the Department of Justice for investigation and possible prosecution.

(k)  All Federal law enforcement agencies with investigative authority shall question and interrogate, within all lawful authorities, individuals engaged in political violence or lawlessness regarding the entity or individual organizing such actions and any related financial sponsorship of those actions prior to adjudication or initiation of a plea agreement.  Investigations should prioritize crimes such as the following:  assaulting Federal officers or employees or otherwise engaging in conduct proscribed by 18 U.S.C. 111; conspiracy against rights under 18 U.S.C. 241; conspiracy to commit offense under 18 U.S.C. 371; solicitation to commit a crime of violence under 18 U.S.C. 373; money laundering under 18 U.S.C. 1956; funding of terrorist acts or otherwise facilitating terrorism under 18 U.S.C. 2339, 2339A, 2339B, 2339C, and 2339D; arson offenses under 18 U.S.C. 844; violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. 1961 *et seq*.); and major fraud against the United States under 18 U.S.C. 1031.

(l)  All Federal law enforcement agencies with investigative authority shall adopt strategies similar to those used to address violent crime and organized crime to disrupt and dismantle entire networks of criminal activity.

Sec. 3.  Department of Justice Designation.  In the course of and as a result of the investigations directed by section 2 of this memorandum, the Attorney General may recommend that any group or entity whose

members are engaged in activities meeting the definition of "domestic terrorism" in 18 U.S.C. 2331(5) merits designation as a "domestic terrorist organization."  The Attorney General shall submit a list of any such groups or entities to the President through the Assistant to the President and Homeland Security Advisor.

Sec. 4.  Domestic Terrorism as a National Priority Area.  The Attorney General and the Secretary of Homeland Security shall designate domestic terrorism a national priority area and develop appropriate grant programs to allocate funding for law enforcement partners to detect, prevent, and protect against threats arising from this area.

Sec. 5.  General Provisions.  (a)  Nothing in this memorandum shall be construed to impair or otherwise affect:

(i)  the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This memorandum shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d)  The Secretary of Homeland Security is authorized and directed to publish this memorandum in the *Federal Register*.

      DONALD J. TRUMP

Related

Fact Sheet: President Donald J. Trump Develops New Strategy to Counter Domestic Terrorism and Organized Political Violence

Fact Sheets   |   September 25, 2025
Designating Antifa as a Domestic Terrorist Organization

Presidential Actions, Executive Orders   |   September 22, 2025
Fact Sheet: President Donald J. Trump Designates Antifa as a Domestic Terrorist Organization

Fact Sheets   |   September 22, 2025
Designating Cartels And Other Organizations As Foreign Terrorist Organizations And Specially Designated Global Terrorists

Presidential Actions   |   January 20, 2025
Designation of Certain Muslim Brotherhood Chapters as Foreign Terrorist Organizations and Specially Designated Global Terrorists

Presidential Actions, Executive Orders   |   November 24, 2025

**1**   2   3   …   69  NEXT PAGE





GET THE FACTS →

ABOUT

Administration

Contact

Internships

Stay Informed

Privacy Policy

MEDIA