# Exhibit 25



# Office of the Attorney General
## Washington, D. C. 20530

December 4, 2025

MEMORANDUM FOR ALL FEDERAL PROSECUTORS
                                      LAW ENFORCEMENT AGENCIES
                                      DEPARTMENT OF JUSTICE GRANT-MAKING COMPONENTS

FROM:                     THE ATTORNEY GENERAL $\mathcal{W}$

SUBJECT:              Implementing National Security Presidential Memorandum-7:
                              Countering Domestic Terrorism and Organized Political Violence[1]

On September 25, 2025, President Trump issued a National Security Presidential Memorandum titled *Countering Domestic Terrorism and Organized Political Violence* (NSPM-7). Therein, citing recent assassinations, assassination attempts, attacks on law enforcement, and mass destruction caused by "criminal justice" rioters, President Trump highlighted the grave threats posed by "sophisticated, organized campaigns of targeted intimidation, radicalization, threats, and violence designed to silence opposing speech, limit political activity, change or direct policy outcomes, and prevent the functioning of a democratic society." To combat these growing threats, President Trump directed the federal government to implement a focused strategy to root out all culpable participants—including organizers and funders—in all domestic terrorism activities. This guidance memorandum is designed to further mobilize and advise federal law enforcement on the investigative priorities outlined by NSPM-7.

1. <u>Defining the domestic terrorism threat</u>

In general terms, domestic terrorism is criminal conduct that occurs primarily inside the territory of the United States and that involves acts dangerous to human life that appear to be intended to intimidate a civilian population; influence the policy of government by intimidation or coercion; or affect the conduct of government by mass destruction, assassination, or kidnapping. 18 U.S.C. § 2331(5); *see also* 6 U.S.C. § 101(18) (defining terrorism in the context of homeland security to include acts "potentially destructive of critical infrastructure or key resources"). For too long, rampant criminal conduct rising to the level of domestic terrorism—e.g., organized doxing of law enforcement, mass rioting and destruction in our cities, violent efforts to shut down immigration

---

[1] This guidance is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

enforcement, targeting of public officials or other political actors, etc.—has been tolerated. For some culpable actors, such as certain Antifa-aligned extremists, their animating principle is adherence to the types of extreme viewpoints on immigration, radical gender ideology, and anti-American sentiment listed below, with a willingness to use violence against law-abiding citizenry to serve those beliefs.

Federal law enforcement will prioritize this threat. Where federal crime is encountered, federal agents will act. And where domestic terrorism is encountered or suspected, law enforcement agencies shall refer such matters to the Joint Terrorism Task Forces (JTTFs) for the exhaustive investigation contemplated by NSPM-7.

Acts of domestic terrorism are priority matters for federal law enforcement and will be zealously investigated and prosecuted. Such acts may include organized rioting, looting, doxing, and swatting; and conspiracies to impede or assault law enforcement, destroy property, or engage in violent civil disorder. Law enforcement agencies shall refer these matters to the JTTFs for investigation. Upon receipt of these referrals, the JTTFs shall use all available investigative tools, consistent with law enforcement internal policies and statutory obligations, to map the full network of culpable actors involved in the referred conduct inside and outside the United States.

Particularly dangerous are those acts committed by violent extremist groups that threaten both citizens' safety and our country's ability to self-govern. These domestic terrorists use violence or the threat of violence to advance political and social agendas, including opposition to law and immigration enforcement; extreme views in favor of mass migration and open borders; adherence to radical gender ideology, anti-Americanism, anti-capitalism, or anti-Christianity; support for the overthrow of the United States Government; hostility towards traditional views on family, religion, and morality; and an elevation of violence to achieve policy outcomes, such as political assassinations.[2] The recent attacks fueled by these agendas and ideological frameworks require a robust response. The JTTFs shall prioritize the investigation of such conduct.

2. <u>Common Characteristics of Domestic Terrorists and Organizations</u>

As explained in NSPM-7, domestic terrorists seek to disrupt the functioning of a democratic society. Many of these domestic terrorists and domestic terrorist organizations are united by an anti-fascist platform that justifies violence and any other means necessary to combat perceived "fascism." To these violent groups, fascism must be countered and violence—which they claim as first-strike self-defense—is justified. For example, per *Antifa: the Anti-Fascist Handbook*, "anti-

---

[2] The United States Government does not investigate, collect, or maintain information on U.S. persons solely for the purpose of monitoring activities protected by the First Amendment. No investigation may be opened based solely on activities protected by the First Amendment or the lawful exercise of rights secured by the Constitution or laws of the United States.

fascists don't wait for a fascist threat to become violent before acting to shut it down, physically if necessary."

