IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.<br><br>Defendant. | Case No. 2:26-cr-0139-ECM-KFP-1 |

**THE SOUTHERN POVERTY LAW CENTER'S
MOTION TO SHOW CAUSE REGARDING
THE SUPERSEDING INDICTMENT**

**INTRODUCTION**

Just hours after the initial indictment in this case was returned and docketed, on April 21, 2026, Acting Attorney General Todd Blanche could not wait to take to the airwaves to trumpet the charges and, in doing so, made a false statement about the Southern Poverty Law Center, Inc.'s ("SPLC") prior coordination with law enforcement. Mr. Blanche ended up having to correct his misstatement on a later news program. *See* ECF 27 at 2 (government conceding Mr. Blanche "clarified" his prior statements, which were false).  The SPLC then raised his extra-judicial statements with this Court.  ECF 23.  In ruling on that motion this week, the Court reminded the prosecutors of their extraordinary obligations: "The United States Attorney['s] . . . interest [] in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones."  ECF 50 at 4 (Order) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

The government seems not to have taken this admonition to heart because last night, in an apparent violation of Federal Rule of Criminal Procedure 6(e) and a stunning departure from routine and proper procedure, the Justice Department ("DOJ") released an unsigned, unstamped Microsoft Word version of a draft

1

superseding indictment to members of the media—before unsealing any legitimate filing and before alerting (or providing a copy to) defense counsel.

Putting media strategy before the sacrosanct rules on grand jury secrecy, at around 6:30 PM EDT, DOJ's Public Affairs Office ("PAO") Director e-mailed an unsigned, unstamped, Microsoft Word document titled "Superseding Indictment" to an unknown number of media members or outlets with the subject line, "*Flagging: Superseding indictment returned by Grand Jury today re SPLC*." **Ex. A**. The e-mail body then described "[s]ome notable new sections" which were included in the sealed superseding indictment. *Id.* The attached unofficial document—what could only be described as a draft—even contained the underlying metadata of the DOJ attorneys who had "authored" and "last modified" the document on the morning of June 2, 2026. No foreperson signature, no government attorney signature, and no stamp from the clerk's office appeared on the draft DOJ distributed.

Journalists at the recipient outlets immediately reached out to the SPLC and its counsel for comment about this supposed superseding indictment, asking counsel why DOJ had provided the indictment to them in this fashion when it had not yet been docketed or unsealed. One reporter from a national media outlet even wrote, "It's a little confusing, I now realize we were sent this hours ago from DOJ but there is no stamp on it and its not posted on the docket yet." **Ex. B**. Neither the SPLC nor

2

its counsel were given any notice of the superseding indictment before the draft was distributed and certainly were not sent what DOJ was eager to send to the media.

Defense counsel quickly contacted the U.S. Attorney's Office and asked for an explanation of what was going on. **Ex. C**. Not even the prosecutor in charge of this case could explain it, replying to defense counsel, "I need to gather some more information regarding this in the morning." *Id.* By 11:30 PM EDT last night, at least two media outlets had issued stories discussing the contents of the leaked draft superseding indictment, but cautioned, "[a] public copy of the superseding indictment was not yet available on the docket as of Tuesday night, and the version provided by the Justice Department was not a final signed copy."[1]

In decades of collective practice, including serving as prosecutors at DOJ, none of the SPLC's counsel has ever seen anything remotely like what DOJ did last night—distributing what turned out not to be the actual superseding indictment returned by the grand jury and docketed today, but one that has no indication of its finality, in native Word that could be edited and reposted, and before the actual returned charges were unsealed, to a group of journalists. This conduct violates the

---

[1] Sarah N. Lynch, *Justice Dept. Says It Has Obtained Superseding Indictment Against Southern Poverty Law Center With New Details On Donor Funds*, CBS News (June 2, 2026, 11:14 PM EDT), https://www.cbsnews.com/news/southern-poverty-law-center-superseding-indictment/; *see also* Michael Sinkewicz, *DOJ Expands Indictment Against SPLC, Alleging $4M Secretly Funneled To KKK And Extremist Groups*, Fox News (June 2, 2026, 11:21 PM EDT), https://www.foxnews.com/politics/doj-expands-indictment-splc-alleging-4m-secretly-funneled-kkk-extremist-groups.

letter and spirit of the federal rules, DOJ's own policies, and even common-sense notions of professionalism to abide by the normal court procedure and treat those accused of wrongdoing fairly.

