IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

UNITED STATES OF AMERICA

vs. CASE NO.: 2:26cr139-ECM

SOUTHERN POVERTY LAW CENTER, INC.,

Defendant.

* * * * * * * * * * * * * * *

INITIAL APPEARANCE

ARRAIGNMENT

* * * * * * * * * * * * * * *

BEFORE THE HONORABLE KELLY F. PATE, UNITED STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on Thursday, May 7, 2026, commencing at 12:57 p.m.

APPEARANCES

FOR THE GOVERNMENT: Mr. Kevin P. Davidson
Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY
131 Clayton Street
Montgomery, Alabama 36104

FOR THE DEFENDANT: Mr. William C. Athanas
BRADLEY ARANT BOULT CUMMINGS
1819 Fifth Avenue North
Birmingham, Alabama 35203

Proceedings reported stenographically;

transcript produced by computer

APPEARANCES, continued:

FOR THE DEFENDANT: Mr. Abbe D. Lowell
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, DC 20005

Ms. Addy R. Schmitt
KROPF MOSELEY SCHMITT, PLLC
1100 H Street NW
Washington, DC 20005

* * * * * * * * * * * * * *

(The following proceedings were heard before the Honorable Kelly F. Pate, United States Magistrate Judge, at Montgomery, Alabama, on Thursday, May 7, 2026, commencing at 12:57 p.m.)

THE COURT: Good afternoon, everyone. We are here this afternoon in United States versus Southern Poverty Law Center, Inc., case number 26cr139.

We are here in federal court in the Middle District of Alabama because there is a felony indictment pending against the Southern Poverty Law Center, Inc.

I'd like to begin by getting counsel appearances, please.

MR. DAVIDSON: Kevin Davidson for the United States of America.

THE COURT: Thank you, Mr. Davidson.

MR. ATHANAS: Good afternoon, Your Honor. William Athanas for the Southern Poverty Law Center.

THE COURT: Thank you, Mr. Athanas.

MR. LOWELL: Good morning, Your Honor. Abbe Lowell of Lowell & Associates on behalf of the SPLC.

THE COURT: Thank you, Mr. Lowell.

MS. SCHMITT: Good afternoon, Your Honor. Addy Schmitt from Kropf Moseley Schmitt on behalf of the Southern Poverty Law Center.

THE COURT: Thank you, Ms. Schmitt.

All right. I realize that some of you may not be familiar or as familiar with our practices in the Middle District of Alabama, so I want to just take a couple of moments here to talk about some preliminary matters.

First, we have a spirit of collegiality in this district. That does not mean that we will always agree, it does not mean that parties cannot staunchly be opposed on issues, but it does mean that everyone who comes before the Court is expected to do so with respect for the Court and respect for the participants before the Court. We expect professionalism in all conduct regarding matters before the Court. We require parties to confer in good faith before any discovery motion is filed.

Second, we conduct everything on the docket on the record. There might be matters from time to time that need to be under seal or filed ex parte or handled ex parte, but those are very limited, and they require a motion or a notice on the record first. We do not accept letters or correspondence or calls for court action. Everything we do is handled on the

record.

Now, there are some matters that require an email to the chambers email inbox, for example, for proposed orders. Everything else is handled on the docket.

And then finally, we expect decorum in the courtroom at all times.

Now, the purpose of today's proceeding is to advise the defendant of the nature of the charges against it, the potential penalties for those charges, and applicable constitutional rights.

The defendant has the right to an attorney at all stages of these criminal proceedings. The Court recognizes that the defendant has retained counsel to represent it.

Which of you will be answering on behalf of the defendant?

MR. LOWELL: Depending on the topic, Your Honor, I will start, and there might be an issue to raise with you that one of my colleagues, Mr. Schmitt, might raise, but you can look to me first.

THE COURT: All right. Mr. Lowell, then, you're up first. Tell me, has the defendant received a copy of the indictment with the charges against it?

MR. LOWELL: SPLC has had that and has read and reviewed it.

