IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cr-00139-ECM |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. | ) | |

**UNITED STATES' RESPONSE AND OBJECTION TO THE DEFENDANT'S
MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**

The defendant's motion to dismiss is an attempt to fit a square peg into a round hole. The Government is afforded broad prosecutorial discretion. For this reason, a defendant raising a claim of vindictive prosecution faces a heavy burden and may meet that burden only in the narrowest of circumstances. Specifically, courts have found this defense meritorious only when a defendant has been prosecuted or punished *after* exercising a specific legal right—*e.g.*, a defendant is indicted for a felony after exercising his right to appeal a separate misdemeanor conviction or where a defendant is indicted after he filed a civil lawsuit. Indeed, it appears that every case in this circuit addressing a claim of vindictive prosecution follows this path.

The defendant's motion is far afield from the limited framework for a claim of vindictive prosecution. Instead, the defendant employs a novel approach, contending that it now faces criminal charges for generally exercising its First Amendment right to engage in public discourse. Doc. 49 at 1. Notably, the defendant is unable to pin down what specific aspect of its engagement in public speech is relevant to this case. The defendant first argues it faces criminal charges for "exercising its First Amendment right to identify, report on, and criticize extremist hate groups," *id*., but later suggests the criminal charges resulted from its political speech and criticism of the Administration. *Id*. at 11-12, 19-21.

In any event, on its face, the defendant's motion fails to make the threshold showing necessary for a claim of vindictive prosecution. The defendant fails to cite *any* controlling authority holding that the general exercise of public speech qualifies as the type of procedural or

legal right upon which a claim of vindictive prosecution could be based.  Just like anyone, the defendant is free to exercise its First Amendment rights.  The exercise of that right, however, does not shield the defendant from being criminally charged with fraud, nor does it create a claim of vindictive prosecution.  Otherwise, any defendant could raise such an amorphous defense against a future criminal charge simply by publicly criticizing the prosecuting agency or the government generally.  That is precisely why a claim of vindictive prosecution arises only in very, limited contexts, which do not exist here.

The Government sought an indictment in this case because, after law enforcement conducted a proper investigation, the Government believed the defendant committed federal financial crimes that could be proven beyond a reasonable doubt.  The Government disputes the defendant's characterization of the factual background in this case, and its speculation concerning what it alleges as "motivation" for the indictment.  *Id*. at 19.  Indeed, the defendant's motion reads more like a press release or response to its critics rather than an attempt to identify the exercise of a recognized, specific legal right that, according to the defendant, led to the indictment.  The reason for this is simple: this indictment was secured based on the law and the facts uncovered during a federal investigation, not in response to the exercise of a cognizable legal right.

But this Court need not concern itself with parsing the defendant's allegations.  The defendant's failure to allege, much less establish, a threshold matter—the showing of the exercise of a specific legal right followed by the initiation of criminal charges—warrants the denial of the motion.  Factual allegations relating to an unrecognized, generalized First Amendment theory underlying the alleged vindictive prosecution is insufficient.  This foundational problem also precludes discovery and an evidentiary hearing on this matter.  Accordingly, the United States respectfully requests that this Court deny the defendant's motion in its entirety.

### PROCEDURAL HISTORY

In April 2026, a grand jury in the Middle District of Alabama charged the defendant with six counts of wire fraud, four counts of making false statements to a federally insured financial

institution, and one count of conspiracy to commit concealment money laundering, in violation of 18 U.S.C. §§ 1343, 1014, and 1956(h), respectively.  Doc. 1.  These charges center on (1) the defendant's solicitation of donations to purportedly combat violent extremist groups like the Ku Klux Klan and the Aryan Nations while simultaneously and secretly using donors' money to fund these groups' leaders and activities and (2) the financial infrastructure that the defendant created to conceal payments to these individuals from the public.

Following this indictment, the defendant, through retained counsel, filed a motion claiming that it is the victim of a vindictive prosecution.  Doc. 49.  The defendant contends it has met its burden to establish actual vindictiveness, and therefore requests that this Court dismiss the indictment.[1]  In the alternative, the defendant argues that it has established presumptive vindictiveness and the United States should be required to rebut this presumption.  Finally, the defendant requests wide-ranging discovery into privileged matters and an evidentiary hearing.  All requests for relief should be denied.

### ANALYSIS

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute."  *Wayte v. United States*, 470 U.S. 598, 607 (1985)(citing *United States v. Goodwin*, 457 U.S. 368, 380, n. 11 (1982)).  As "long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

"This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607.  Thus, where there is probable

---

[1]    After the defendant filed its motion, and before the United States filed this response, the grand jury returned a superseding indictment.  Doc. 51.  The superseding indictment contains additional facts, but the charges remain the same.   This subsequent charging document does not render the defendant's motion moot.  Rather, the United States files this response as if the defendant had filed its motion to dismiss the superseding indictment on the same legal grounds.

cause to believe an offense has been committed, generally, "the courts have no authority to interfere with a prosecutor's decision to prosecute." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006).

Like any other case that is investigated and prosecuted by the Government, this case was initiated because a grand jury in the Middle District of Alabama determined that the facts and evidence established probable cause that an offense had been committed.  Whether guilt will be established beyond a reasonable doubt is a question for a jury.  Until that point, the broad discretion afforded to the Government's prosecutorial decisions applies, regardless of the amount of media coverage or public comment that has occurred.

