IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:26-CR-139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, | ) | |
| INC. | ) | |

## **ORDER**

Before the Court is Defendant Southern Poverty Law Center, Inc.'s (SPLC) Motion

to Disclose Transcript of Grand Jury Proceedings (Doc. 22, and reply, Doc. 37), which the

Government opposes (Doc. 29). Upon consideration of the motion (Doc. 22), it is

ORDERED that the motion is DENIED.

### **I.     BACKGROUND**

On April 21, 2026, the grand jury returned an indictment against SPLC charging it

with Wire Fraud (Counts 1–6), False Statements to a Federally Insured Bank (Counts 7–

10), and Conspiracy to Commit Concealment Money Laundering (Count 11).

On April 28, 2026, SPLC filed the pending motion. In seeking disclosure of the

grand jury materials, SPLC relies on Rule 6(e)(3)(E)(ii), Fed. R. Crim. P., which provides

an exception to grand jury secrecy where grounds "may exist to dismiss the indictment

because of a matter that occurred before the grand jury." SPLC argues that disclosure is

necessary to determine if the grand jury's probable cause determination was based on

inaccurate or misleading representations. Doc. 22 at 12. SPLC relies heavily on public

remarks by Government officials to support its argument that "[t]he risk that . . . falsities

made their way into the grand jury room rises beyond the level of speculation." Doc. 22 at 13.[1]

In opposition, the Government argues that SPLC has not carried its burden to show the requisite need to breach secrecy of grand jury materials. Doc. 29. The Government also argues SPLC's request is too broad. *Id*. at 7–8.

## II.   APPLICABLE LEGAL STANDARD

Grand jury proceedings are constitutionally prescribed. The process was thought so important to the administration of justice that it was included in the Bill of Rights enshrined in the Fifth Amendment. U.S. CONST. AMEND. V. The grand jury's job is a simple, yet broadly informed task: investigate and determine if there is probable cause to believe the accused committed a crime. *See United States v. Sells Eng'g, Inc*., 463 U.S. 418, 423, 103 S. Ct. 3133, 3137 (1983) (stating the grand jury has the "dual function of determining if there is probable cause to believe a crime has been committed and of protecting citizens against unfounded criminal prosecutions" and "extraordinary powers of investigation and great responsibility"). Yet, this simple task carries grave import and requires the grand jury to "ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution." *Id.* at 463 U.S. at 424, 103 S. Ct. at 3138. The grand jury is the independent gatekeeper to ensure that criminal prosecutions are supported by a threshold showing

---

[1] Additionally, SPLC argues the indictment has flaws, including missing essential elements, that suggest the prosecutors' instructions to the grand jury may have been improper. Doc. 22 at 14–16. Since the motion was filed, however, a superseding indictment has been issued (Doc. 51), which moots these potential challenges to the original indictment. *See United States v. McKay*, 30 F.3d 1418, 1420 (11th Cir. 1994) ("Filing a superseding indictment has the same effect as dismissing an original indictment and filing a new indictment . . . .").

warranting further testing through a formal criminal prosecution. *See id*; *United States v. Hyder*, 732 F.2d 841, 842–43 (11th Cir. 1984) ("In order to fulfill these functions, the Fifth Amendment's guarantee of the right to indictment by a grand jury necessarily presupposes an investigative body acting independently of either prosecuting attorney or judge.") (quotations and citations omitted).

The basic tenet of grand jury proceedings in federal courts is secrecy. *Pitch v. United States*, 953 F.3d 1226, 1232 (11th Cir. 2020) ("The Supreme Court has long 'recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218, 99 S. Ct. 1667, 1672 (1979) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S. Ct. 983, 986 (1958))). "The long-established policy of upholding the secrecy of the grand jury helps to protect the innocent accused from facing unfounded charges, encourages full and frank testimony on the part of witnesses, and prevents interference with the grand jury's deliberations." *Pitch*, 953 F.3d at 1229 (11th Cir. 2020) (citing *Douglas Oil Co.*, 441 U.S. at 219, 99 S. Ct. at 1673). As the Eleventh Circuit and the United States Supreme Court have recognized, the secrecy that enshrouds the grand jury proceedings is vital:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that

he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id*. at 1232 (quoting *Douglas Oil*, 441 U.S. at 219, 99 S. Ct. at 1673 n.10 (alteration in original) (quoting *Procter & Gamble*, 356 U.S. at 681–82, 78 S. Ct. at 986 n.6)).

