IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.<br><br>Defendant. | Case No. 2:26-cr-0139-ECM-KFP-1 |

**THE SOUTHERN POVERTY LAW CENTER'S REPLY
IN SUPPORT OF ITS MOTION TO SHOW CAUSE
REGARDING THE SUPERSEDING INDICTMENT**

**INTRODUCTION**

"All's well that ends well; still the fine's the crown. Whate'er the course, the end is the renown."[1]  That is what the government would like the Court to adopt as a judicial decision to address what happened on June 2 and its aftermath.  However, neither the government's narrow conception of what constitutes harm nor its "better to ask forgiveness than permission" approach in applying the federal rules is consistent with the law.

The government's response to the SPLC's Motion to Show Cause is noteworthy for what it fails to address:

1. It readily admits that a mistake was made and "[c]learly the wrong document was sent to the media," Opp. (ECF 69) at 1, while ignoring that this is the *second* instance of the prosecution caring more about playing to the press than to the Court or to a jury (should the case proceed).  *See* ECF 23 (discussing AAG Blanche's materially false statements made to media following the first indictment, claiming that the SPLC did not coordinate its field program with law enforcement).

2. It attempts to distance itself from its own actions using creative phraseology like, "media members erroneously received the draft document," Opp. at 2, as if it was not DOJ that had erroneously *sent* the

---

[1] WILLIAM SHAKESPEARE, ALL'S WELL THAT ENDS WELL, act 4, sc. 4, l. 39.

1

file to the media (the draft indictment did not just magically appear in reporters' inboxes).

3. It asks the Court to ignore the text of Rule 6(e), which applies to DOJ widely disseminating a draft indictment before the actual true bill document returned was available to the public.

4. And it does not even address the main issue here: why is DOJ engaged in any media campaign about this case at all, let alone one seemingly orchestrated by the highest levels of the Justice Department?

In addition to its attempt to have the Court ignore some of the obvious issues, the government adopts a repeated excuse for its wrongdoing by also asking the Court to adopt a "no harm, no foul" approach. Opp. at 7–8. It adopted the same tack in response to the SPLC's motion raising Mr. Blanche's false statement, relying on his later correction of what he had misstated. The government asserts this "defense" despite the fact that each extrajudicial statement DOJ makes (especially false or premature disclosures) further erodes the presumption of innocence, a risk which might not be measurable until trial.

The government's response is also quick to note that the SPLC makes no allegation that the actual USAO prosecutors leading this case were involved in this "mistake," Opp. at 2, as if that makes permissible what it minimizes as a "regrettable" action, without this being the time for the Court to address that these

improper actions appear to be orchestrated or directed by high-ranking officials at Main Justice.

All told, the government concedes that its conduct "was an error" and that "clearly the wrong document was sent to the media," while asserting no violation of grand jury secrecy and no prejudice to the SPLC.  Opp. at 1.

This position misses Rule 6(e)'s core protection for disclosures that tend to reveal secret aspects of the grand jury's work, including strategy and charging direction.  It also wants to leave unanswered questions that squarely implicate the Court's supervisory authority (none of which the government has addressed): why in the first place any advance, fully-editable Microsoft Word draft indictment was provided to the media prior to public docketing; why changes were made between the draft and returned versions; who authorized and executed the dissemination, and specifically any involvement of the Acting Attorney General; what internal controls failed; exactly what was sent and to whom; whether any other grand jury material was shared; and why the official indictment was not shared with counsel at the same time the media received a draft.

The Court should grant the SPLC's Motion to Show Cause, require the government (including Mr. Blanche and DOJ's Public Affairs Office) to answer these questions and hold an evidentiary hearing, require sworn declarations from

3

both the USAO and DOJ if needed, order the preservation of all relevant communications, and impose appropriate remedial measures as warranted.

## ARGUMENT

I. **Draft Indictments Are Inextricably Intertwined With the Grand Jury Process and Premature Dissemination of a Draft Indictment Violates the Text of Rule 6(e), Particularly Where Any Language Has Been Modified.**

The government attempts to cabin *Judicial Watch* as simply about "whether draft indictments never presented to a grand jury can be withheld following a FOIA request." Opp. at 6. But its own pleading actually confirms the principle underpinning the D.C. District Court's decision and the SPLC's argument: what matters is whether the disclosure tends to reveal secret aspects of the grand jury's work. *Id.* (quoting *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 214 F. Supp. 3d 43, 53 (D.D.C. 2016), *aff'd*, 876 F.3d 346 (D.C. Cir. 2017)). The government recites that in *Judicial Watch* the district court held Rule 6(e) protects information that would reveal "the strategy or direction of the investigation" and similar secret aspects, and it upheld withholding draft indictments on that basis. *Id.* That rationale applies *a fortiori* to DOJ's premature media dissemination of a fully editable, draft charging document not presented to the grand jury and revised before its return.

