IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.<br><br>Defendant. | Case No. 2:26-cr-0139-ECM-KFP-1 |

**THE SOUTHERN POVERTY LAW CENTER'S STATUS UPDATE REGARDING ITS MOTION TO COMPEL THE GOVERNMENT TO PRODUCE EXCULPATORY MATERIAL**

At the November 18, 2026 motions hearing, the Court informed the parties that it had concluded that the SPLC's "request is for material information" and that "there will be an order for production of some material." ECF 212, 11/18/26 Tr. at 53:2-5. The Court noted that the "search needs some more refinement" and gave the parties one week to engage in additional meet and confer efforts. *Id*. at 52:23-24 & 53:3-4.

In the last week, the SPLC tried diligently to obtain information about the search results from the government to "refine" the search by sending a detailed letter and a follow-up email, and having a call with the government. The SPLC's good faith efforts to narrow its requests have been stymied by the government's decision to decline to provide information. Given this circumstance, the primary question for the Court now is whether to require the government to review the results from the searches as originally run. The SPLC requests that the Court order the government to review the results of those searches. In addition, the SPLC requests that the Court order the government to conduct additional searches for three other categories of documents where the government has thus far declined to run any searches.

A proposed order that includes the searches is attached.

## I. The Meet and Confer Process

Two days after the Wednesday, November 18 hearing, the SPLC sent a letter to the government seeking two primary categories of information in an effort to refine the searches that the government had already conducted—the number of "serials" (or documents) returned by each search, and the categories of serials returned by the searches. Exhibit A. The government and defense counsel held a video teleconference on Monday, November 23. The SPLC sent a follow-up email to summarize the discussion the next morning. Exhibit B (government response in yellow). The government advised the SPLC that it would provide some of the information by "early afternoon" on Tuesday, November 24 and then said the SPLC would have the results by the morning of November 25. As of the time of this filing on the afternoon of Wednesday, November 25, the government has not provided the requested information.

## II. Two Preliminary Matters

With respect to Category 1 (information about how the SPLC cooperated with law enforcement and whether law enforcement validated that cooperation by using the SPLC's information) the SPLC suggests a staggered approach. First, within the next 30 days, the government would provide the materials from the searches, which will reveal instances of SPLC cooperation with law enforcement. Then, after reviewing that information alongside the information in the SPLC's records, the SPLC would provide a list of the instances of cooperation for which the SPLC requests information showing whether and how the government used the SPLC's cooperation for its own law enforcement efforts.[1] The government has already declined to

[1] For example, the SPLC would ask for the following information: whether (a) the FBI opened a case number (and the case type, such as civil rights, domestic terrorism); (b) the information resulted in the creation of a serial/document within an FBI case number; (c) there was a criminal information obtained using that information (and the docket number); (d) there was an indictment obtained using that information (and the docket number); (e) the information was used in a search warrant affidavit; (f) there was an asset seizure made using that information; (g) the information was shared with another federal or state law

provide any of the information in this later step that would show how law enforcement used the SPLC's information. Exhibit B (government stated it "decline[s] to provide this information").

During the meet and confer process, the government has repeatedly claimed that it cannot provide information because some of the information is "sensitive" or "confidential." The government has not identified the legal basis for this claim, and the SPLC is not aware of any authority justifying the refusal to provide *Brady* material on those grounds.[2] Of course, "sensitive" and "confidential" information is regularly provided in discovery in criminal and civil cases, and measures exist to prevent the unnecessary dissemination of such material. In the criminal context, Fed. R. Crim. P. 16(d)(1) provides specific authority for regulating discovery to address such issues. To the extent the government has concerns about providing "sensitive" or "confidential" information to the defense, the Court can modify the existing protective order to cover those materials.

## III. Refining the Five Searches Already Conducted by the Government

The SPLC requests that the Court order the government to review the results of the following five searches and produce all material that is favorable to the defense, including impeachment material. This information is related to Category 1 (SPLC cooperation with law enforcement) and Category 2 (SPLC informants working as FBI informants).

> **Search 1**: Keyword search in Sentinel for the time period 1/1/2007 to 12/31/2023 for "Southern Poverty Law Center" or "SPLC."

---

enforcement agency; (h) the information was used to disrupt/stop/prevent any illegal activity; (i) the information was used in an intelligence bulletin, alert, or warning disseminated within the FBI, to other law enforcement, or to the public; or (j) the information was included in an Intelligence Information Report (IIR).