Further, this ideology that paints legitimate government authority and traditional, conservative viewpoints as "fascist" connects a recent string of political violence. Carvings on the bullet casings of Charlie Kirk's assassin's bullets read, "Hey, fascist, catch" and "Bella Ciao"—an ode to antifascist movements in Italy.[3] Similarly, the July 4, 2025 ambush on ICE agents was carried out by an anti-fascist group.[4] Anti-fascists violently rioted onto UC Berkeley's campus in 2017.[5] ICE agents are regularly doxed by anti-fascists,[6] and calls to dox ICE agents appear in the same sentence of opinion pieces calling the Trump Administration fascist.[7] Thus, violence against what extremists claim to be fascism is the clarion call of recent domestic terrorism.

3.  Prosecuting the most serious, readily provable offenses

To the maximum extent permitted by law and following the principles outlined in the Attorney General's memorandum titled *General Policy Regarding Charging, Plea Negotiations, and Sentencing* (Feb. 5, 2025), Department of Justice (DOJ) prosecutors shall prosecute all federal crimes encountered during the investigations described in Section 2 of NSPM-7. Among other potential charges, including conspiracies against the United States under 18 U.S.C. § 371 and aiding and abetting under 18 U.S.C. § 2, prosecutors should be particularly mindful of the potential applicability of the following provisions of law:

---

[3] *See* Ben Goggin, et al., *Charlie Kirk shooting suspect referenced fascism and memes on bullets, officials say*, NBC NEWS (Sept. 12, 2025, 7:37 PM EDT), https://www.nbcnews.com/tech/internet/charlie-kirk-shooting-suspect-fascism-memes-bullets-tyler-robinson-rcna230950.

[4] *See DHS Statement on Capture of Violent Extremist Involved in Prairieland Attack on ICE Agents*, DHS.GOV (July 11, 2025), https://www.dhs.gov/news/2025/07/16/dhs-statement-capture-violent-extremist-involved-prairieland-attack-ice-agents.

[5] *See* Emma Bowman, *Scattered Violence Erupts at Large, Left-Wing Berkley Rally*, NPR (Aug. 28, 2019, 12:19 AM ET), https://www.npr.org/sections/thetwo-way/2017/08/28/546641577/scattered-violence-erupts-at-large-left-wing-berkeley-rally.

[6] *See Anarchists and Rioters in Portland Illegally Dox ICE Officers and Federal Law Enforcement*, DHS.GOV (July 11, 2025), https://www.dhs.gov/news/2025/07/11/anarchists-and-rioters-portland-illegally-dox-ice-officers-and-federal-law.

[7] *See* Josh Marus, *Democrats are calling for ICE agents to lose their masks and have identities released. DHS says no way*, THE INDEPENDENT (June 4, 2025, 18:09 EDT), https://www.the-independent.com/news/world/americas/us-politics/ice-agents-mask-democrats-dhs-trump-b2763881.html.

- 18 U.S.C. § 111 – Assaulting, resisting, or impeding federal officers
- 18 U.S.C. § 119 – Publicly disclosing the personal information of a federal agent
- 18 U.S.C. § 231 – Obstruction during civil disorders
- 18 U.S.C. § 241 – Conspiracy against rights
- 18 U.S.C. § 372 – Conspiracy to impede or injure officer
- 18 U.S.C. § 373 – Solicitation to commit a crime of violence
- 18 U.S.C. § 844(h)–(i) – Arson and explosives offenses
- 18 U.S.C. §§ 922, 924 – Firearms offenses
- 18 U.S.C. § 1031 – Major fraud against the United States
- 18 U.S.C. § 1114 – Killing or attempting to kill a federal officer
- 18 U.S.C. § 1341 – Mail fraud
- 18 U.S.C. § 1343 – Wire fraud
- 18 U.S.C. § 1361 – Destruction of government property
- 18 U.S.C. § 1501 – Assault on process server
- 18 U.S.C. §§ 1503, 1505 – Obstruction of judicial or agency proceedings
- 18 U.S.C. § 1507 – Picketing or parading with intent to obstruct the administration of justice
- 18 U.S.C. § 1951 – Interference with commerce by threats or violence
- 18 U.S.C. § 1956 – Money laundering
- 18 U.S.C. § 1958 – Murder for hire
- 18 U.S.C. § 1962 *et seq.* – Racketeer Influenced and Corrupt Organizations (RICO) Act
- 18 U.S.C. § 2101 – Traveling in interstate commerce or using a facility of interstate commerce to organize or incite a riot[8]
- 18 U.S.C. § 2339 *et seq.* – Providing material support for terrorist activity
- 18 U.S.C § 2384 – Seditious conspiracy to prevent, hinder, or delay the execution of any law of the United States
- 26 U.S.C. §§ 5845, 5861 – Firearms and explosives offenses
- 41 C.F.R. § 102-74.390 – Obstruction or disruption in or on federal property

In addition, federal law enforcement and federal prosecutors should consider any applicable tax crimes in cases in which extremist groups are suspected of defrauding the Internal Revenue Service. As it receives referrals for violations of tax obligations, the DOJ should investigate and, where appropriate, prosecute those responsible.