This morning, shortly before the superseding indictment was unsealed (ECF 51), the government sent a file-stamped copy to defense counsel, who had requested information last night after hearing from members of the media about the draft that had been distributed to them.

A comparison between the Word document distributed to the media by the Director of Public Affairs last night (June 2), and the ECF-stamped superseding indictment received by the SPLC's counsel this morning (June 3), confirms that the Word document is, in fact, a draft. For example, in the Word document, ¶ 21 reads:

> 21.    The objective of the scheme and artifice was to obtain money via donations through materially false representations and omissions about what the donated funds would be used for.

However, ¶ 21 of the file-stamped copy reads:

> 21.    The objective of the scheme and artifice was to obtain money via donations through materially false representations as well as by omissions of material facts about what the donated funds would be used for.

This facial difference shows that the draft Word document circulated to the media contained pre-return text that was seemingly later revised and never entered the public record. The fact that the draft superseding indictment was purposely and

4

intentionally given to the media by DOJ's own Director of Public Affairs herself and not the result of an unintentional mistake makes this all the more concerning.

Accordingly, the SPLC respectfully moves this Court for a hearing and an Order directing DOJ and the United States Attorney's Office to show cause and explain why its actions on June 2 were proper and did not violate the law and procedures it is bound to follow.

## ARGUMENT

I.  **DOJ's Release of an Unsigned, Unofficial Draft of a Sealed Superseding Indictment to Members of the News Media Violates Grand Jury Secrecy Rules, the Justice Manual, and Rules Prohibiting Extra-Judicial Statements by Prosecutors.**

A. *Violation of Rule 6(e) and Grand Jury Secrecy*

The release of a draft superseding indictment to members of the media, before it was finalized, stamped, unsealed, and docketed by the Court Clerk, disclosed matters occurring before the grand jury, in violation of Federal Rule of Criminal Procedure 6(e). Rule 6(e)(2) imposes a broad secrecy obligation over "matters occurring before the grand jury," enforceable by the Court to protect the integrity of the grand-jury process and to address violations.[2] Drafts or unsigned indictments are classic grand-jury materials because they are inextricably intertwined with the

---

[2] The government knows this, of course. *See* ECF 29 (Gov't Opp. to SPLC's Mot. for Grand Jury Transcripts). There, the government remarked that "the secrecy of the grand jury is sacrosanct" and that those proceedings "have long been protected by a veil of secrecy" upon which "the proper functioning of the grand jury system depends[.]" *Id.* at 1, 2.

5

grand jury process and reveal the inner workings and direction of the investigation. *See Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 214 F. Supp. 3d 43, 55–58 (D.D.C. 2016).

In *Judicial Watch*, a case seeking Freedom of Information Act (FOIA) disclosure of draft indictments prepared by independent counsel Kenneth Starr and presented to a grand jury, the court found that draft indictments constituted Rule 6(e) material: "[T]he drafts of the proposed indictment would disclose the identity of individuals who actually testified before the grand jury and who the independent counsel considered calling as witnesses, as well as the inner workings of the federal grand jury process that would necessarily show the potential direction of the grand jury proceedings, given that the independent counsel likely drafted the documents based on testimony and other information presented to that body." 214 F. Supp. 3d at 54. The court emphasized that draft indictments are not merely statements of prosecutorial deliberation but rather documents "inextricably intertwined with the grand jury process," representing "a compilation and distillation of all of the evidence gathered and presented before the grand jury up until the time the draft indictments were prepared." *Id.* As such, Rule 6(e) protects from disclosure the existence, content, and timing of draft or proposed indictments because such materials and related information lay bare the grand jury's charging considerations, the precise theories under review, and the status of its deliberative process. *Id.* at 55–

6

58. And there is no dispute that the Public Affairs Officer involved (as "government personnel") in this disclosure was a "covered person" under Rule 6(e)(2)(B)(vii).