THE COURT: Thank you. Then for the record, I'll just

summarize the charges that are presented in the indictment.

Counts 1 through 6 charge violations of Title 18 of the United States Code, Section 1343, for wire fraud beginning in or about 2014 and continuing through at least August 2023, and related to specific wire communications on or about April 25, 2023.

Counts 7 through 10 charge violations of Title 18 of the United States Code, Section 1014, for false statements to a federally insured bank related to statements on or about December 20, 2016.

Count 11 charges violation of Title 18 of the United States Code, Section 1956(a)(1)(B)(i) for conspiracy to commit concealment money laundering related to events beginning in or about 2014 and continuing through at least August 2023.

And the indictment also contains two forfeiture allegations.

Mr. Davidson, what are the potential maximum penalties for those charged offenses, please?

MR. DAVIDSON: Your Honor, for Counts 1 through 6, which are the wire fraud, from the statute it's not more than 20 years' imprisonment --

Understanding it's a corporation who is the defendant, but the statute doesn't differentiate, so I'll just read as the statute says.

Not more than 20 years' imprisonment, not more than

$250,000 fine or both, not more than three years' supervised release, a $100 special assessment fee, and any applicable order of restitution.

Counts 7 through 10, which are false statement to a federally insured bank counts, not more than 30 years' imprisonment, a fine of not more than $1 million or both the fine and imprisonment, a term of supervised release of not more than five years, a $100 assessment fee, and any applicable order of restitution.

For Count 11, the money laundering conspiracy, not more than 20 years' imprisonment, a fine of not more than $500,000 or both fine and imprisonment, a term of supervised release of not more than three years, a $100 special assessment fee, and any applicable order of restitution.

THE COURT: All right, Mr. Davidson. With that, have we accurately summarized the charges of the indictment and the potential maximum penalties for those charges?

MR. DAVIDSON: Yes, Your Honor.

THE COURT: Mr. Lowell, do you agree that we have accurately summarized the charges and the potential penalties?

MR. LOWELL: Yes, with the proviso that Mr. Davidson said that this is a charge against an entity, so the maximum jail sentences are not applicable, but, yes, as to that, indeed.

THE COURT: All right. Very good.

Then let me now advise the government of its

obligations under the Due Process Protections Act. As required by Rule 5(f) of the Rules of Criminal Procedure, the United States is ordered to disclose to the defendant all exculpatory evidence. That is evidence that favors the defendant or casts doubt on the United States' case as required by *Brady versus Maryland* and its progeny. The government has a duty to disclose any evidence that goes to negating the defendant's guilt, the credibility of a witness, or that would reduce a potential sentence. The defendant is entitled to this information without a request. Not doing so in a timely manner may result in consequences, including but not limited to exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, and sanctions by the Court.

Mr. Davidson, will you acknowledge the government's obligation?

MR. DAVIDSON: Yes, Your Honor.

THE COURT: Now, the Court has entered a protective order regarding some discovery matters in this case. That's document 32 on our record. What is the status of discovery? Has it been provided?

MR. DAVIDSON: It has not, and Mr. Lowell can speak more to this. The government has prepared discovery and has been speaking to opposing counsel for a few days now about it, but I'll let them get into more specifics about that if they

can.

THE COURT: All right.

MR. LOWELL: As you will, there's two obvious issues that we will address with Your Honor today based on your schedule. One is the schedule going forward.

We do have an issue on discovery. If you would like us to address it now, we can do that. Ms. Schmitt would be the one to do that if you want it at this moment.

THE COURT: Well, tell me the nature of the matter first.

MR. LOWELL: The nature is that we're trying to help each other get the material that's required.

In a nutshell, it is whether or not the federal rule, namely 16, which has very, very specific provisions for what does and what does not trigger reciprocity, has been for reasons that we are trying to track down in conflict with the present version of what is the local rule. And in a nutshell, as you know, in Rule 16 certain of the provisions will trigger reciprocity. Some will not.