The defendant contends this prosecution is unique.  It argues that this case is one of the extremely rare instances where the broad prosecutorial discretion is subject to restraint in the form of a claim of prosecutorial vindictiveness. This allegation, built on conjecture rather than substance, falls flat.

As the movant, the defendant carries the heavy burden of establishing that the indictment is the result of vindictiveness.  But the motion, on its face, does not establish either actual or presumptive vindictiveness. It fails to identify the exercise of a specific, protected right that resulted in the indictment, a predicate requirement of any valid claim of vindictive prosecution.

At bottom, this is a standard white collar fraud prosecution involving a defendant indicted on frequently charged financial fraud offenses.  The defendant's status as a politically aligned, tax-exempt organization that engages in First Amendment protected activities is irrelevant to the question presented.  This Court should treat the defendant the same way it treats every other defendant charged with financial offenses.

I.      **The defendant's motion is facially meritless because it cannot show that it specifically exercised a protected right in the context of a claim of vindictive prosecution.**

The defendant's claim of vindictive prosecution is facially deficient.  The defendant has failed to identify, much less establish, its exercise of a specific protected right that led to the

indictment. A generalized, nebulous assertion of a First Amendment right to free speech does not support a claim of vindictive prosecution.

The Supreme Court has held that a claim of vindictive prosecution is grounded in due process, namely that a defendant "may not be punished for exercising a protected statutory or constitutional right." *Goodwin*, 457 U.S. at 372. Thus, the key function of the judiciary in this narrow realm of evaluating prosecutorial decision-making is to ensure that a defendant is not criminally charged "for the exercise of a *protected* right." *United States v. Mays*, 738 F.2d 1188, 1190 (11th Cir. 1984) (emphasis in original).

Supreme Court and circuit precedent makes clear that, in the context of a claim of vindictive prosecution, a "protected statutory or constitutional right," means the exercise of a protected right during the course of litigation. For example, in *Goodwin*, the Supreme Court addressed the defendant's claim of vindictive prosecution where the defendant was indicted and convicted of a felony *after* he requested a trial by jury on pending misdemeanor charges. 457 U.S. at 370. In *Blackledge v. Perry*, the Supreme Court considered a claim of vindictive prosecution where a felony indictment for assault issued *after* the defendant appealed for a trial *de novo* for a misdemeanor assault conviction based on the same conduct. 417 U.S. 21, 22-23, 28-29 (1974); *see also Bordenkircher*, 434 U.S. at 358 (holding no due process violation where the prosecutor indicted the defendant on a more serious charge after the defendant rejected a plea offer). Likewise, in *Barner*, the Eleventh Circuit addressed a defendant's claim of vindictive prosecution where the superseding indictment adding additional charges was obtained *after* the defendant withdrew from his plea agreement and filed motions to suppress and dismiss. 441 F.3d at 1312-13, 1321.

The common thread in these controlling cases is that a defendant exercised a concrete and specific procedural right during a legal proceeding after which the challenged indictment or superseding indictment was obtained. Following the Supreme Court and Eleventh Circuit, the district courts cases in this circuit addressing claims of vindictive prosecution apply the same

5

requirement.  *See e.g. United States v. Coleman*, 382 F. Supp. 3d 1260, 1265 (M.D. Ala. 2019) (denying claim "that the purpose of the superseding indictment was to punish him for filing a motion in limine and exercising his right to proceed to trial."); *United States v. Brown*, 862 F. Supp. 2d 1276, 1290 (N.D. Ala. 2012) (addressing claim where inmate filed a civil lawsuit relating to an alleged assault that was followed by an indictment relating to the same assault).

The defendant's motion fails to make a showing on this threshold issue.  Charging a defendant merely for the lawful exercise of a "*protected* right," if proven true, is unquestionably unconstitutional.  But that did not happen here.  The defendant does not even allege facts that would fit a recognized claim of vindictive prosecution—*e.g.*, the exercise of a legal right during litigation followed by an indictment.  Instead, the defendant relies on a vague notion that its general comments in the public sphere suffice.[2]  Doc. 49-1 at 11-12.  Put simply, there is no legal support for that contention.

Notably, the gulf between the defendant's meritless factual allegations and the class of facts that apply in the context of a claim of vindictive prosecution is cemented by examining *United States v. Abrego Garcia*, No. 3:25-CR-00115, 2026 WL 1454303 (M.D. Tenn. May 22, 2026)—a case frequently cited in the defendant's motion.  The contrast between that case and this one is stark.  In that case, the claim of vindictive prosecution arose after the defendant was indicted

---

[2] To be clear, the Government denies the defendant's insinuation that it was charged because it exercised its First Amendment rights.  The defendant was indicted because a grand jury determined that the facts and evidence established probable cause that it had committed multiple financial crimes.  But this Court need not engage in parsing the defendant's allegations or engaging in discovery because these allegations do not amount to a *bona fide* claim of vindictive prosecution.  Nevertheless, these allegations fail.  For instance, the defendant contends that it "faces criminal charges for exercising its First Amendment right to identify, report on, and criticize extremist groups."  Doc. 49 at 1.   In support of this argument, the defendant notes that it has publicly criticized the President, his Administration, and specific individuals within the administration and the Department of Justice, between January 2025 and early April 2026.  *Id*. at 11-12.  It further asserts this political criticism—which, of course, is First Amendment protected speech—led to its indictment in late April 2026.  *Id*. at 23.  Yet the defendant fails to present any meaningful analysis of causation between its First Amendment activities in 2025 and 2026, and the charged financial fraud conduct that allegedly occurred between 2010 and 2023, demonstrating that much of the defendant's allegations are not only legally irrelevant, but are red herrings.