Authority to breach the general rule of secrecy of grand jury proceedings is limited to specific circumstances set forth in Rule 6(e) of the Federal Rules of Criminal Procedure, which codifies the grand jury secrecy rule. "Rule 6(e) provides an exhaustive list of detailed circumstances in which a district court may authorize disclosure [of grand jury proceedings]." *Pitch*, 953 F.3d at 1234. In addition to other grounds, the court has authority to authorize grand jury material be disclosed "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Fed. R. Crim. P. 6(e)(3)(E)(ii).

Granting or denying a request for grand jury transcripts is a matter over which the district court has "substantial discretion." *United States v. Aisenberg*, 358 F.3d 1327, 1349 (11th Cir. 2004)[2] (citing *Douglas Oil Co.,* 441 U.S. at 223, 99 S. Ct. at 1675; *see also Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S. Ct. 1237, 1240 (1959); *United Kingdom v. United States,* 238 F.3d 1312, 1320 (11th Cir. 2001); *Coronado v. BankAtlantic Bancorp, Inc.,* 222 F.3d 1315, 1322 (11th Cir. 2000)).

The guidelines for determining when grand jury secrecy may be broken are well settled . . . . Specifically, parties seeking disclosure must show:

---

[2] *Id*. at 1350 (holding the Aisenbergs failed to carry their burden "whether relying on the court's inherent authority or Rule 6(e)(3)(C)(i)(I)") *but see Pitch*, 953 F.3d at 1229 (holding "district courts do not possess inherent, supervisory power to authorize the disclosure of grand jury records outside of Rule 6(e)(3)'s enumerated exceptions.").

(1) "that the material they seek is needed to avoid a possible injustice in another judicial proceeding";

(2) "that the need for disclosure is greater than the need for continued secrecy"; and

(3) "that their request is structured to cover only material so needed."

*Aisenberg*, 358 F.3d at 1347–48 (quoting *Douglas Oil Co.*, 441 U.S. at 222, 99 S. Ct. at 1674; citing *United Kingdom*, 238 F.3d at 1320–21 (11th Cir. 2001); *United States v. Burke*, 856 F.2d 1492, 1495–96 (11th Cir. 1988); *United States v. Elliott*, 849 F.2d 554, 557 (11th Cir. 1988); *Appeal of Hastings*, 735 F.2d 1261, 1273 (11th Cir. 1984)).

The burden to satisfy a basis under Rule 6 for disclosure rests on the requesting party to establish the need for disclosure outweighs the need for and public interest in secrecy of the grand jury. *Aisenberg*, 358 F.3d at 1348. That burden is carried by demonstrating the existence of a "particularized need" that outweighs the policy of secrecy. *Pittsburgh Plate Glass Co*, 360 U.S. at 400, 79 S. Ct. at 1241 ("The burden . . . is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy."); *Procter & Gamble Co.*, 356 U.S. at 682, 78 S. Ct.  986 (stating that the "'indispensable secrecy of grand jury proceedings' must not be broken except where there is a compelling necessity," and that instances where the need outweighs the countervailing policy must "be shown with particularity") (internal citation omitted); *Sells Eng'g, Inc.*, 463 U.S. at 443, 103 S. Ct. at 3148 ("We have consistently construed [Rule 6(e)(3)] to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted").

5

## III.   DISCUSSION

The question before the Court tests the time-honored tradition and policy of protecting the integrity of the grand jury process by upholding the secrecy of its proceedings.

### A.   SPLC has not shown particularized need for grand jury material.

SPLC relies on the exception under Rule 6(e)(3)(E)(ii) for disclosure when a ground for dismissal may exist because of what occurred before the grand jury, arguing the risk prosecutors engaged in misconduct or misled the jury supports disclosure. Nevertheless, "[a] petitioner is not entitled to the release of grand jury materials simply because [the] request falls within a limited exception to grand jury secrecy." *Pitch*, 953 F.3d at 1238. The court "must still exercise 'substantial discretion' to weigh 'the extent of the need for continuing grand jury secrecy[.]'" *Id*. (quoting *Douglas Oil*, 441 U.S. at 223–24, 99 S. Ct. at 1675). To establish a need for grand jury material to avoid possible injustice requires more than speculation. *United States v. Quinto*, 264 Fed. App'x 800, 802–03 (11th Cir. 2008)[3] ("Unsubstantiated allegations do not satisfy the 'particularized need' standard.'" (quoting *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985))). The need must be rooted in a specific difficulty particular to the case. *Id*. SPLC's arguments are not so rooted.