The government acknowledges and then seeks to minimize that the disseminated draft in Microsoft Word differed from the returned version in at least

4

two paragraphs of the returned true bill document. Opp. at 2. But even seemingly "minor" textual or grammatical differences can reflect deliberative choices, emphasis, or characterization that bear on or may reveal charging strategy, particularly in a scenario as here where the draft was provided precisely for narrative framing to the press. It is not how much a draft has been changed from the final presentment, rather it is whether it was changed *at all*, especially when there was no valid reason in the first place for premature dissemination of any version of the indictment.

The government (in another creative use of the English language) claims that the superseding indictment "was publicly disclosable as soon as it was docketed," Opp. at 7, while simultaneously acknowledging that it was not publicly available at such time. *Id.* Whether or not the superseding indictment was under seal when DOJ disseminated a draft pleading to the press does not change the fact that the *existence* of a superseding indictment was unknown *and unknowable* to the public and to the SPLC at the time of DOJ's dissemination—to say nothing of the USAO's "last-minute" edits the morning before the presentment. Opp. at 2.

Those acknowledgements raise precisely the kind of Rule 6(e) concerns about revealing strategy, direction, and timing that require factual development at a hearing, including the authorization for releasing this draft, the intended recipients of that draft, and the impact on grand jury secrecy and trial fairness caused by

5

disseminating the draft. The fact that the draft charging document was intentionally disseminated to the media by DOJ's own Director of Public Affairs herself and not the result of an unintentional mistake makes this conduct even more concerning, all while keeping the local prosecutor(s) "in the dark" about the release. *Id.* at 2. As such, the government's categorical "no 6(e) violation" assertion is, at best, premature and entirely unsupported on the factual record.

## II.   Prejudice to the SPLC Exists Here Notwithstanding the Government's "No Harm, No Foul" Argument.

The government claims no harm has been done to the SPLC by its "mistaken disclosure" and "error" because the indictment was "accepted and docketed . . . more than three and a half hours *before* the wrong version was sent to the media," the draft was "near-identical," and any PACER unavailability is "unknown" and "legally irrelevant." Opp. at 5, 7. The government maintains the correct version was "publicly disclosable as soon as it was docketed," and asserts unknown reasons for why it was not on PACER when the media received the draft. *Id.* at 7. But public disclosability on paper is not the same as actual availability to the public and press.

Here, the undisputed first narrative to the media came from DOJ's release of the wrong, pre-decisional draft—not from the Clerk's official record. The government admits "media members erroneously received the draft document from DOJ–PAO," *id.* at 2, and at least one media member alerted defense counsel. Where the government prematurely curates the initial storyline with a draft, the resulting

6

one-sided narrative, confusion (to media and the public), and potential taint are manifest, particularly when the defense cannot responsibly correct the record without amplifying the off-record disclosure. Moreover, the fact is that after DOJ released the draft that evening, at least two media stories appeared online—only exacerbating the confusion, taint, and prejudicial effect of DOJ's premature dissemination. Mot. (ECF 53) at 3, n.1. And it does not matter that, in the government's view, the changes may have been "minor grammatical changes" or non-substantive. Opp. at 4.

Whether the differences "had no effect" or resulted in "no prejudice" to the SPLC is the government's convenient characterization. Opp. at 8. Instead, what is revealed by this conduct is that it is the second instance, in this case, in which this Justice Department has put the court of public opinion *ahead of* a court of law. This should be of particular concern to this Court, which has advised that "[t]he integrity of the judicial process is rooted in the obligations of and trust in the attorneys participating in it" and that "[a]ll attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice." ECF 50 at 4 (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546–47 (11th Cir. 1993)).

**III.    The Government's Burden of Proof Argument Fails, and Its Admissions Here Offer the Factual Predicate Warranting That It Must Answer the Questions the SPLC Has Posed.**

The government contends the SPLC bears the burden and has shown "no violation" and "no prejudice," urging summary denial. Opp. at 8. It asserts that the SPLC "failed to make out the *prima facie* case necessary to have an evidentiary hearing" and emphasizes that the "first step" is to determine whether the proffer demonstrates a Rule 6(e)(2) violation. *Id.* (citing *Blalock v. United States*, 844 F.2d 1546, 1551 (11th Cir. 1988)). But the government's *own narrative* establishes that a violation has occurred: dissemination to the media of a draft charging document prepared for grand jury presentment; differences between the draft and returned versions—regardless of the number of paragraphs; the timing of the release that precluded contemporaneous public access to the official charging document; and the involvement of DOJ/USAO personnel subject to Rule 6(e).