> **Search 2**: Keyword search in Sentinel for the time period 1/1/2007 to 12/31/2023 for each of the names of our informants, including using the "fuzzy search" suggestions.
>
> **Search 3**: Keyword search in Sentinel for the time period 1/1/2007 to 12/31/2023 for the source symbol number and source file number of each person who worked as an SPLC informant.
>
> **Search 4**: Disclose the source files from Delta for the 11 SPLC informants who also worked as FBI informants, including but not limited to producing (a) Quarterly Supervisory Source Reviews, (b) statistical accomplishments by source, (c) requests for payment/responses to requests for payment, and (d) FD-1023s. This would also include any request or authorization for the informant to engage in otherwise illegal activity, receipt of informant payments (including FD-777), accomplishment reports (FD-515 and FD-515a) including any supplemental pages showing "Disruption or Dismantlement of an Organization"; and an investigative accomplishment report (FD-542).
>
> **Search 5**: Keyword search in Sentinel for the time period 1/1/2007 to 12/31/2023 for the names of five SPLC employees who provided information to the FBI, including using the "fuzzy search" suggestions. This search should not be limited by "Southern Poverty Law Center" or "SPLC."

### A. Searches 1, 2, 3, and 5

The SPLC attempted to obtain two categories of information from the government to permit it to refine Searches 1, 2, 3, and 5. ***First***, the SPLC asked for the number of unique "serials" (the term used in Sentinel for a document) returned by the searches already conducted by the government, as opposed to "hits" because a single serial could contain multiple "hits." This information would permit the SPLC and the Court to understand better the true size of the search results and determine whether narrowing is necessary at all.

This information would likely reveal that the existing searches are less overbroad than the government's briefing would suggest. In the process of discovery, the government has already produced over 900,000 documents to the SPLC as well as recordings and audio files totaling over a terabyte of data. Even if the "hit" counts equal the number of serials (which seems unlikely), the government would need to review less than 5% of that number to comply with its obligations under

*Brady v. Maryland*. The SPLC will not repeat its arguments here, but burden on the government is not a justification for the government to avoid complying with its constitutional obligations. *See* ECF 157 at 33–37.

***Second***, the SPLC asked the government to provide a list of the types of serials returned by the searches and the number of serials within each serial type. This was to permit the SPLC to narrow its request to the serials that are most likely to capture information from the SPLC to the FBI about extremist groups. Some of the serial types are standard FBI forms. For example, some of the serial types are:

- Memoranda summarizing interviews of witnesses (FD-302 and FD-302a). Example attached as Exhibit C.
- Communications from confidential human sources (FD-1023). Example attached as Exhibit D.[3]
- Memoranda for recording contacts with informants (FD-209). Example attached as Exhibit E.
- Electronic communications (FD-1057). Example attached as Exhibit F.
- Documentation of information sharing with other law enforcement agencies (FD-999). Example attached as Exhibit G.
- Investigative reports (FD-204). Example attached as Exhibit H.
- Documentation of importing evidence into Sentinel (FD-1036). Example attached as Exhibit I.
- Call summary report (FD-885). Example attached as Exhibit J.

To be clear, the SPLC does not have access to Sentinel and thus does not know all the serial types contained in it. There are hundreds of types of FBI forms. Nonetheless, the SPLC engaged in a good-faith effort to identify the possible serial types to allow it to eliminate other documents, such as media articles or administrative documents. To ensure that it was not missing any

[3] The form FD-1023 simply memorializes the CHS's unvetted allegations provided to law enforcement.

potentially relevant serial types, the SPLC requested that the government provide a complete list of all serial types within each search. The government has access to this information. But the government said it would provide only the number of FD-302s for each search and "1 or 2 more categories"—without identifying the categories—but would not provide the number of FD-1023s or the complete list of serial types in each search.

Because the government has declined to provide available information for the SPLC to refine the current searches, the Court should order the government to (a) review all serials returned in Searches 1, 2, 3, and 5; and (b) produce material that is responsive to the SPLC's requests, including but not limited to all FD-204, FD-209, FD-302/302a, FD-885, FD-999, FD-1023, FD-1036, and FD-1057 forms, including all attachments to the forms.

The government should also run the "fuzzy" search terms for each of the informant's and SPLC employees' names.[4] This effort ensures that a misspelling by an agent does not keep the SPLC from obtaining exculpatory information. The SPLC understands that Sentinel permits Boolean searches and all the alternative spellings can be included in a single search.

**B. Search 4 (Delta records)**

With respect to Search 4, the SPLC requested during the meet and confer that the government provide from Delta certain information about each SPLC informant who was also an FBI informant, such as the dates the informant worked as an FBI informant and the groups the informant infiltrated or about which the informant provided information. Exhibit A at 3. The SPLC also requested that the government provide a list of the types of documents found in the two source

[4] The SPLC has provided a list of "fuzzy" searches to the government already and can provide a copy under seal if it would be helpful to the Court.

files already obtained by the government so that the SPLC could understand better what types of documents are contained in Delta source files and try to narrow the search.[5] *Id*.

The government declined to provide any of this information to the SPLC and thus the SPLC cannot refine the search. This information is material to the SPLC's defense for many reasons including showing that the SPLC's informants had long been providing reliable information to help dismantle extremist groups or that any supposedly illegal acts by the informants may have been done at the government's behest (and not the SPLC's).