Finally, in calculating the applicable sentencing range, prosecutors should seek all applicable enhancements under the United States Sentencing Guidelines, including the terrorism enhancement under U.S.S.G. § 3A1.4.

---

[8] Prosecutors should be aware of circuit law finding certain aspects of the Federal Anti-Riot Act unconstitutional. *See, e.g., United States v. Rundo,* 990 F.3d 709, 720 (9th Cir. 2021); *United States v. Miselis,* 972 F.3d 518, 542–43 (4th Cir. 2020).

### 4. Commissioning review of prior events and information

To fully implement NSPM-7, within 14 days of the issuance of this guidance, all federal law enforcement agencies are directed to review their files and holdings for Antifa and Antifa-related intelligence and information and coordinate delivery of such material to the Federal Bureau of Investigation (FBI) for review within the JTTFs. Under appropriate circumstances, law enforcement will take additional steps in these closed investigations.

Additionally, in coordination with other members of the JTTFs, the FBI, with the assistance of the Counterterrorism Division, Cyber Division, Criminal Investigative Division, and the Criminal Justice Information Service's National Threat Operations Center, shall investigate matters from the past five years that involved potential acts of domestic terrorism, including the surge of attacks on non-profit organizations and facilities, doxing of law enforcement, coordinated interference with federal employees in agencies such as DOJ and the Department of Homeland Security, and potential unlawful targeting of Supreme Court justices at their homes. The JTTFs shall use all available tools to identify all criminal participants in these events, as well as those who organize or financially sponsor those participants, and refer all appropriate matters to the relevant United States Attorney for prosecution.

### 5. Identifying domestic terrorist organizations

Pursuant to Section 3 of NSPM-7, in the course of and as a result of the investigations directed by NSPM-7, the FBI, in coordination with its partners on the JTTFs, and consistent with applicable law, shall compile a list of groups or entities engaged in acts that may constitute domestic terrorism as defined by 18 U.S.C. § 2331(5) and provide that list to the Deputy Attorney General. The FBI and its JTTF partners must adopt strategies similar to those used to address violent crime and organized crime to disrupt and dismantle entire networks of criminal activity. The FBI, with the assistance of the Counterterrorism Division, Cyber Division, Criminal Investigative Division, and the Criminal Justice Information Service's National Threat Operations Center, shall provide an initial report on this directive within 30 days of the issuance of this guidance, and updated reports every 30 days thereafter, or at the request of the Attorney General or Deputy Attorney General.

### 6. Prioritizing grants to law enforcement partners

Pursuant to NSPM-7, DOJ's grant-making components shall prioritize grant funding to state and local law enforcement partners for programs to detect, prevent, and protect against domestic terrorism. Specifically, within 30 days of the issuance of this guidance, each grant-making component shall, consistent with all applicable statutory authorities, provide to the Deputy Attorney General proposals for notices of funding opportunities that prioritize supporting state and local programs to combat domestic terrorism.

### 7. Disseminating intelligence on extremist groups

Within 60 days of the issuance of this guidance, the FBI, in coordination with its partners on the JTTFs, shall disseminate an intelligence bulletin on Antifa and Antifa-aligned anarchist violent extremist groups. The bulletin should describe the relevant organizations' structures, funding

sources, and tactics so that law enforcement partners can effectively investigate and policy makers can effectively understand the nature and gravity of the threat posed by these extremist groups.

8. <u>Leveraging existing FBI capabilities to identify tips that will dismantle domestic terrorist organizations and activities</u>

Within 30 days of the issuance of this guidance, the FBI, with the assistance of its Counterterrorism Division, Operational and Technology Division, and Criminal Justice Information Service's National Threat Operations Center, shall establish recommendations to better publicize the FBI's tip line for submitting tips related to domestic terrorism. When individuals witness threats or acts of violence and domestic terrorism, they should be aware that they can quickly report such activities to a central tip line within the FBI. The FBI shall respond appropriately to such tips and use the information to better investigate domestic terrorism. The FBI is also directed, within 30 days of the issuance of this guidance and consistent with applicable law, to review and update the capabilities of its Digital Media Tipline, in compliance with FBI policy and statutory obligations, so that witnesses and citizen journalists can send media of suspected acts of domestic terrorism to law enforcement online.

Further, because information from within an organization is often necessary to effectively dismantle large, criminal enterprises, the FBI shall establish a cash reward system for information that leads to the successful identification and arrest of individuals in the leadership of domestic terrorist organizations that conspire with others to commit violations of the provisions of law listed in section 2 of this guidance or other offenses against the United States.

As investigations continue and potential prosecutions begin, the FBI, in coordination with its partners on the JTTFs, shall aim to establish cooperators to provide information and eventually testify against other members and leadership of domestic terrorist organizations.