In this instance, releasing an unsigned, unstamped Microsoft Word version of the draft superseding indictment to members of the media apparently just before it was presented to the grand jury (given that the version presented to the grand jury changed), and the day before it is unsealed by the Clerk, undermines the letter, spirit, and purpose of Rule 6(e)(2) to protect the grand jury's independence, the reputational interests of unindicted parties, and the integrity of the criminal justice process by injecting non-public charging information into the public sphere. Moreover, regardless of when a grand jury may have returned such an indictment, nothing prevented any individual who received PAO's copy of the Microsoft Word version from editing the supposed indictment or the allegations contained in the document and then uploading it to any website or e-mail distribution. The prejudice here to the SPLC is not speculative: premature dissemination to the media of the draft charging details before unsealing occurs by the Clerk creates a one-sided narrative that the SPLC could not address without compounding the harm, distorts pretrial publicity, and burdens the Court's management of a fair trial.[3] That prejudice is of course heightened if the draft indictment is disseminated and the grand jury

---

[3] Depending on what DOJ's Public Affairs Officer sent and when, its actions may also implicate Rule (6)(e)(4) addressing the release of a "sealed indictment."

does not return the indictment—a risk the DOJ may have created here by disseminating a draft that had not been presented to the grand jury.

Additionally, courts have noted that the *timing* of when the grand jury will return an indictment may also be protected by Rule 6(e). *See, e.g.*, *United States v. Skelos*, 2015 WL 6159326, at *10 (S.D.N.Y. Oct. 20, 2015) (disclosures about "the date when a grand jury will return an indictment" "might constitute [a] Rule 6(e) violation[]"); *United States v. Nordlicht*, 2018 WL 6106707, at *4 (E.D.N.Y. Nov. 21, 2018) ("[C]ourts have held that Rule 6(e) was violated where disclosures ... report when the grand jury will return an indictment."); *In re Grand Jury Investigation*, 610 F.2d 202, 216–17 (5th Cir. 1980) (construing "the secrecy provision[] of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury ... but also to disclosures of matters which will occur, such as statements which ... report when the grand jury will return an indictment"). By disclosing to members of the media that a superseding indictment *had been* returned against the SPLC before it was unsealed, docketed, or communicated to defense counsel, the government violated the integrity of the proceedings and the letter and spirit of the rule itself.

   B. *Violation of Justice Manual Provisions*

The release of the document to members of the media also violates DOJ's own Justice Manual ("JM") provision on "Confidentiality and Media Contacts Policy."

JM § 1-7.000.[4] Section 1-7.000 "governs the protection and release of information that DOJ personnel obtain in the course of their work, and it balances four primary interests: (1) an individual's right to a fair trial or adjudicative proceeding; (2) an individual's interest in privacy; (3) the government's ability to administer justice and promote public safety; and (4) the right of the public to have access to information about the Department of Justice." All of those factors were violated by DOJ's decision to use the PAO to release to media outlets an unsigned, unstamped, non-final, and fully editable version of a supposed superseding indictment in a *pending* criminal case. Not to mention, no explanation or context was provided to media members about why a Microsoft Word version was being distributed, or why the indictment was not available on the Court's docket.

The release also violates JM subsection 1-7.600, which directs that "DOJ personnel shall not make *any statement or disclose any information* that reasonably could have a substantial likelihood of materially prejudicing an adjudicative proceeding." JM § 1-7.600 (emphasis added). For the reasons already stated herein, the release of the draft indictment in Microsoft Word—which appears to now contain at least one material difference from the file-stamped version docketed on June 3—

---

[4] As has been previously noted, while the Justice Manual does not confer any rights upon a defendant, it does set out proper procedures for prosecutors and, when improper procedures exist, can inform motions based on the law of prosecutorial misconduct.

was not consistent with the letter and spirit of DOJ policies meant to protect the fair trial rights of those charged.

### C. *Violation of Rules Prohibiting Extrajudicial Statements*

The release of this draft and unsigned indictment also appears to violate rules prohibiting DOJ officials from making (or releasing) extrajudicial statements. As has previously been explained in the SPLC's Motion to Enforce Rules Prohibiting Further Prejudicial Extrajudicial Statements (ECF 23), there can be nothing more fundamental to our system of justice than an officer of the court's obligation to tell the truth and to refrain from making extrajudicial (or prejudicial) statements about a defendant or the case. *See* ECF 23. The preamble of the Alabama Rules of Professional Conduct states that "a lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." Ala. R. Prof. Conduct (Preamble), para. 6. Lawyers holding public office assume legal responsibilities going beyond those of other citizens, *see* Ala. R. Prof. Conduct 8.4 (Maintaining the Integrity of the Profession), cmt. para. 3., and lawyers may not engage in conduct that is prejudicial to the administration of justice. *Id.* at 8.4(d).