The local rule, depending on how it's read, would indicate that no matter what happens, if you ask for anything, you have to give everything, even that which was not reciprocal. And even if you accept a piece of discovery without having requested it, it triggers that. That's the issue that we can address. In a nutshell, that's what it is.

We tried to work it out. This morning prosecutor's office has indicated they are, to use their phrase, defaulting to the local rule, but the local rule is in conflict with the overriding federal rule.

THE COURT: All right. So it sounds like you-all have more meet and confer to do, but I'd like to get a little bit of additional flavor for the issue. So counsel has deferred to you, I think. I'm sorry, Ms. Schmitt.

MS. SCHMITT: Thank you, Your Honor.

MR. LOWELL: Can you hear? Should we put the microphone there? Do you want us to go to the podium? I should have asked you that.

THE COURT: If you can speak into the microphone, be sure it's on, then we should be just fine. You're welcome to go to the podium if you prefer.

MS. SCHMITT: Thank you, Your Honor. Actually, I might go to the podium.

THE COURT: Sure.

MS. SCHMITT: Thank you, Your Honor.

As Mr. Lowell summarized, essentially, there is a tension and a direct conflict between the Federal Rule 16 and the local rule.

There's actually three areas of conflict. One is that the federal rule speaks very specifically about two categories of discovery. One category is what the government is required

to produce to the defense upon the defense's request but does not require any reciprocal discovery to be produced by the defense to the government. The second category of discovery under Rule 16 are categories that if the defense requests those categories of discovery, there is a corresponding obligation for the defense to provide those categories to the government.

The local rule doesn't speak of just requesting, it speaks of requesting or accepting. So that is the first area of conflict.

The second area of conflict, Your Honor, is the categories themselves are essentially off. They don't line up so that if you -- if the defense accepts any discovery under Rule 16 that the government provides under any of the categories, the defense must produce its discovery to the government under all the categories.

And that is the third area, is that the federal rule lines up the categories of reciprocal discovery one to one so that the government, if it requests a specific category, the corresponding category, that's reciprocal. The local rule doesn't make that distinction.

We are not, Your Honor, asking -- we have talked with Mr. Davidson, as Mr. Davidson said, over several days, including a call this morning. We think that -- we're not asking the Court, unless the Court would like to rule today, to do so without the benefit of having the language parsed and having

the -- you know, having the legal authority.

I will say that the legal authority is clear that a local rule cannot conflict with a federal rule and can't abridge rights that a federal rule provides. But we do recognize that it may be beneficial to provide some briefing on that, and we would be happy to do that.

THE COURT: All right. Thank you, Ms. Schmitt.

Mr. Davidson, is there anything the government wishes to say as we're just right now highlighting sort of the issue and teeing up those for the Court?

MR. DAVIDSON: Only that this is the first time in my 14 years here that this issue has come up as such. It was first brought to my attention either yesterday or day before. It's not an issue I've ever thought about or looked into. So at the time, I have not had the opportunity to do any research on the issue to really intelligently speak to whether there is a conflict and, if there is a conflict, what the consequences of that conflict are.

As I said, the government is prepared to deliver discovery, likely all in electronic format, at whatever the appropriate time is. So I would just defer to the Court on how you wish to handle the issue going forward.

THE COURT: All right. Well, before I answer that, Mr. Lowell --

MR. LOWELL: No, no. Go ahead. Maybe you were going

to say --

THE COURT: Okay. Well, here's one potential issue that I see. How do we wish to proceed with arraignment, given the uncertainty as to the production of discovery, Mr. Lowell?

MR. LOWELL: That wasn't the question, but I think let's get to that more important one first.

I think we proceed with the arraignment. We understand that in a normal situation, there would be the production of various materials almost immediately thereafter. I think we have to hash this part of it. So to make that part clear as to why we can go forward, there are materials the government has indicated it has that it would provide in discovery that does not implicate our issue in Rule 16, and they should definitely do that, including, for example, the immediate provision of any *Brady* material. So that would not interfere with this dilemma and anything else that's outside of 16.