6

shortly *after* the defendant's successful lawsuit challenging his removal resulted in his return to the United States. *Id*. at \*1. The district court there found persuasive the fact that within days of the Supreme Court's ruling in favor of the defendant's lawsuit, a criminal investigation was reopened and less than thirty days later, the defendant was indicted. *Id*. at \*1; *see also id*. at \*5 (finding that the "Government chose to pursue that evidence only after Abrego's successful lawsuit and the ongoing requirement to report daily to [the judge] on efforts to return Abrego to the United States.").

Nothing of the sort occurred here. The defendant has not, and cannot, allege facts of this nature, despite bearing the burden to establish that it is being prosecuted for its lawful exercise of a "*protected* right." Indeed, the cases the defendant cites in its brief cut against its argument, establish it has not made this threshold showing, and confirm that its allegations do not support a claim of vindictiveness. The cases cited in the defendant's brief involve facts where a defendant exercised a specific procedural right *during a legal proceeding* that was *followed* by a charge to support a claim of vindictive prosecution, save one readily distinguishable case from the District of Columbia.[3]

In *United States v. Carey*, in response to an Executive Order that specifically directed the prosecution of individuals who burned the American Flag, the defendant went to Lafayette Park in Washington, D.C., directly across from the White House, and burned an American flag. 816 F. Supp. 3d 129, 133 (D.D.C. 2026). U.S. Park Police Officers responded to the scene and charged the defendant with misdemeanors for lighting or maintaining a fire in an undesignated area or in a manner that created a public safety hazard. *Id*. at 134. The defendant filed a motion to dismiss alleging, among other things, that he was being vindictively prosecuted. *Id*. at 135. Despite recognizing that vindictive prosecution typically involved situations where a defendant exercised

---

[3] The defendant's motion also cites *United States v. P.H.E.*, 965 F.2d 848 (10th Cir. 1992), Doc. 49-1 at 31-32, but that case is factually distinguishable for a number of reasons, including the fact that the indictment at issue was obtained after some of the defendants had sought injunctive relief against the government. 965 F.2d at 852.

a procedural right during his prosecution, the district court allowed further proceedings on the defendant's claim, *id*. at 138, but *Carey* is both distinguishable and unpersuasive for several reasons.

First, *Carey* is an outlier. The facts of the case are inherently unique. The district court in *Carey* also went far out on a limb, conceding that the defendant's case was not typical. *Id*. Certainly, neither the Supreme Court, nor the Eleventh Circuit, have recognized this expanded approach. Thus, this Court should not, and need not, follow this outlier.

Second, the application of the First Amendment concerns addressed in *Carey* are wholly distinguishable from the defendant's case. In *Carey*, the defendant's specific exercise of an alleged First Amendment right—the burning of an American flag—was inextricably intertwined with the criminal charges themselves. The district court noted that flag burning was protected speech under the First Amendment. *Id*. at 133. Yet the defendant was charged criminally because he committed a specific, direct act that the defendant alleged involved the exercise of protected speech.[4]

But here, the defendant's general exercise of public speech by commenting on the Administration's actions and policies is not wrapped up in the charges alleged in the superseding indictment, which involve financial fraud, false statements to financial institutions, and money laundering. And, as noted above, unlike *Carey*, the defendant cannot point to a specific First Amendment action that triggered criminal charges in this case. In short, the application of the First Amendment in *Carey* has no bearing on the defendant's amorphous and inapposite First Amendment claims here.

Finally, the reasoning of *Carey* is wrong. Recognizing that there was no controlling precedent supporting the application of the defense of vindictive prosecution, the district court in

---

[4] The district court admitted in *Carey* that there was still an open question as to whether the defendant was charged for burning a flag or for an independent reason of starting an uncontained fire, regardless of the item burned. *Id*. at 143. Either way, however, the protected act was inextricably intertwined with the criminal charge in a way that is simply not present in the case at hand.

*Carey* found that the doctrine of vindictive prosecution supported the court's expansive application because "the doctrine prevents the Government from using prosecutions to deter people from exercising their rights." *Id*. at 139. But the district court in *Carey* failed to recognize that, in the context of a claim of vindictive prosecution, the exercise of a protected right means exercising a legal right during a legal proceeding. Otherwise, the narrow exception of this defense of vindictive prosecution would swallow the rule that prosecutors enjoy "broad discretion" as to whom they prosecute and that such a prosecutorial decision is generally outside the bounds of judicial inquiry.