### 1.   Statements by Government officials

As evidence indicative of the risk of prosecutorial misconduct, SPLC references post-indictment media statements by the President of the United States and a statement by

---

[3] Here, and elsewhere in this Order, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

FBI Director Kash Patel during a television appearance.[4] The thrust of its argument, however, focuses on a statement by Acting Attorney General Todd Blanche on April 21, 2026, after the indictment was returned. In the statement, the Acting Attorney General stated, "[T]here's no allegation or information in the indictment that suggests [SPLC] shared that [informant] information with law enforcement." *See* Doc. 22 at 8.[5] The Acting Attorney General has since walked back this statement, acknowledging, "It is true that over the years they have selectively shared information with law enforcement. That's well-documented and there's no dispute there. They aren't charged with any of that conduct." Doc. 27-1.

SPLC also argues the indictment's language about the Unite the Right rally demonstrates that the grand jury may have been misled. Doc. 22 at 7–9, 13–14. SPLC takes issue with statements in the indictment related to the Unite the Right rally in Charlottesville, Virginia in August 2017 and the omission of SPLC's cooperation with law enforcement about that event.[6] SPLC argues that it provided law enforcement with an Event

---

[4] SPLC cites President Trump saying, "'[S]outhern law, whatever it is, has given money to KKK, they're supposed to protect people and they're paying all these people, crooked as can be millions of dollars, millions of dollars going all, to all these people that they're supposed to be protecting from[,]'" and "'The Southern Poverty Law Center, one of the greatest political scams in American History, has been charged with FRAUD[.]'" Doc. 22 at 9–10. SPLC also cites the FBI Director saying that, "'[SPLC] turned around and paid the leaders of these very extremist groups' and used donor funds 'to sow discord and hate.'" *Id.* at 9 (citations omitted).

[5] (citing Fox News (Apr. 21, 2026), 03:47–04:03, https://www.foxnews.com/media/acting-ag-todd-blanche-says-splc-fraud-indictment-not-politically-motivated-calls-conduct-egregious).

[6] The superseding indictment includes similar language about this event. *Compare* Doc. 1 at 1 ("The SPLC also had a field source who was a member of the online leadership chat group that planned the 2017 'Unite the Right' event in Charlottesville, Virginia"); and Doc. 1 ¶ at 11(a) ("F-37 was a member of the online leadership chat group that planned the 2017 'Unite the Right' event in Charlottesville, Virginia and attended the event at the direction of the SPLC. F-37 made racist postings under the supervision of the SPLC and helped coordinate transportation to the event for several attendees.") *with* Doc. 51 at 1 ("The SPLC also had a field source who was a member of the online leadership chat group that planned the 2017 'Unite the

Alert warning the FBI and providing identifying information about individuals who were likely to attend and instigate violence during the event. Doc. 22 at 8–9.

Together, SPLC argues the post-indictment media statements and factual characterizations create more than speculation that there was prosecutorial misconduct before the grand jury. Yet, the record does not reflect with *particularity* any reason to believe the prosecutors in the Middle District of Alabama presenting the case to the grand jury engaged in any of the "irregularity, politicization" or "repeated, false, and prejudicial remarks" (Doc. 22 at 9–10) SPLC argues Administration officials have engaged in on national media platforms. There is also nothing in the record that suggests the prosecutors knowingly presented false factual testimony to the grand jury.