The government readily admits (but does not explain why it was appropriate) that DOJ-PAO sent the draft to media so that it could "prepare for potential press inquiries," Opp. at 2, and that it was "clearly the wrong document." *Id.* at 1, 4, 8. The government also concedes that the USAO made last-minute edits before presentment and that the disseminated draft was not the version returned. *Id.* at 2. Those admissions alone satisfy the *prima facie* threshold and necessitate the government further explaining what it did here. Such an inquiry could be achieved

8

efficiently at an evidentiary hearing to determine the truth of the proffer and any appropriate relief. *See Blalock*, 844 F.2d at 1551 (where evidence has been proffered revealing that the government has improperly disclosed grand jury information in violation of Rule 6(e)(2), "the district court must hold an evidentiary hearing to determine the truth of the proffer and the need for relief.").

The government argues the SPLC cannot pass "the first hurdle" because the "mistaken disclosure was of a document *never* before the grand jury," Opp. at 9. But that formalism misreads Rule 6(e)(2). The test is substantive: whether the disclosure would tend to reveal matters occurring before the grand jury. *Blalock*, 844 F.2d at 1551; *see also Judicial Watch*, 214 F. Supp. 3d at 53 ("a draft of a grand jury indictment 'tend[s] to reveal the secret workings of the grand jury.'") (citation omitted). Put simply, the government speaks out of both sides of its mouth: on the one hand, it argues the disseminated draft was "*never* before the grand jury" thus falling way beyond Rule 6(e)'s reach, while simultaneously arguing that a "near-identical" version was presented to the grand jury so no harm resulted to defendant here. Opp. at 1, 9. At a minimum, sworn declarations and documents from both the USAO and DOJ are needed to determine the nexus that *Blalock* contemplates.

The Court should also disregard irrelevant insinuations, which are of no moment here. In a footnote, the government finds irony based on the SPLC's public video on April 21, 2026 regarding the investigation hours before charges were

unveiled against the Center.  Opp. at 5, n.1.  How, when, and why the organization elected to communicate that it was under investigation or the threat of federal charges has no bearing on whether *DOJ officials* violated Rule 6(e) or the Court's supervisory protocols when it released a pre-decisional draft indictment to the media prior to effective public access to the official record.  Nor is the SPLC bound by the same rules of grand jury secrecy and federal prosecution that DOJ prosecutors are bound to follow—as explained in detail in the SPLC's opening motion and incorporated herein, and largely ignored in the government's response.  *See* Mot. at 5–11 (discussing Rule 6(e)'s secrecy limitations on any "matters occurring before the grand jury"; Justice Manual §§ 1-7.000 ("Confidentiality and Media Contacts Policy"), 1-7.600 (prohibiting extrajudicial statements or disclosures); Alabama Rules of Professional Conduct (Preamble), para. 6 and R. 8.4(d) (lawyers may not engage in conduct that is prejudicial to the administration of justice); and 28 C.F.R. §§ 50.2(b)(2) (prohibiting DOJ personnel from "furnish[ing] any statement or information for the purpose of influencing the outcome of a defendant's trial"), 50.2(b)(3) (mandating DOJ "[d]isclosures should include only incontrovertible, factual matters")).  The issues at stake here are the government's dissemination, authorization, controls, and the impact on grand jury secrecy and trial fairness, *not* the SPLC's constitutionally protected right to speak publicly.

10

**CONCLUSION**

The government attempts to reduce Rule 6(e) to a "no violation" and "no harm, no foul" rule, but it confirms the critical facts that warrant this Court's intervention and the need for answers. Dissemination to media of a draft indictment not presented to the grand jury, in editable format, before the public (or defense counsel) had access to the official charging document, as part of a clear strategy to influence the case and impair the SPLC's right to a fair trial, raises substantial Rule 6(e), DOJ regulations and rule prohibition, and supervisory concerns that cannot be resolved on assertions alone from the U.S. Attorney's Office. The Court should require sworn declarations from both the USAO and DOJ that answer the questions their actions have raised, follow up with an evidentiary hearing if warranted after such information is provided, order the preservation of relevant communications, and impose any other remedial measures and sanctions as appropriate and warranted.

Dated: June 22, 2026          Respectfully submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Janelle Geddes (TN Bar No. 035141)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com

11

sara@kmlawfirm.com
janelle@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*

12