### C. Additional Searches Identified in Meet and Confer Letters

The SPLC also sought additional information about several searches that the government had thus far declined to run. The government said it would run two of the searches but has not provided any response.

> **Search 6**. Information about information provided by the SPLC to the FBI about the August 2017 Charlottesville Unite the Right event before and in the days following the event, as identified in its May 13, 2026 letter to the government. ECF 114-1 at § III.F.

During the call on November 23, 2026, the government asked whether the SPLC had specific searches it would suggest. The SPLC did not have any specific search terms beyond those in the request itself (Charlottesville, Unite the Right) and the government responded that it would "search using terms it believed would be mo[s]t likely to produce the relevant results." Exhibit B. The government has not identified the search terms or the results of the search.

The SPLC requests that the Court order the government to search in Sentinel and in its email communications for any information that the SPLC provided the FBI from January 1, 2017,

[5] The SPLC asked for a list of all types of documents, including but not limited to Quarterly Supervisory Source Reviews, statistical accomplishments, requests for payment/responses to requests for payment, and communications with CHSs (FD-1023s). The "statistical accomplishments" category includes accomplishments specific to a CHS as well as any FD-515 or FD-542 that references the informants. An example of an FD-515 and FD-542 are included in Exhibit K.

through August 31, 2017, about this event. The SPLC requested that the government search in this 8-month time frame (a) for any serials in Sentinel or any email communications that include the SPLC and any of these search terms: "Unite the Right," "UTR," "Charlottesville," "Virginia," "white supremacist," "white nationalist," "neo-Nazi," "neo-Confederate," "neo-fascist," "alt-right," "far right," "militia," "Klan," "KKK," "Vanguard America," "Identity Evropa," "Traditionalist Worker Party," "League of the South," "LOS," "National Socialist Movement," "NSM," "Proud Boys," or "Hammerskin";"; and (b) for any information in Sentinel about action taken by any law enforcement agency related to the information from the SPLC.

> **Search 7**. All material favorable to the defense showing that the SPLC provided information related to two specific indictments of individuals affiliated with extremist groups as identified in its May 13 letter to the government and all material showing how law enforcement used the information that the SPLC provided.[6] ECF 114-1 at § III.D – III.E.

During the meet and confer process, the SPLC requested that the government search in Sentinel for these two investigations and provide all serials showing what information the SPLC provided about these two individuals. The government declined to search for this category saying that it was too broad and that it would only consider specific search requests. The SPLC's request is extremely specific, identifying the names of the persons about whom the SPLC provided information and the docket numbers for the cases. The SPLC requests that the Court order the government to search in Sentinel for all documents in the case files associated with these two investigations for any serials showing that the SPLC provided information to the FBI related to them and all documents showing what investigative steps the FBI took as a result of the SPLC's information.

---

[6] The letter has been redacted on the public docket. The government is aware of the two specific investigations and the SPLC can provide the two names in a sealed filing if it would be helpful for the Court.

> **Search 8**. Search for all material favorable to the defense related to 14 specific instances in which SPLC informants cooperated with the FBI (either as FBI informants or SPLC informants), as identified in the SPLC's July 13, 2026, and September 30, 2026 letters.

These instances were sourced directly to the government's own interviews of witnesses in this case and included the name of the informant and the key factual information provided in the interview. This is sufficient information for the government to conduct a thorough search for the information. The government said it would "search using terms it believed would be mo[s]t likely to produce the relevant results." Exhibit B. The government has not identified the search terms or the results of this search. The SPLC requests that the Court order the government to conduct a search in Sentinel for these examples of cooperation by SPLC informants using the names of the individuals involved, as well as the possible source symbol or source file numbers of those informants, and any other information in its own interviews of witnesses.

## CONCLUSION

The SPLC has been trying for the last six months to obtain this information and the Court has made clear that it is material to the defense. Even in light of the Court's comments at the recent hearing, the government refused to provide information to permit a meaningful narrowing of the searches. The Court must step in to order the government to comply with its *Brady* obligations. The proposed order sets forth the searches that the SPLC seeks the Court to order and the time frame for the production. The government has devoted plenty of resources to continue its investigation after indictment to try to inculpate the SPLC—interviewing witness after witness and producing additional documents. The Constitution requires the government to put as much effort into finding and producing exculpatory information as well.

**CERTIFICATION PURSUANT TO M.D. Ala. LCrR 16.1(c)**

In accordance with Rule 16.1(c) of the Local Rules of the United States District Court for the Middle District of Alabama, I hereby certify that I have conferred with Assistant U.S. Attorney Kevin Davidson in good faith in an effort to resolve the issues raised by this status update.

Dated: November 25, 2026

Respectfully submitted,

/s/ *Addy R. Schmitt*

Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com

Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*