DOJ's own regulations contain clear rules governing statements made by Justice Department personnel aimed at protecting the rights of those accused of a crime while allowing statements that serve a legitimate law enforcement purpose.

For example, 28 C.F.R. § 50.2(b)(2) prohibits Justice Department personnel from "furnish[ing] any statement or information for the purpose of influencing the outcome of a defendant's trial[.]" Likewise, Section 50.2(b)(3) dictates that "[d]isclosures should include only incontrovertible, factual matters[.]" Releasing draft indictments without a foreperson and Assistant U.S. Attorney's signatures, and issuing statements to members of the media via e-mail about a "returned" superseding indictment still under seal (*see* **Ex. A**) before it has been posted on the docket *or even* communicated to defense counsel, serves no legitimate law enforcement purpose and impacts the defendant's right to a fair trial. And the fact that this draft document was given to national outlets, which then issued at least two online stories available to the world, and pushed out on social media, only exacerbated the numerous violations and prejudicial effect in this case.

This action by Acting Attorney General Blanche's Public Affairs Officer is all the more concerning in light of his earlier rush to begin a media campaign around the first indictment, his false statement in doing so, his need to make a correction, the motion that the SPLC filed in response, and the Court's Order this week reminding the government of its heightened duty of candor as officers of the court. In light of those events, it is astounding that DOJ would not be even more vigilant in its actions directed at the media in this case. They were not.

11

## II.     The Court Should Issue a Show Cause Order Directing DOJ to Explain Its Release of the Draft Sealed Indictment to Members of the News Media.

In light of these unusual (to say the least) actions by DOJ which run afoul of federal rules on proper grand jury procedure and DOJ's own practice manual, the Court should order DOJ (specifically, Acting Attorney General Blanche and, if necessary, his Public Affairs Officer) and the USAO (specifically, First Assistant U.S. Attorney Kevin Davidson and Assistant U.S. Attorney Russell Duraski, both of whom appeared on the signature block of this indictment) to show cause to explain their conduct here, and hold a hearing to conduct targeted fact-finding to determine whether to impose appropriate sanctions against those involved.

An order to show cause is necessary to identify the source and scope of the breach, to determine who had access to the draft/sealed indictment, what court and security measures were possibly breached, to whom in the media or otherwise the draft was sent, and why any of this happened.

The SPLC also respectfully requests that the Court direct DOJ and the USAO to immediately preserve all potentially relevant communications and records, including emails, messaging applications, phone logs, cloud storage, document-management metadata, and media contacts, to prevent loss or destruction to aid in any fact-finding efforts by the Court.

Additionally, the SPLC asks that the Court require under seal declarations from both DOJ and the USAO setting forth: (a) the list of all persons (including non-

12

government contractors) with access to the draft/sealed indictment; (b) the dates and means of access; (c) any internal communications regarding the decision to release the draft superseding indictment, including whether any consideration was given to the federal rules, the Justice Manual, and/or the Court's Order; (d) any communications with media or third parties concerning the draft, unsigned superseding indictment before unsealing, including names of all recipients who were copied or blind copied; and (e) the safeguards employed to protect Rule 6(e) material in this case. These issues, and others, can also be explored during a show cause hearing at the Court's discretion, at which point the Court can consider whether appropriate sanctions, or other relief, are necessary pursuant to its inherent supervisory powers as a result of this unprecedented breach.

## CONCLUSION

As the Court remarked earlier this week, "[a]ll attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice." ECF 50 (Order) at 4 (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546–47 (11th Cir. 1993)). That duty of candor is more important than ever now considering what occurred last night, particularly on the heels of the Acting Attorney General's false statement and other egregious statements by high ranking Administration officials detailed in the SPLC's prior motions. In light of the apparent breaches of grand jury secrecy and proper DOJ practice, the SPLC

13

respectfully asks the Court to issue an Order requiring DOJ and the USAO to show cause explaining its conduct and why it should not be sanctioned considering the prejudicial consequences at stake here.

Dated: June 3, 2026                    Respectfully submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Janelle Geddes (TN Bar No. 035141)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com
janelle@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North

14

Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*

15