What we need to do is then figure out what we do about 16. I don't think it will take the Court very long to address what Ms. Schmitt said and come to its own decision. If you want something, we can provide it, but I think it's pretty obvious by looking at the rule and looking at the rule.

So I think we can proceed with arraignment. I think we will then ask the government for that which is not 16. We're making clear on the record that none of our requests today would be under 16, such that the local rule as it may be interpreted

by the prosecutor's office wouldn't require any reciprocity, and then we can resolve this issue, make the requests that we believe we can make in each of those categories, and those categories we do not see then will become clear.

I think we do not have to delay is a short way of saying the answer to your question.

THE COURT: Very good.

Mr. Davidson, can the government agree to produce the items that Mr. Lowell has indicated that are outside of this issue that we need to address further?

MR. DAVIDSON: Yes, Your Honor. I would imagine within -- certainly before they get back to their office this afternoon, we will have a link emailed to them with a way to access any of that discovery.

THE COURT: Okay. Then I think we at least have the initial part of discovery handled. What I would like to do is give you-all a week to complete your conferencing on this issue. It sounds like, Mr. Davidson, you have some additional items or issues that you need to research and consider, and then you-all need to get back together to confer about whether there is an agreement. So in a week, you need to complete that process. And then if there is not an agreement, file the appropriate motion for the Court to consider the issue, and then I'll set a briefing schedule so that we can take it up very timely.

All right. So one week. And I'll issue an order so

this is clear to everyone.

Now, with that matter handled, then, may we proceed to arraignment?

MR. LOWELL: Yes, ma'am.

THE COURT: Okay. Now, Mr. Lowell, we've already confirmed for our record that the defendant received and reviewed a copy of the indictment. We've already summarized the charges of the indictment. Does your client waive a full and formal reading of the indictment, or does your client wish that it be read in full?

MR. LOWELL: Your Honor, the client waives the formal reading of the indictment.

THE COURT: All right. Then I will now ask for the defendant's plea to each charge.

As to Counts 1 through 6, wire fraud, in violation of Title 18 of the United States Code, Section 1343, how does the defendant plead?

DEFENDANT BRYAN FAIR: Not guilty, Your Honor.

THE COURT: And how does the defendant plead to Counts 7 through 10, false statements to a federally insured bank, in violation of Title 18 of the United States Code, Section 1014?

DEFENDANT BRYAN FAIR: Not guilty, Your Honor.

THE COURT: And as to Count 11, conspiracy to commit concealment, money laundering, in violation of Title 18 of the

United States Code, Section 1956(a)(1)(B)(i)?

DEFENDANT BRYAN FAIR: Not guilty, Your Honor.

THE COURT: And for the record, we need to recognize who is speaking on behalf of the defendant and authority to do so.

DEFENDANT BRYAN FAIR: Your Honor, I'm Bryan Fair, interim president and CEO of the Southern Poverty Law Center.

THE COURT: Very well. The Court will enter a not guilty plea on behalf of the defendant as to each charge against it.

Now we need to discuss a trial date. This matter is set for trial before Judge Marks. Her -- well, let me say this. It's early in the case, I realize, and we are addressing some matters on discovery, but I'd like to get your best estimation at this early stage as to how long trial may take.

Mr. Davidson, what's your best estimate?

MR. DAVIDSON: My best estimate is the government's case would take five to seven days.

THE COURT: Mr. Lowell?

MR. LOWELL: I would say not fewer than five and probably not more than what the seven he proposes to be. At this early stage, you understand how hard that is to predict.

THE COURT: Certainly. And you won't be held to that. I'm just trying to get an estimate. It sounds like, based on that, a two-week trial term should in theory be sufficient,

recognizing that things may change between now and then.

So the next available trial term begins on June 22nd, 2026. That is within the speedy trial frame.

Mr. Lowell, what's your client's position?

MR. LOWELL: May I go to the podium?

THE COURT: You may.