The fact that an entity or person has engaged in — or even is currently engaging in — First Amendment protected activities cannot immunize that entity or individual from criminal prosecution on unrelated matters. Under the expansive view in *Carey* (and under the defendant's flawed logic), the best way for any entity or person to avoid criminal prosecution for any matter would be to openly and vigorously criticize the government or a prosecutor, even in a general manner. Then, any subsequent grand jury charge could be decried as vindictive because the defendant had previously exercised a First Amendment right, regardless of the weight of the evidence supporting the criminal charge. Such an approach would have a chilling effect on otherwise routine, lawful prosecutions. That is exactly why the general presumption of regularity exists, why the defense of vindictive prosecution is appropriately narrow, and why neither the Supreme Court nor the Eleventh Circuit has approved the expansive approach in *Carey*.

It is also important to note that, the D.C. district court's own analysis in *Carey* cuts against it. The district court recognized that D.C. Circuit precedent had not extended the defense of vindictive prosecution to the class of case that was currently before the court, but it contended that the Sixth Circuit had, citing *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989). *Carey*, 816 F. Supp. 3d at 139. Not so. Just like every other case involving a claim of vindictive prosecution, the facts of *Adams* centered on a defendant who asserted a legal right during a legal proceeding that preceded an indictment. Specifically, in *Adams*, the defendant filed a lawsuit against the Equal Employment Opportunity Commission alleging discrimination. *Id*. at 1142. During the discovery

9

phase of the lawsuit, information about the defendant and her husband's taxes was discovered, including the fact that certain income had been omitted from their tax returns, after which a special agent was assigned to investigate possible criminal tax violations, which resulted in an indictment charging the defendant with tax charges. *Id*. at 1143-44. Based on these facts, the circuit court held that the defendant made a sufficient showing to allow discovery and further proceedings on the question of whether the prosecution was vindictive. *Id*. at 1146. Thus, the non-binding Sixth Circuit's opinion in *Adams* does not support the non-binding D.C. district court's analysis in *Carey* and is likewise readily distinguishable from this case.[5] At bottom, *Carey* is an outlier, factually distinguishable, and analytically flawed. Because it is neither helpful, nor analogous, nor persuasive, it should have no application in this case.

In sum, the defendant has not met its threshold burden. It has failed to allege that this prosecution is, in any way, related to the defendant's exercise of a protected legal right that has been recognized by controlling authority in the context of a claim of vindictive prosecution. The defendant's assertion of generic First Amendment activity in the public sphere does not shield it from prosecution on unrelated matters, nor does it allow it to pierce the well-established prosecutorial discretion to attempt discovery of that decisional process. Accordingly, this Court should deny the defendant's motion to dismiss for vindictive prosecution in full.

## II.    The defendant cannot demonstrate actual vindictiveness.

For all the reasons set out above, the defendant has not carried its burden to establish the threshold issue that this prosecution is anyway related to a "*protected* right" asserted by the defendant. *See May*, 738 F.2d at 1190. Accordingly, this Court should summarily deny the

---

[5] *Carey* also cited a Second Circuit opinion, *United States v. Sanders*, 211 F.3d 711 (2nd Cir. 2000), but that case too is distinguishable. In *Sanders*, the Second Circuit rejected a claim of vindictive prosecution where the defendants, one of whom was a reporter, alleged the indictment was obtained in response to the publications of news articles about federal agencies' involvement in the investigation into an airline crash, as well as Freedom of Information Act requests submitted by one of the defendants related to that ongoing investigation. *Id*. at 714, 718.

defendant's motion.  Yet there are additional reasons the defendant's motion is meritless on its face, namely, it has failed to allege evidence that could establish actual vindictiveness.

To establish actual vindictiveness, a defendant must show objective evidence that "the charge was brought to influence the respondent's conduct."  *Goodwin*, 457 U.S. at 381. Specifically, a defendant must establish that the prosecution was "actually motivated" by the desire to punish the defendant for exercising his rights and that the indictment was "the result of such animus."  *Barner*, 441 F.3d at 1322; *see also United States v. Lee*, No. 23-13057, 2024 WL 4210779, at *4 (11th Cir. Sept. 17, 2024) ("[A] defendant may show 'actual vindictiveness' ... [by] prov[ing] through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights.") (citation omitted).  The Eleventh Circuit makes clear that this "showing is, of course, exceedingly difficulty to make." *Lee*, 2024 WL 4210779, at *4 (citation omitted).

The defendant has not presented any "objective evidence" that this prosecution is retribution for the defendant standing on any "legal rights."  None of the allegations in the defendant's motion provide objective evidence that the Government indicted the defendant to punish it for exercising a specific legal right.  For example, the defendant makes much of the fact that Administration officials commented about the defendant in 2025 when it was announced that the Federal Bureau of Investigation ("FBI") was terminating any relationship with the defendant. Doc. 49-1 at 15-16.  Yet those statements offer nothing to show that the defendant was specifically indicted to punish it for exercising a protected right.  An administration's criticism of, and disagreement with, a defendant is not *de facto* objective evidence that a subsequently returned indictment against the defendant by a fair and impartial grand jury is vindictive prosecution.

Further, the defendant points to statements the President and Administration officials made about the defendant after the original indictment was returned, Doc. 49-1 at 17-21, 27-29, but none of these statements point to objective evidence of actual vindictiveness.  To the contrary, the Administration's communication post-indictment reiterated the true reason the defendant was indicted: because a grand jury determined that there was probable cause to believe it committed

11

fraud.  Doc. 49-1 at 19.[6]  *Contrast with Abrego Garcia*, 2026 WL 1454303, at \*5 (finding significant statements from the Administration that the criminal investigation into the defendant began after a judge questioned the Administration's decision to deport him).