Here, the public record of media comments by people who were not present during the presentation of the case fails to carry the burden to establish a particularized need. Additionally, SPLC's disagreement with the facts alleged in the charging document likewise does not result in a conclusion beyond conjecture that the prosecutors knowingly presented false testimony to the grand jury or engaged in other misconduct before the grand jury. Instead, assuming the fact is relevant (e.g., that SPLC shared information about the Unite the Right event with law enforcement), it may be a matter for a factfinder (i.e., the

Right' event in Charlottesville, Virginia. That field source made racist postings under the supervision of the SPLC and helped coordinate transportation to the event for several attendees."); and Doc. 51 ¶¶ 18(e)(ii)–(iii) ("While receiving payment by the SPLC, F-37 made multiple racist posts on social media accounts under the supervision of SPLC Employee-3. . . . In 2017, F-37 was a member of the online leadership chat group that helped plan the 'Unite the Right' rally in Charlottesville, Virginia. SPLC Employee-3 directed F-37 to attend this event in which one woman and two law enforcement officers were tragically killed. F-37 assisted in arranging transportation for others involved in the movement to the event."). Because the superseding indictment includes similar factual allegations about this event, the undersigned evaluates SPLC's argument despite it being raised as a challenge to the now superseded indictment.

8

jury) to ferret out and determine its weight. This dispute over how the facts are characterized in the media or in the indictment does not indicate prosecutorial misconduct before the grand jury, and it is not a dispute the Court must settle to decide whether grand jury testimony should be divulged to avoid possible injustice. SPLC fails to show a particularized need for disclosure.

### 2.  Alleged flaws in the indictment

SPLC's argument that flaws in the original indictment suggest the prosecutor misled the grand jury as to the law also fails to show particularized need. As noted, the indictment has been superseded. Any flaws in the indictment are now moot.

Moreover, SPLC has filed a motion to dismiss (Doc. 49) since filing the motion for grand jury materials, which highlights that grand jury material is not necessary to move for dismissal. *See Aisenberg*, 358 F.3d at 1350–51 (noting, "[T]he Aisenbergs have not shown a compelling and particularized need for any portions of the grand jury transcripts . . . . [T]he Aisenbergs already have a wealth of evidence about the government's conduct. Indeed, . . . this evidence apparently led even the government to move to dismiss the indictment[.]"). SPLC seeks dismissal on grounds of vindictive prosecution based primarily on matters leading to the pursuit of an indictment and on media statements by the President of the United States and Administration officials.  *See* Doc. 49-1. The motion to dismiss is not based on what was presented to the grand jurors.

Thus, SPLC's speculation about prosecutorial misstatements in instructing the grand jury on the law for the original indictment cannot, on this record, demonstrate a basis to pierce the grand jury's secrecy. *See United States v. Mata*, 2007 WL 9725023, at * 3

(S.D. Fla. June 22, 2007) (denying request for grand jury transcripts where defendant alleged the government "placed their own 'spin' on the legality of his conduct").

Finally, SPLC relies on *United States v. Comey*, 809 F. Supp. 3d. 396 (E.D. Va. 2025) to argue for disclosure, but *Comey* presented facts unlike the case now before the Court. In *Comey*, the record established a slew of factual findings of possible prosecutorial misconduct. The grand jury disclosure was first ordered because of a dispute over a filter protocol to govern documents that were potentially privileged. Those documents, which the government sought to use in 2025, were seized in 2019 and 2020 pursuant to warrants in a different district and different investigation. *Id*. at 401. The defense argued the documents the government wanted to review and use were improperly retained after the conclusion of the earlier investigation, improperly used in the current one, and that the government (including the lead agent) had already accessed potentially privileged communications. *Id*. at 401. Following a hearing before the magistrate judge, the court ordered disclosure of, among other things, the grand jury materials. *Id*. at 401–02. After the government appealed the magistrate judge's order, the court held another hearing, and at the government's request, reviewed the grand jury materials *in camera*. *Id*. at 402. Based on that record, the court made particularized findings as to the prospect that government misconduct may have tainted the grand jury proceedings, which warranted the "extraordinary remedy" of disclosure. *Id*. at 401.