MR. LOWELL: Thank you, Your Honor.

Because of the unique aspects of this case, as demonstrated by we can't even start the discovery process, I discussed with Mr. Davidson an idea that I'd like to propose to the Court. What I think we need to have is a date for the discovery in this case to be completed, with, of course, the ability to provide supplemental if there's new material. That we could probably do. I would also like to propose to the Court a schedule for motions. It's not going to come as a surprise to Your Honor that we're going to have motions in this case, and they're not going to be just the run-of-the-mill motions. This has some elements to it that would dictate that there's something like -- we're not hiding the ball when we say we have a vindictive prosecution motion. We have a motion that would indicate one of these charges may not have been applied properly. We have motions to strike because there are things in the indictment. So there are some issues there. We would propose a schedule for that.

And then I know that it's the custom to put a trial

date somewhere. It wouldn't be June 22nd. We would certainly indicate that either the nature of the case or the motions to be filed would qualify for an exception under the Speedy Trial Act. Or if it's safer, we would waive any speedy trial need between now and a time that we put together a schedule, whichever Your Honor wants.

What I would propose -- and I realize this is unusual, but sometimes fitting something to a case makes sense. We would do the discovery date, a motions schedule, and then thereafter ask the Court to do a status conference. And at the status conference, we could then figure out whether we have enough to understand what a trial date would be. It wouldn't be the 22nd of June. Whether then it's one of those other settings that I understand exists in September or October or November, that's when we could decide. It's just so hard to pick one. You could pick one, of course, but I don't know that that would stick, and I don't know that it would do anything more than just have a placeholder.

This way the Court will know exactly what this case is about, how it will be framed, what needs to be decided, and then we could decide on every other date that takes place.

That's an idea I'm offering the Court. And I have those dates if you want it.

THE COURT: Well, share those, and then we'll discuss it further.

MR. LOWELL: So given that we, hopefully, will iron out this discovery event, I would say that we could work with the government to have the discovery in this case, provided with the proviso that we've just said, somewhere, now that I know that hopefully we work it out, in the next ten days. And that would be whatever date that would be.

We propose that we would file our motions on May the 26th. And then under the normal situation, that would provide the government's reply two weeks later, to the 5th of June. We would seek the possibility of a reply one week later, on June 12th. Of course, the Court can consider that in any way you want. But we would think that depending on that, perhaps there could be a status conference, and that could either be in person or virtually. If it's a status conference, the following week, the week of the 22nd, whenever the Court was available. And that would take us very far into the process.

THE COURT: If we adopted your proposal to set out those deadlines, including the motion schedule, why wouldn't we go ahead and set the trial for a date out -- you've said the client waives the right to a speedy trial, and you've established reasons why we need to set it outside of the 70-day window. So why wouldn't we go ahead and set it for a trial date outside of that window, recognizing that there could be things that come up in these motions that require a different setting?

MR. LOWELL: In effect, what you said is literally

true. I mean, you could pick -- and I forgot I wrote it down. There's a date in I think October, and I think there's --

THE COURT: October 6th.

MR. LOWELL: And then there's one in November.

THE COURT: November 16th.

MR. LOWELL: Right. And we haven't yet conferred between those two dates, which would, even as a placeholder, make the most sense. We could pick one today, knowing that we could change it. If that's Your Honor's preference, then of course, we'll do it that way. I just wanted to make sure that everybody knew that I'm thinking of the steps that will inform that decision better than trying to figure it out all this very day.

So in that case, if you let me confer one moment, if your inclination is to pick one of those two dates.

THE COURT: Yes, but let me give Mr. Davidson the opportunity to offer anything that the government wishes to say on the proposal. Mr. Davidson?

MR. DAVIDSON: Your Honor, only just understanding -- and I don't have an objection to -- if the government was given two weeks from their deadline to then respond, depending on the number of motions, the complexity of the motions that the government, just to forewarn Your Honor, depending on that, would potentially be looking for -- asking for extra time for some number of those. Just depending on how many and how

complex these motions are, it may be difficult for the government to respond to everything within the two-week period. Which I won't know until they file, and then I'll file an appropriate motion if needed. Just wanted to just go ahead and front that to the Court.

THE COURT: Thank you, Mr. Davidson. Mr. Lowell?

MR. LOWELL: Your Honor, did you name in the possible future a date in September? Was that September 15th?

THE COURT: Yes. Let me just give them all to you so you may consider all of them.

There is a trial term September 14 that is not assigned to Judge Marks, but it could be specially assigned to Judge Marks for this trial. The next available would be October 5. Following that, November 16.

MR. LOWELL: One second.

(Brief pause in the proceedings.)

MR. LOWELL: Don't think we have to even bother with any special assignment. Let's pick the one that we know would work in her present schedule and pick October 5th as the presumptive trial date.

THE COURT: All right. And just for purposes of being concise on our record, Mr. Lowell, if you would, state the basis to set this matter outside of speedy trial.

MR. LOWELL: Sure. Under the provisions of the Speedy Trial Act, we think the provisions that call for the

consideration of motions, the nature of there being issues that need to be determined by both the prosecution and the defense and the Court, it meets the interest of justice to pick a date that is outside the normal 70 days from today and therefore pick a date that isn't so, so far out that the spirit of the Speedy Trial Act is not obeyed, but provides the Court and the parties all the ability to proceed. And on that basis, if the Court makes the finding that's preferable, but it's not the only way -- I will make clear that if that is not a Court finding on its own, the defendant knowingly says it will waive its speedy trial to the point at which the Court then decides the motions and we go forward from there.

THE COURT: Very well. Then at this stage, I do find that the ends of justice served by placing the trial on the October 5, 2026, trial term do outweigh the interests of the public and the defendant in a speedy trial. So we will set it for that date.

A motion schedule it seems makes a lot of sense here, given what you have represented. And so I will ask that you submit a proposed order that reflects what you have presented here today in terms of the discovery period, the motions schedule, including a status conference, if necessary, for those May and June motion and reply -- or response deadlines.

Mr. Davidson, I recognize that we may need to adjust that schedule when the motions come in. Certainly if the

government needs to request a different time frame for a particular motion or motions, that can be addressed at that time. Same for the defendant, whether in respect to the initial filing of the motions or the necessity of -- or timing of a reply brief.

All right, then. Mr. Lowell, you look like you have one more thing you want to say.

MR. LOWELL: It does turn out that I have one more thing to say.

It is possible that we, too, may end up having to in our motion address an issue to make sure that we've covered our bases. So it is possible, given what has been said out there, and I don't know who the sayer is out there, that the government may still be considering some form of superseding indictment. Don't know that that's happening. I have had conversations with Mr. Davidson. I do know that the next grand jury setting is June 3rd. Now, if the government should do that -- we're not suggesting it is, will, or should -- then I want to point out that that, depending on what happens, may fix -- may change some of those dates.

So what I would propose is we won't change the motions date. It will still be on the 26th. It will say in this order something like should there be additional charges or other events, we can supplement those motions depending on whether those charges implicate the motions that have already been filed

if that's acceptable.

THE COURT: That should be fine. Of course, if there is a superseding indictment, we will all be back here in court to address the new charge or charges, so we can take that matter up and how it affects any briefing or motions that are in place at that time or expected at that time. But I appreciate why you might want to highlight the issue before we get there.

MR. LOWELL: And that was that extra sentence I had.

THE COURT: Very good. All right.

Anything further, then, from the government? Mr. Davidson?

MR. DAVIDSON: No, Your Honor.

THE COURT: Then we are adjourned. Thank you all.

(Proceedings concluded at 1:25 p.m.)

* * * * * * * * * * * * *

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of the proceedings in the above-entitled matter.

This 12th day of June, 2026.

/s/ Patricia G. Starkie
Registered Diplomate Reporter
Certified Realtime Reporter
Official Court Reporter