The defendant has not, and cannot, meet its burden to establish actual vindictiveness.  It has not alleged any "objective evidence" that this prosecution is a pretext to impinge on the defendant's First Amendment, or any other protected, activity.  Far from it, the objective evidence demonstrates this is a legitimate prosecution of alleged financial crimes.  Accordingly, the defendant has failed to carry its burden, and this Court should deny the defendant's motion to dismiss for actual vindictiveness.

### III.     The defendant cannot demonstrate presumptive vindictiveness.

The defendant's motion also fails because it does not sufficiently allege, much less establish, a basis for a claim that a presumption of vindictiveness arises from the Government's conduct.  The Eleventh Circuit has never held that the presumption of vindictiveness applies in a pre-trial setting.  As detailed below, there are "several cogent differences between post-trial and pre-trial situations," that support the inapplicability of the doctrine of presumptive vindictive to pretrial cases.  *Barner*, 441 F.3d at 1316.  Those distinctions apply here and further caution against expanding the jurisprudence in this area, particularly given the inherent flaws in defendant's claims.  But even if the presumption did apply in the pretrial context, it would not apply in this case because, as noted above, the defendant has failed to make the requisite "threshold showing of

---

[6] Notably, a large chunk of the defendant's allegations are tangential and irrelevant, concerning the Administration's actions that did not mention the defendant specifically, or do not relate to the Executive Branch altogether.  For instance, the defendant cites an internal memorandum concerning potential FBI investigations into religions groups.  Doc. 49-1 at 8-9.  But the only involvement the defendant had in that memorandum was that its website happened to be cited in the memo.  Doc. 49-1 at 9. Similarly, the defendant cites the fact that the President issued Executive Orders to end the weaponization of the federal government and to create a task force to end anti-Christian bias.  But the first executive order pertained to the Department of Justice, not the defendant, and the second did not mention the defendant at all.  Finally, the defendant's allegations concerning statements made by various Congressional leaders, Doc. 49-1 at 9, 12-13, have no bearing on a claim of vindictive prosecution.

exercise of rights followed by augmentation of charges." *Id*. at 1320. Faced with these hurdles it cannot meet as a matter of law, the defendant's claim of a presumption of vindictiveness collapses.

>    **A.    Circuit precedent has not specifically held that a presumption of vindictiveness can occur in a pre-trial setting.**

The defendant concedes that the Eleventh Circuit has not specifically ruled that presumptive vindictiveness is applicable to a prosecutor's *pretrial* charging decision.  Doc. at 22. That is so because, in that context, the presence of a motive to punish "does not provide an adequate basis" for distinguishing legitimate from impermissible government action because "[m]otives are complex and difficult to prove."  *Goodwin*, 457 U.S. at 373.  Given "the severity of such a presumption," which "may block a legitimate response to criminal conduct," it is applied "only in cases in which a reasonable likelihood of vindictiveness exists."  *Id*.

For this reason, the Supreme Court has never held that presumptive vindictiveness can be applied in a pretrial setting. The Court has cautioned against "adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting" because, in contrast to a completed trial, "[a]t this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized."  *Id*. at 381 (noting that in the pretrial setting, "the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.").

The Eleventh Circuit followed suit.  "The *Goodwin* decision reaffirmed the prosecutorial discretion recognized in *Bordenkircher*, supra, and functioned to remove the affirmative defense of vindictive prosecution in 'pre-trial skirmishes between defense counsel and prosecution.'" *Mays*, 738 F.2d at 1190 (citations omitted).  In *Barner*, the Eleventh Circuit reversed a district court's dismissal of a fifth superseding indictment based on a presumption of prosecutorial vindictiveness. 441 F. 3d at 1321-22.  In *Barner*, the court noted that it had "neither adopted nor rejected a per se rule that the presumption of vindictiveness cannot apply in a pre-trial setting." *Id*. at 1318.  But the court found it unnecessary to decide "whether the presumption can ever arise in

a pre-trial setting" because the facts alleged by the defendant in that case did not rise to a "realistic likelihood of vindictiveness." *Id*.

Other district courts in this circuit addressing the applicability of a presumption of vindictiveness in the pretrial setting have followed this same path by noting the absence of a rule, but determining that even if such a rule applied, the facts alleged did not create a reasonable likelihood of vindictiveness. *See Coleman*, 382 F. Supp. 3d at 1265 (noting *Barner* but finding claim of vindictive prosecution meritless because defendant did not come forward with factual allegations to show a realistic likelihood of vindictiveness); *Brown*, 862 F. Supp. 2d at 1289 (noting that there is "no automatic presumption of vindictiveness," in the pretrial context, and holding that the Government was not required to come forward with an explanation for actions because defendant failed to allege sufficient facts to show a reasonable likelihood of vindictiveness).

Given the open question of whether presumptive vindictiveness "can *ever* arise in the pretrial—much less precharge—context," *Brown*, 862 F.Supp.2d at 1289 (emphasis in original), the defendant has failed to establish that a presumption of vindictiveness applies here. This Court should deny the defendant's motion on this point without further inquiry. Just as in *Barner*, even assuming that certain factual allegations "could justify a presumption in a pre-trial setting," 441 F.3d at 1318, as detailed below, on the face of its motion, the defendant has failed to establish a presumption of vindictiveness because it failed to make the requisite threshold showing necessary to raise a realistic likelihood of vindictiveness.

> **B.**     **Even if a presumption of vindictiveness can occur in a pre-trial setting, the defendant's motion should be denied because it has failed to allege facts that show a realistic likelihood of vindictiveness.**

Even if this Court considers presumptive vindictiveness at this stage, the defendant has failed to allege facts that would entitle him to such a presumption here, much less discovery or an evidentiary hearing. To determine whether a presumption of vindictiveness should be considered, courts must evaluate the "realistic likelihood of vindictiveness" based on the particular factual

circumstances of a case. *Barner*, 441 F.3d at 1317. This showing requires that the defendant demonstrate two things: (1) that its exercise of pre-trial rights was followed by charges of increased severity, *id*. at 1318-19, and (2) that other factors raise a realistic likelihood of vindictiveness. *Id*. at 1320. If a defendant makes these threshold showings establishing that the application of a presumption of vindictiveness is justified, "it may be rebutted by objective evidence justifying the prosecutor's action." *Id*. at 1317, n 6; *see also United States v. Jones*, 601 F.3d 1247, 1260 (11th Cir. 2010) (noting that after a defendant establishes that a presumption of vindictive prosecution applies, the government may rebut the presumption by establishing the reasons for the added charges).

As shown below, on the face of the motion, the defendant has failed to make this threshold showing. Thus, because it has failed to present facts that raise a realistic likelihood of vindictiveness, the motion to dismiss should be denied without the need for further discovery, fact-finding, or rebuttal.

> **1.      The defendant failed to make the threshold showing that it exercised a protected legal right that was followed by charges of increased severity.**

The defendant cannot make this threshold showing. As noted above, the fundamental flaw in the defendant's motion to dismiss—the failure to show that it exercised a recognized, specific law right—further confirms that a presumption of vindictive prosecution is inapplicable in this case. The defendant's allegations are limited to general instances where it made critical comments about the Administration in the public sphere, without tying this general exercise of its First Amendment right to a specific instance or legal proceeding, nor to any of the crimes alleged in the indictment. This nebulous assertion of the First Amendment is not the kind of "protected right" that has been recognized in the context of a claim of vindictive prosecution. The defendant's failure in this regard not only dooms the premise of his entire motion, but also specifically demonstrates that this is not a case where a presumption of vindictiveness applies.

The Eleventh Circuit has recognized that certain rights may not actually qualify as a "protected right" concerning a claim of vindictive prosecution. *Barner*, 441 F. 3d at 1316. Unlike the exercise of a protected right like the right to appeal post-trial, the Eleventh Circuit, in detailing the reasons the presumption does not generally apply in the pretrial setting, found that "before trial the defendant may not have actually exercised a protected right." *Id.* For support, the Eleventh Circuit looked to *Bordenkircher*, in which the Supreme Court held that a prosecutor's action in obtaining a superseding indictment which added a new criminal charge after the defendant did not agree to plead guilty to the original charge was not "punishment or retaliation." *Id.*, citing *Bordenkircher*, 434 U.S. at 363. Thus, no presumption of vindictiveness attached at the plea-bargaining process "so long as the accused [was] free to accept or reject the prosecution's offer." *Id.*(citing *Bordenkircher*, 434 U.S. at 363).

If such an important component of a criminal legal proceeding such as the plea bargaining process did not rise to the level of a "protected right," then certainly a generalized assertion of First Amendment speech, wholly outside of a legal proceeding and unrelated both in timing and in factual content to the charged offenses, falls well short. And even if this precedent could be stretched to consider the defendant's general First Amendment claim as a "protected right" in this context, the defendant's motion still fails. Following the reasoning of *Bordenkircher* and *Barner*, "so long as the [defendant] was free" to continue exercising its First Amendment rights (which it has), a subsequent indictment does not create a presumption of vindictiveness. *Bordenkircher*, 434 U.S. at 363; *Barner*, 441 F. 3d at 1316.

The defendant cannot show a presumption of vindictiveness for an additional reason. The Supreme Court has limited the application of the doctrine of presumptive vindictiveness to situations where a prosecutor has "upp[ed] the ante." *Goodwin*, 457 U.S. at 376. The Court explained that it had applied this rare application of the presumption in a context where a defendant had exercised his absolute right to appeal a misdemeanor conviction, and after the exercise of this right, the prosecutor obtained a felony indictment. *Id.*, citing *Blackledge*, 417 U.S. at 27. The

16

Court noted that such a situation "involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted." *Goodwin*, 457 U.S. at 376.

Here, the Government has not "upped the ante" against the defendant. The defendant has not exercised a specific legal, procedural right. Nor has the Government punished the defendant in a manner to "insure that only the most hardy defendants will brave the hazards" of asserting their First Amendment rights. *Id*. The defendant continues to exercise its First Amendment privileges.

The defendant's exercise of that First Amendment right was never relevant to the criminal charges in the indictment. Rather, a grand jury returned an indictment against the defendant because the facts showed probable cause to believe that financial crimes and fraud were committed. Thus, a presumption of vindictiveness does not apply to this case.

### 2. The defendant has failed to make a showing that there are other factors that raise a realistic likelihood of vindictiveness.

The defendant also failed to "identify other factors that would raise a realistic likelihood of vindictiveness." *Barner*, 441 F.3d at 1320. The defendant contends that its case involves "unique circumstances," but it offers nothing but generalities and speculation. Doc. 49-1 at 29.

For example, the defendant contends that the fact that it was publicly reported that an investigation into its activities was opened in 2019 or 2020, closed without a criminal charge, and then an indictment was later returned in 2026 is a significant factor. Doc. 49-1 at 31. But these allegations do nothing to support the argument that a presumption should apply. Even assuming those allegations are true, the fact that a decision was made in the past to close a case based on the evidence available at the time, without more, does not support the application of a presumption. The reasons the Supreme Court discussed in *Goodwin* cautioning against applying the presumption in a pretrial setting apply equally here, namely that "the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance" or "the prosecutor's assessment of

17

the proper extent of prosecution may not have crystallized." 457 U.S. at 381. Criminal investigations are closed and reopened for many reasons.[7] As *Goodwin* shows, these reasons are perfectly legitimate. Indeed, several counts in the indictment allege that the defendant committed fraudulent acts in 2023, *after* the defendant says the criminal investigation was initially closed, which demonstrates both the legitimacy of the charges and the lack of a basis for the presumption to apply.

Moreover, presidential administrations identify areas in the criminal justice arena that they want to focus on and improve. An administration then directs resources and enacts policies to target these priorities.[8] The current Administration, in addition to focusing on priorities like combatting violent crime and transnational criminal organizations, publicly and aggressively prioritizes stamping out fraud.[9] Thus, the Government's limited resources are focused on fraud prosecutions.

There is nothing unusual, untoward, nefarious, or vindictive about re-examining closed criminal investigations that now fall within administrative priorities, particularly, as is allegedly the case here, when criminal conduct continued to occur after the initial investigation closed. This was originally a fraud investigation. Fraud prosecutions became a renewed priority of this administration, and the statute of limitations has not run on these alleged fraud offenses.

---

[7] For example, some investigations are closed based on decisions related to the allocation of limited resources. Some are closed for other logistical reasons like the issues that arose during the COVID pandemic. This is not uncommon for many federal cases, particularly in non-violent white-collar cases, and especially in smaller districts like the Middle District of Alabama.

[8] *See e.g.* Memorandum from Merrick B. Garland, Att'y Gen., to All Fed. Prosecutors, General Department Policies Regarding Charging, Pleas, and Sentencing 1 (Dec. 16, 2022), https://www.justice.gov/d9/2022-12/attorney_general_memorandum_-_additional_department_policies_regarding_charges_pleas_and_sentencing_in_drug_cases.pdf

[9] *See* Fact Sheet, White House, President Donald J. Trump Establishes New Department of Justice Division for National Fraud Enforcement (Jan. 8, 2026), https://www.whitehouse.gov/fact-sheets/2026/01/fact-sheet-president-donald-j-trump-establishes-new-department-of-justice-division-for-national-fraud-enforcement/.

The defendant also asserts that "the indictment was brought after the clear instigation by President Trump's statements," Doc. 49-1 at 31, but it fails to point to any specific statements to back up this speculation. The fact that Administration officials, in response to the indictment being returned, discussed the criminal charges against the defendant in the media and expressed criticism, Doc. 49-1 at 27, "without some further evidence of causation," do not support a presumption of vindictive motivation. *Barner*, 441 F.3d at 1321.

Finally, the defendant cannot demonstrate unique factors that raise a realistic likelihood of vindictiveness because the circumstances actually show that this case proceeded in manner not unlike any other case under which the broad discretion afforded to prosecutorial decisions applies. That fact that a case has garnered media attention does not mean that unique circumstances are in play. The Government presented an impartial grand jury with evidence of financial crimes. Many of the core facts alleged in the superseding indictment are not in dispute. In a video released by the defendant to the media hours before the original indictment was even presented to the grand jury, Chairman Bryan Fair admitted the defendant utilized paid "informants" in the past. *See* https://www.splcenter.org/beacon-hope-55-years/ (last visited June 12, 2026). Importantly, Chairman Fair also admitted that the defendant "did not, however, share our use of informants broadly," *see id.*, which is at the heart of the wire fraud charges against the defendant.

The defendant also is unlikely to contest that its employees created and then utilized a series of fictitious entities to funnel donors' money through multiple bank accounts to the leaders of violent extremist organizations. As alleged in the superseding indictment, prior executive leadership for the defendant already admitted this, in writing, to Bank-1 following that bank's independent investigation unrelated to this criminal case. *See* Doc. 51. At trial, the defendant will likely dispute why it paid leaders of violent extremist groups with donors' money, why it did not disclose to donors that this is how their money was being used, and why the defendant's employees created an elaborate scheme involving numerous fictitious entities to obfuscate these payments. However, the fact this all occurred—for whatever reason—is seemingly not in dispute.

19

The defendant's claim that its prosecution for these financial fraud offenses is actually a disguised attack on its current First Amendment activity should be viewed for exactly what those arguments are—attempts to distract, deflect, and to win over the media and public before trial. This case is about how the defendant solicited money between 2010 and 2023, what was disclosed to donors, what was disclosed to banks, and how financial transactions were deliberately hidden from the public. This case is not about critical statements the defendant made about the Administration in 2025 and 2026. Since the defendant has failed to make a threshold showing and failed to identify factors that would support a realistic likelihood of vindictiveness, the presumption does not apply in this case and the motion to dismiss should be denied.

**IV.    The defendant is not entitled to discovery or an evidentiary hearing.**

The defendant has failed to establish that it is entitled to either discovery or an evidentiary hearing. There is no absolute right to discovery or a hearing for a defendant asserting a claim of vindictive prosecution, nor has the defendant cited any controlling authority suggesting otherwise. The defendant is not entitled to discovery or further proceedings where it has failed to clear so many hurdles, namely, by failing to allege a specific, recognized legal right that it exercised, failing to present objective evidence suggesting actual vindictiveness, failing to establish that presumptive vindictiveness is even applicable in this pretrial procedural context, and failing to show that, even if the presumption could be applied, there is a sufficient threshold showing of a realistic likelihood of vindictiveness.

If the defendant had made these threshold showings establishing that the application of a presumption of vindictiveness was justified in this case, as noted above, the Government would have had the opportunity to rebut such a presumption with "objective evidence justifying the prosecutor's action." *Barner*, 441 F.3d. at 1317, n6; *Jones*, 601 F.3d at 1260. But, critically, there is nothing for the Government to rebut here because the defendant failed to make these threshold showings. Nor does this Court need to engage in collateral discovery on this issue where the defendant's allegations fall so short.

Based on the defendant's failure to make a threshold showing, this Court should deny the motion to dismiss outright.  To the extent that this Court determines that a hearing is necessary, such a hearing should be limited to determining, as a legal matter, whether the defendant has met the threshold issues detailed above.  Should the Court determine that the defendant has met these threshold burdens, then this Court could consider whether an evidentiary hearing is necessary for the Government to have an opportunity to rebut with objective evidence.  Similarly, only at that point, would this Court need to determine what discovery, if any, would be necessary.  It would be at this point that the Government would have the opportunity to assert various privileges to any potential discovery, which would include, but not be limited to, executive privilege (including its various component parts[10]), which "safeguards the public interest in candid, confidential deliberations within the Executive Branch" and is "fundamental to the operation of Government." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 864 (2020) (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)).  But this Court need not wade into these waters now, or at all, because, as noted above, the defendant's motion is facially meritless.

In its motion, the defendant supports its claim for discovery by citing district court cases from other circuits where discovery was ordered in relation to a claim of vindictive prosecutions. Those cases are inapposite.  *See* Doc. 49-1 at 33-37, citing *Abrego Garcia*, 2026 WL 1454303, at *1 and *United States v. Petrova*, No. 25-10272-LTS, 2026 WL 892470, at *1 (D. Mass. Apr. 1, 2026).  The fact that discovery was ordered in other readily factually distinguishable cases does not establish that the defendant is entitled to discovery here.

*Abrego Garcia* is wholly distinguishable.  The district court in that case found that the defendant had made a threshold showing of presumptive vindictiveness by alleging that the indictment returned against him retaliated against him for exercising his right to file a lawsuit and

---

[10] Recognized components of executive privilege include national security and foreign affairs, law enforcement, deliberative process, attorney-client communications, work product, and presidential communications.

obtaining an injunction against his removal from the country. *United States v. Abrego*, 802 F. Supp. 3d 1055, 1062-64 (M.D. Tenn. 2025).

*Petrova* is likewise distinguishable. That case involved facts not present here. There, the district court granted discovery because it determined that the defendant had come forward with some objective evidence of prosecutorial vindictiveness, namely that the government indicted the defendant in response to the fact that she had filed a habeas petition and complaint challenging the cancelation of her visa and the efforts to deport her. 2026 WL 892470, at *4.

The facts in *Abrego Garcia* and *Petrova* are nothing like the facts present in the defendant's case. In both cases, the respective defendants took *specific legal actions* that *immediately preceded* the indictments in each case, which resulted in making the threshold showing necessary for discovery in those cases. Rather than help the defendant in this case, a careful review of *Abrego Garica* and *Petrova* actually highlights the inadequacy of the defendant's motion by focusing the spotlight on the defendant's failure to assert a specific legal right and to make a sufficient showing that would warrant discovery.

Finally, the defendant recognizes that the Eleventh Circuit has not set out a standard for discovery in the context of a claim of prosecutorial vindictiveness. Doc. 49-1 at 33. Nevertheless, the defendant urges this Court to apply the discovery standard for selective prosecution claims in this context. Doc. 49-1 at 34. That is a distinction without a difference. This Court need not determine what discovery standard applies in this context because—under any standard—the defendant is not entitled to discovery when it has not made a threshold showing of, nor has it produced some evidence tending to show, a vindictive prosecution.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court deny the

defendant's motion to dismiss for vindictive prosecution without an evidentiary hearing.

Respectfully submitted this 12th day of June 2026.

THOMAS GOVAN
United States Attorney

/s/ Kevin P. Davidson
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Tel: (334) 223-7280
Fax: (334) 223-7135
E-mail: kevin.p.davidson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cr-00139-ECM |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2026, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to all attorneys of

record.

Respectfully submitted,

/s/ Kevin P. Davidson
Kevin P. Davidson
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: kevin.p.davidson@usdoj.gov