There, the record established, among other things, that the government seized information from Comey's lawyer pursuant to warrants in a different investigation, and the government failed to include Comey in the process to identify attorney-client privileged

information. *Id*. at 403–405. The government also used the information beyond the scope of the original warrants, including its 2025 search of the data, without regard to attorney-client privilege and without a new warrant. *Id*. at 405–407. Despite knowledge that the information may include attorney-client privileged information, the government allowed an FBI agent, who was exposed to the privileged information, to testify before the grand jury thereby allowing "privileged materials . . . to shape the government's presentation . . . and improperly inform the grand jury's deliberations." *Id*. at 408–09. Only after making full use of the information did the government seek court approval of an attorney-client filter protocol. *Id*. at 408. The *in camera* review revealed two statements by the prosecutor that may be fundamental misstatements of the law, including as to Comey's Fifth Amendment right not to testify at trial. *Id*. at 409. There were also two inconsistent signed indictments from the grand jury, and the prosecutor's timeline seeking to explain the discrepancy was unsatisfactory. *Id*. at 409–10. In all, the court made 11 findings demonstrating procedural and substantive irregularities supporting a particularized need. *Id*. at 412–13.

SPLC's reliance on *Comey* to argue for grand jury disclosure based on prosecutorial misconduct is misplaced. The facts now before the Court are not like the findings in *Comey*. The record here establishes media comments, whether false, misinformed, or misguided, were made by Government officials who were not presenting the case to the grand jury, speculation that the prosecutors made similar statements to the grand jury, and conjecture about the instructions the grand jury received as to the now moot indictment. Without something in the record supporting more than speculation of misconduct by the prosecutors

before the Middle District of Alabama grand jury, there is no basis here to order the extraordinary remedy of destroying the grand jury secrecy.[7] SPLC has failed to carry its burden to show "'circumstances had created certain difficulties peculiar to this case, which could be alleviated by access to specific grand jury materials . . . .'" *Aisenberg*, 358 F.3d at 1348–49 (emphasis omitted) (citing *Elliott*, 849 F.2d at 558 (quoting *United States v. Liuzzo*, 739 F.2d 541, 545 (11th Cir. 1984))).

>    **B.    SPLC has not shown a particularized need for disclosure that outweighs the need for continued secrecy.**

"The burden of demonstrating that the need for disclosure outweighs the need for, and public interest in, secrecy rests upon the . . . party seeking disclosure." *Aisenberg*, 358 F.3d at 1348. Because the Court finds no particularized need for the material to avoid

---

[7] The Court acknowledges SPLC's request that the Court undertake an *in camera* review of the grand jury materials. The record here does not warrant such a review at this time. *See United States v. Roemmele*, 646 F. App'x 819, 822 (11th Cir. 2016) (per curiam) ("[The Eleventh Circuit has] held that a district court need not undertake *in camera* review where, as here, a defendant fails to show the existence of a factual basis for his claim." (citing *United States v. Rodriguez*, 765 F.2d 1546, 1559 (11th Cir. 1985)); *see also United States v. Ocon*, 26-CR-39-SWS (D. Wyo. May 5, 2026), Doc. 44 (noting the court granted the government's request for *in camera* review of grand jury transcript (Doc. 41) (in response to defendant's motion to dismiss, which was based on an affidavit presenting information from a grand juror regarding the prosecutor's actions during the grand jury proceeding, Doc. 38)).

possible injustice, there is no weight to balance against grand jury secrecy.[8] The grand jury secrecy remains paramount.[9]

### IV.   CONCLUSION

For the foregoing reasons, the Court finds SPLC failed to meet its burden to show a particularized need for grand jury materials. Thus, the motion (Doc. 22) is DENIED.

DONE this 17th day of June, 2026.

KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

---

[8] Similarly, because the Court finds no need for disclosure, it need not address whether the request is structured to cover only that which is needed. The Court notes that in reply SPLC sought to limit its request to the grand jury instructions and prosecutor's statements, arguing that these portions of the grand jury materials are not within its protection of secrecy. Doc. 37 at 9–10. No binding authority was cited for this proposition, and the Court is not aware of any case from or within the Eleventh Circuit that adopts this position. Thus, to the extent SPLC requests this material not as part of its narrowed request for secret grand jury material, but as a stand-alone request for material it argues is not subject to grand jury secrecy, the Court rejects the argument and denies the request.

[9] It is worth noting that this case involves informants whose identities, so far as the Court understands, remain confidential. Grand jury secrecy is necessary to protect past and future grand jury proceedings, and to secure the integrity of the institution. *Aisenberg*, 358 F.3d at 1351–52; *see also Douglas Oil*, 441 U.S. at 219, 99 S. Ct. at 1673 n.10 (grand jury secrecy is necessary "to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes").